1  Damian P. Richard, Esq. (SBN 262805)
   SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
2  1545 Hotel Circle South, Suite 150
   San Diego, CA  92108-3426
3  Tel:   619/758-1891
4  Fax:   619/296-2013
5  drichard@sessions.legal
   *Attorneys for Defendants*
6  *National Collegiate Student Loan Trust 2006-1*
7  *National Collegiate Student Loan Trust 2006-4*
8  *National Collegiate Student Loan Trust 2007-4*
   *(erroneously sued as*
9  *National Collegiate Student Loan Trust 2007-1)*

10

11                 UNITED STATES BANKRUPTCY COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13  IN RE:                        )   Case No.  16-BK-30625-MH
14  JOHN MARTIN MATA              )   Chapter 7
    LIVIER MATA                   )
15                                )
                                  )
16  JOHN M. MATA,                 )   Adversary No. 6:18-AP-01089-MH
17           Plaintiff,           )
                                  )
18      vs.                       )   <u>DOCUMENTS TO BE FILED</u>
19  NATIONAL COLLEGIATE STUDENT   )   <u>"UNDER SEAL"</u>
    LOAN TRUST 2006-1; NATIONAL   )
20  COLLEGIATE STUDENT LOAN       )   Exhibits J & K to Declaration
21  TRUST 2006-4; NATIONAL        )   (ECF No. 33-4)
    COLLEGIATE STUDENT LOAN       )
22  TRAUT 2007-1,                 )
23           Defendants.          )

24

25

26

27

28

DOCUMENTS UNDER SEAL

1

# Exhibit J

Exhibit J

*Execution*
*May 16, 2002*

**Note: This Agreement contains confidential & proprietary information and may not be disclosed without the consent of both parties or as required by law**

## GUARANTY AGREEMENT
### between
### THE EDUCATION RESOURCES INSTITUTE, INC.
### and
### CHARTER ONE BANK, N.A.
### (NextStudent)

This Guaranty Agreement (this "Agreement") is made as of this 15th day of May, 2002, by and between The Education Resources Institute, Inc. ("TERI"), a private non-profit corporation organized under Chapter 180 of the Massachusetts General Laws with its principal place of business at 330 Stuart Street, Boston, Massachusetts 02116, and Charter One Bank, N.A., (the "LENDER"), a national association organized under the laws of the United States and having a principal office located at 1215 Superior Avenue, Cleveland, Ohio 44114.

WHEREAS, TERI is in the business of providing financial assistance in the form of loan guaranties to and on behalf of students enrolled in programs of higher education and their parents at TERI-approved schools; and

WHEREAS, the LENDER is willing to make Loans to eligible Borrowers under the Program, and TERI is willing to guaranty the payment of principal and interest against the Borrowers' default or certain other events as more fully described below, in accordance with the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, TERI and the LENDER agree as follows:

Section 1:    DEFINITIONS

As used in this Agreement the following terms shall have the following meanings:

1.1    "Agent" shall mean State Street Bank and Trust Company, its successors and assigns, in its capacity as Agent under the Deposit and Security Agreement between TERI and the LENDER, of even date herewith.

1.2    "Borrower" shall mean the person, or all persons collectively, including all students, cosigners, coborrowers, guarantors, endorsers, and accommodation parties, who execute a Promissory Note individually or, in the case of multiple Borrowers, severally and jointly, for the purpose of obtaining funds from the LENDER under the Program.

CONFIDENTIAL NCSLT0283

1.3   "Due Diligence" shall mean the utilization by the LENDER of policies, practices and procedures in the origination, servicing and collection of Loans that comply with the standards set forth in the Program Guidelines and that comply with the requirements of federal and state law and regulation.

1.4   "Guaranty Event" shall mean any of the following events:

    a.   failure of the Borrower to make monthly principal and/or interest payments on a Loan when due, provided such failure persists for a period of one hundred fifty (150) consecutive days,

    b.   the filing of a petition in bankruptcy with respect to the Borrower, or

    c.   the death of the Borrower.

For Loans on which the Borrower is two or more persons, none of the above, with the exception of paragraph b, is a Guaranty Event unless one or more such events shall have occurred with respect to all such persons. The foregoing notwithstanding, if a Borrower files a petition in bankruptcy pursuant to Chapter 7 of the U.S. Bankruptcy Code and does not seek a discharge of the affected Loan(s) under 11 U.S.C. §523(a)(8)(B) of the U.S. Bankruptcy Code, the LENDER at TERI's request will withdraw its guaranty claim unless or until one of the other Guaranty Events shall have occurred with respect thereto.

1.5   "Loan" shall mean a loan of funds, including all disbursements thereof, made by the LENDER under the Program.

1.6   "Note Purchase Agreement" means the agreement of that name between LENDER and The First Marblehead Corporation ("FMC") dated as of May, 15, 2002, as amended.

1.7   "NextStudent" shall mean Pinnacle Peak Solutions, Inc., a corporation organized under the laws of Arizona and having a principal place of business at 11225 North 28th Drive, Suite A-202, Phoenix, AZ 85029, d/b/a NextStudent.

1.8   "Program" shall mean the NextStudent Loan Program, as more fully described in the Program Guidelines.

1.9   "Program Guidelines" shall mean the NextStudent Loan Program Guidelines attached hereto as Exhibit A, and all changes thereto as provided in Section 7 hereof. The Program Guidelines (a) consist of the Program Overview, Loan Program Description Detail, TERI Underwriting Guidelines, PHEAA Servicing Guidelines, and Program Borrower Documents (consisting of the forms of Promissory Note and Truth in Lending Disclosure) and (b) are hereby incorporated in this Agreement by reference and made a part hereof.

CONFIDENTIAL NCSLT0284

1.10    "Promissory Note" shall mean a promissory note executed by a Borrower evidencing a Loan, in the form attached hereto as part of the Program Guidelines or as approved pursuant to Section 3.2 below.

1.11    "Securitization Transaction" shall mean and refer to a purchase of Loans guaranteed hereunder by a special purpose entity formed by FMC, which purchase is funded through the issuance of debt instruments or other securities by such entity, the repayment of which is supported by payments on the Loans.

Section 2:    GUARANTEE OF LOANS

2.1    TERI hereby guarantees to the LENDER, unconditionally except as set forth in Section 2.2 below, the payment of 100% of the principal of and accrued interest on every Loan as to which a Guaranty Event has occurred. "Accrued interest" shall mean interest accrued and unpaid to the date of payment in full by TERI, less any interest that shall have accrued after the filing of a claim for guaranty payment submitted to TERI by the LENDER but before TERI shall have received all the documentation necessary to process the guaranty claim as set forth in the Program Guidelines. TERI will use all reasonable efforts to make payment on its guaranty within sixty (60) days, and will in any event make payment within ninety (90) days, of receipt of a demand from the LENDER stating the name of the Borrower and the type of Guaranty Event that has occurred accompanied by the full claim documentation required in the Program Guidelines.

2.2    TERI's guaranty is conditioned upon the following:

a.    The LENDER must have filed its claim for guaranty payment within the time period and following the procedures specified in the Program Guidelines.

b.    The LENDER and its predecessors in interest must at all times have exercised Due Diligence with respect to the Loan (or shall have cured any failure to exercise Due Diligence under the reinstatement provisions in Section 2.4 hereof and the Program Guidelines), and must have complied with all other requirements of the Program Guidelines applicable to the Loan.

c.    The LENDER shall have paid to TERI the Initial Guaranty Fee (as defined in Section 3.3.a below) for the Loan in question, and shall have paid to the Agent any Subsequent Guaranty Fee (as defined in Section 3.3.b below) for the Loan in question which is due and payable as provided in Section 3.3.b below.

d.    TERI must have received from the LENDER the original Promissory Note, enforceable against the Borrower (except as provided in this Section

CONFIDENTIAL NCSLT0285

2.2(d), below), endorsed to TERI in such manner as to transfer to TERI all rights in and title to such Promissory Note, free and clear of all liens and encumbrances, and of all defenses, counterclaims, offsets, and rights of rescission that might be raised by the Borrower. Submission of a claim to TERI shall constitute the LENDER's certification that the conditions of 2.2.b. and 2.2.d. have been met, and TERI is entitled to rely on such certification.

Subsections 2.2.b. and 2.2.d above notwithstanding, if a Loan submitted for guaranty was originated by TERI on behalf of the LENDER pursuant to a Loan Origination Agreement between the parties, (i) TERI will not deny the LENDER's guaranty claim on such Loan if the sole basis for denial is a violation of the Program Guidelines or a violation of Massachusetts or federal law committed by TERI in the origination process, and (ii) TERI will have no recourse against the LENDER in the event that TERI's actions or omissions in the origination process shall have given rise to a defense in favor of the Borrower in a suit on the Promissory Note.

2.3    TERI's guaranty obligation with respect to any Loan shall not be terminated or otherwise affected or impaired (i) by the LENDER's granting an extension to the Borrower of time to make scheduled payments, or by any other indulgence the LENDER may grant to the Borrower, provided that all extensions and other indulgences meet the forbearance standards and other requirements of the Program Guidelines; or, Section 2.2.d above notwithstanding, (ii) because of any fraud in the execution of the Promissory Note, (iii) because of any illegal or improper acts of the Borrower, (iv) because the Borrower may be relieved of liability for such Loan due to lack of contractual capacity or any other statutory exemption.

2.4    If TERI properly denies the LENDER's claim on any Loan on the grounds of Due Diligence deficiencies, the LENDER may thereafter require that TERI reinstate the guaranty of such Loan if (a) the LENDER corrects such deficiencies and receives four (4) consecutive full on-time monthly payments from the Borrower, according to any schedule permitted by the Program Guidelines, and if at the time of the LENDER's request the Borrower is within thirty (30) days of being current on all principal and interest payments on such Loan, or (b) the LENDER satisfies any other method of cure set forth in the Program Guidelines.

2.5    TERI's guaranty hereunder is a continuing and absolute guaranty of payment and not merely of collection, covering Loans made in accordance herewith either (i) prior to termination of this Agreement, or (ii) based upon applications received by the LENDER prior to such termination; and shall not affect TERI's obligations to the LENDER then existing, whether direct or indirect, absolute or contingent, then due or thereafter to become due.

CONFIDENTIAL NCSLT0286

2.6    TERI agrees not to exercise any right of subrogation, reimbursement, indemnity, contribution or the like against the Borrower of any Loan unless and until all TERI's obligations under this Agreement with respect to such Loan have been satisfied in full, except to the extent that it is deemed a valid claimant as a contingent creditor, for example, under Title 11 of the United States Code (the "Bankruptcy Code"), or applicable state law.

2.7    TERI will permit the LENDER, any duly designated representative of the LENDER, or any governmental body having jurisdiction over the LENDER (subject to written notice being provided to TERI by the LENDER, identifying the requesting party and the date of the review), to examine and audit the books and records of TERI pertaining to the Loans, at any time during TERI's regular business hours, provided that in the case of examinations by the LENDER or its representative absent good cause (i) TERI must be given ten (10) business days' prior written notice and, (ii) no more than one such audit may be conducted with respect to any twelve-month period or will take place in any twelve-month period. In no event will any audit be performed during July, August, September, or October in any year except at the request of a regulatory authority having jurisdiction over the LENDER.

2.8    TERI will indemnify the LENDER and hold it harmless from and against any loss, cost, damage and expense that the LENDER may suffer as a result of claims arising out of TERI's actions or omissions relative to the LENDER's participation in the Program. "Expense" includes, without limitation, the LENDER's reasonable attorney's fees. TERI will further indemnify the LENDER and hold it harmless from and against any claim brought against the LENDER by any Borrower based on actions or omissions of the LENDER that were mandated under the Program Guidelines.

2.9    Although the LENDER agrees not to use any loan servicer not approved by TERI, the LENDER acknowledges that TERI's approval of a servicer is in no way an endorsement of such servicer and that TERI shall have no liability to the LENDER for any losses arising from such servicer's failure to comply with Due Diligence or the Program Guidelines or applicable law, nor shall TERI be required to honor any claim submitted by such servicer if the claim does not comply with the requirements of this Agreement.

Section 3:    OBLIGATIONS OF THE LENDER

3.1    In originating, servicing, disbursing, and collecting Loans, the LENDER will comply, and cause its servicer and others acting on its behalf to comply, with all applicable requirements of federal and state laws and regulations.

3.2    The LENDER will use Promissory Notes, Loan applications, disclosure statements, and other forms mutually agreeable to the parties. The forms of application and Promissory Note and disclosure statement attached hereto as part

CONFIDENTIAL NCSLT0287

of the Program Guidelines are agreed to be satisfactory to both parties. Without limiting the generality of Section 3.1, the LENDER warrants the conformity of such instruments and any agreed successors thereto with all applicable legal requirements, other than those of federal and Massachusetts law and regulation, and TERI warrants their conformity with Massachusetts and federal law.

3.3    The LENDER will pay a guaranty fee for each Loan (the "Guaranty Fee") as follows:

    a.    At the time of each disbursement of the Loan, the LENDER will promptly remit to TERI one and one-half percent (1.5%) of the principal amount of Loan disbursed (the "Initial Guaranty Fee").

    b.    At such times as are set forth in Schedule 3.3 attached hereto and incorporated herein by reference, such additional fees as are set forth in the fifth and sixth columns of Schedule 3.3 ("Subsequent Guaranty Fee"). If the terms of Schedule 3.3 call for any Guaranty Fees to be paid to TERI or to the Agent concurrent with the Securitization Transaction, LENDER may elect either: (i) for LENDER to pay the fees directly (and be reimbursed in the Securitization Transaction), or (ii) for the purchaser to pay the fees directly. In the event that a Guaranty claim is made with respect to a Loan before a Subsequent Guaranty Fee is scheduled to be paid by the LENDER for such Loan, the Subsequent Guaranty Fee shall become immediately due and payable. In the event that a loan is prepaid in full prior to the date that a Subsequent Guaranty Fee is scheduled to be paid by the LENDER for such Loan, the Subsequent Guaranty Fee shall nevertheless become due and payable at the time that would have applied if such prepayment had not occurred. For example, if a Subsequent Guaranty Fee is due at the time of a Securitization Transaction and a Loan is prepaid before it is eligible for Securitization, then the Subsequent Guaranty Fee with respect to such Loan shall become due at the first Securitization Transaction when such Loan would have been eligible for inclusion, had prepayment not occurred.

    c.    Failure to remit any Guaranty Fee within thirty (30) days of the time set forth above will not be a breach of this Agreement but will void TERI's guaranty of the Loan concerned.

    d.    Anything in the Program Guidelines to the contrary notwithstanding, if the LENDER is required under the terms of a Promissory Note to refund all or part of the Guaranty Fees identified above to a Borrower, TERI will refund all or part of the Initial Guaranty Fee and the Agent will refund all or part of any Subsequent Guaranty Fee it has received to the LENDER upon being so advised in writing.

CONFIDENTIAL NCSLT0288

3.4   If TERI shall have purchased a Loan due to the occurrence or alleged occurrence of a Guaranty Event described in Section 1.4.a and/or 1.4.b above, the LENDER will promptly repurchase such Loan from TERI, (i) if TERI succeeds, after purchase, in obtaining from the Borrower three full consecutive on-time monthly payments, according to any schedule permitted by the Program Guidelines, provided that on the date of TERI's notice to repurchase, the Borrower is within thirty (30) days of being current on his or her payments on such Loan; provided that this repurchase obligation may be invoked by TERI only once as to any Loan; or (ii) subject to Section 2.3 above, if TERI should determine that the Loan does not meet the conditions set forth in subsection (b), (c) and (d) of Section 2.2 above.

3.5   To the extent permitted by applicable law, the LENDER will deliver to TERI such reports, documents, and other information concerning the Loans as TERI may reasonably require, and permit independent auditors or authorized representatives of TERI, and governmental agencies, if any, having regulatory authority over TERI, to have access to the operational and financial records and procedures directly applicable to Loans and to the LENDER's participation in the Program.

3.6   If the LENDER should violate any term of this Agreement, it will be liable to TERI for all loss, cost, damage, and expense sustained by TERI as a result. The LENDER will indemnify TERI and hold it harmless from and against all loss, cost, damage, and expense that TERI may suffer as a result of claims arising out of the LENDER's actions or omissions relative to the LENDER's participation in the Program unless such actions or omissions are specifically required by this Agreement. The LENDER will similarly indemnify TERI with respect to any defenses arising from the LENDER's violation of or failure to comply with any law, regulation, or order, or any term of this Agreement, that may be raised by a Borrower to any suit upon a Promissory Note. "Expense" includes, without limitation, TERI's reasonable attorney's fees.

Section 4:      REPRESENTATIONS AND WARRANTIES

4.1   Each party represents and warrants to the other that its execution, delivery and performance of this Agreement are within its power and authority, have been authorized by proper proceedings, and do not and will not contravene any provision of law or such party's organization documents or by-laws or contravene any provision of, or constitute an event of default or an event which, with the lapse of time or with the giving of notice or both, would constitute an event of default, under any other agreement, instrument or undertaking by which such party is bound. Each party represents and warrants that it has and will maintain in full force and effect all licenses required under applicable state, federal, local or other law for the conduct of all activities contemplated by this Agreement and comply with all requirements of such applicable law relative to its licenses and the conduct of all activities contemplated by this Agreement. This Agreement and all of its terms and provisions are and shall remain the legal and binding

CONFIDENTIAL NCSLT0289

obligation of the parties, enforceable in accordance with its terms subject to bankruptcy and insolvency laws. The warranties given herein shall survive any termination of this Agreement.

4.2     The parties acknowledge that TERI is not an insurer or reinsurer and the LENDER expressly waives all claims it might otherwise have under applicable law were TERI to be held by any court or regulatory agency to be acting as an insurer or reinsurer hereunder. The only obligations of TERI to the LENDER shall be those expressly set forth herein.

Section 5:     <u>MISCELLANEOUS</u>

5.1     Neither party is or will hold itself out to be the agent, partner, or joint venturer of the other party with regard to any transaction under or pursuant to this Agreement.

5.2     Each party's respective rights, remedies, powers, privileges, and discretions ("Rights and Remedies") shall be cumulative and not exclusive. No delay or omission by either party in exercising or enforcing any of its Rights and Remedies shall operate as to constitute a waiver of them. No waiver by a party of any default under this Agreement shall operate as a waiver of any subsequent or other default under this Agreement. No single or partial exercise by a party of any of its Rights and Remedies shall preclude the other or further exercise of such Rights and Remedies. No waiver or modification by a party of the Rights and Remedies on any one occasion shall be deemed a continuing waiver. A party may exercise its various Rights and Remedies at such time or times and in such order of preference as it in its sole discretion may determine. In no event will either party be liable to the other for special, incidental, or consequential damages, including but not limited to lost profits, even if advised in advance of the possibility of the same, or for punitive or exemplary damages, provided that such exclusions shall not apply to the indemnification against an award of such damages pursuant to a third party claim.

5.3     This Agreement represents the entire understanding of the parties with respect to the subject matter hereof. This Agreement, together with any contemporaneous contract concerning credit analysis or other loan origination functions, supersedes all prior communications whatsoever between the parties relative in any way to Loans or the LENDER's participation in the Program. This Agreement may be modified only by written agreement of the parties hereto, except as may otherwise be set forth herein.

5.4     Any determination that any provision of this Agreement is invalid, illegal, or unenforceable in any respect shall not affect the validity, legality, or enforceability of such provision in any other instance and shall not affect the validity, legality, or enforceability of any other provision of this Agreement.

CONFIDENTIAL NCSLT0290

5.5    Each of the parties will timely implement, if it has not already, and will maintain, a reasonable disaster recovery plan. Subject to the foregoing, no party hereto shall be responsible for, or in breach of this Agreement if it is unable to perform as a result of delays or failures due to any cause beyond its control, howsoever arising, and not due to its own act or negligence and that cannot be overcome by the exercise of due diligence. Such causes shall include, but not be limited to, labor disturbances, riots, fires, earthquakes, floods, storms, lightning, epidemics, wars, civil disorder, hostilities, expropriation or confiscation of property, failure or delay by carriers, interference by civil and military authorities whether by legal proceeding or in fact and whether purporting to act under some constitution, decree, law or otherwise, acts of God and perils of the sea.

5.6    This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to the conflict of laws provisions thereof.

5.7    This Agreement will be binding on the parties' respective successors and assigns. It may not be assigned by either party without the other's written consent, which will not be unreasonably withheld, provided that: (a) the LENDER may assign any Loan, together with the provisions hereof as applicable to such Loan, to FMC or any SPE; and (b) TERI has subcontracted and may hereafter sub-contract any administrative obligations necessary or convenient to TERI to perform its obligations hereunder to FMC or any subsidiary or affiliate of FMC.

5.8    Notice for any purpose hereunder may be given by any means requiring receipt signature, or by facsimile transmission confirmed by first class mail. In the case of TERI, notices should be sent to its President, and if by fax, to (617) 451-9425. In the case of the LENDER, notices should be sent to its Robert Moriale, and if by fax, to _____. Either party may from time to time change the person, address or fax number for notice purposes by formal notice to the other party.

Section 6:    CHANGES TO PROGRAM GUIDELINES

The parties agree that the Program Guidelines will need to be updated and modified to respond to changed conditions from time to time. The parties intend to make such modifications in a manner that does not interfere with the ordinary advertising and origination cycle for education loans. Amendments necessary to meet state or federal regulatory requirements may be made at any time. With respect to all other changes, the parties shall exchange requests for modification of the Program Guidelines, including without limitation any requested changes to the provisions of the Program Guidelines concerning the Guaranty Fees, in the first part of the first calendar quarter of each year. Each party shall respond in writing to proposals from the other within 30 days, in writing, and both parties will attempt to resolve any differences within 30 days after receiving a response to a request. All modifications must be mutually acceptable. Any modifications approved by the parties and not requiring system adjustments by the LENDER's loan servicer shall take effect within thirty (30) days after approval. Modifications requiring

CONFIDENTIAL NCSLT0291

system adjustments by the LENDER's loan servicer shall take effect as soon after approval as such servicer shall be able to adjust its systems to accept loans made on the modified terms. The parties shall use their best efforts to conclude all negotiations of proposed changes prior to May 1 of each year. The foregoing process shall not apply to modification of the Servicing Guidelines, which are subject to a modification process contained therein.

Section 7:    TERM AND TERMINATION

7.1    The initial term of this Agreement shall commence on May 15, 2002, and shall continue until May 1, 2003.  Thereafter, this Agreement shall automatically renew for successive one-year terms unless either party provides written notice of non-renewal and termination not less that ninety (90) days prior to the end of the then-current term.

7.2    In the event that the parties are unable to agree on a proposed modification to the Program Guidelines as provided in Section 7, above, the party proposing the modification shall have the option of terminating this Agreement by providing written notice of termination to the other party.  Such termination will be effective on the following May 1.

7.3    To the extent permitted by applicable law, if either party should become subject to bankruptcy, receivership, or other proceedings affecting the rights of its creditors generally, this Agreement will be deemed terminated thereupon immediately without the need of notice from the other party, and the party becoming subject to such proceedings will promptly notify the other party thereof.

7.4    Termination shall be prospective only and shall not affect the obligations of the parties hereto which were incurred prior to such termination or any of the warranties and indemnities contained herein or the provisions of Section 8 below (regarding confidentiality). Not less than thirty (30) days prior to the effective date of termination, TERI may by additional notice to the Lender terminate its obligation to assume the guaranty of all or any subset of otherwise qualifying Loans as to which a commitment to lend is made after the Lender's receipt of such additional notice. In the absence of such additional notice TERI will, subject to the terms and conditions of this Agreement, assume the guaranty of all Loans as to which a commitment to lend is made prior to the effective date of termination. In the event this Agreement terminates or expires and only one disbursement of a multi-disbursement loan has been made prior to that date, the other disbursement will also be guaranteed pursuant to the terms of this Agreement.

Section 8:    CONFIDENTIALITY; RESTRICTIONS ON USE OF INFORMATION

8.1    TERI and the LENDER each acknowledge that in the course of the operations contemplated by this Agreement, and in the course of communications relative to

CONFIDENTIAL NCSLT0292

this Agreement, it has received and will receive information concerning the other's finances, business plans, business methods, and the like that is not generally known in the student loan industry ("Confidential Information"). Each party will respect and use all reasonable efforts to maintain the confidentiality of the other's Confidential Information unless and until such information becomes generally known through no fault of the receiving party. Without limiting the foregoing, TERI may disclose any of LENDER's Confidential Information to any entity to which TERI subcontracts its obligations under this Agreement pursuant to Section 5.7(b) hereof.

8.2     In accordance with the provisions of Title V of the Gramm-Leach-Bliley Act (the "GLB Act") and Federal Reserve Board Regulation P ("Regulation P"), TERI agrees to respect and protect the security and confidentiality of any "nonpublic personal information" (as defined in the GLB Act and Regulation P) relating to applicants for Loans and to Borrowers, including, where applicable, the restrictions on the re-use and disclosure of such information set forth in the GLB Act and Regulation P.

8.3     Without limiting the foregoing, TERI may retain as its own property and use for any lawful purpose any or all aggregated or de-identified data concerning Loan applicants and Borrowers, which does not include the name, address or social security number of the Loan applicants or Borrowers. TERI may sell, assign, transfer or disclose such information to third parties including, without limitation, FMC, who may also use such information for any lawful purpose.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]**

CONFIDENTIAL NCSLT0293

IN WITNESS WHEREOF, TERI and the LENDER have caused this instrument to be executed by their duly authorized officers under seal as of the day and year indicated above.

THE EDUCATION RESOURCES                CHARTER ONE BANK, N.A.
INSTITUTE, INC.

By: _____            By: _____
Print Name: _____            Print Name: _____
Title: _____            Title: _____

CONFIDENTIAL NCSLT0294

IN WITNESS WHEREOF, TERI and the LENDER have caused this instrument to be executed by their duly authorized officers under seal as of the day and year indicated above.

THE EDUCATION RESOURCES
INSTITUTE, INC.

By:_____

Print Name:_____

Title:_____

CHARTER ONE BANK, N.A.

By: _Linda M Ranby_____

Print Name: _Lindes M Ranby_

Title: _Production Manager___

## TABLE OF EXHIBITS

Exhibit A – Program Guidelines for NextStudent Loan Program

Schedule 3.3 – Guaranty Fee Amounts

# NextStudent Loan Program
# Program Guidelines

**Updated:**
**May 15, 2002**
**Rev 3.0**



FIRST MARBLEHEAD



TERI
The Education Resources Institute

1

CONFIDENTIAL NCSLT0297

{W0010681.3}

# Table of Contents

## Program Overview

1.   Schedule 3.3

2.   Loan Program Description Detail

    A.   NextStudent Undergraduate Loan
    B.   NextStudent Graduate Loan
    C.   NextStudent Continuing Education Loan
    D.   NextStudent K-12 Loan

3.   TERI Underwriting Guidelines

4.   PHEAA Servicing Guidelines

5.   Program Borrower Documents

    A.   Promissory Notes
    B.   Truth In Lending Disclosure

CONFIDENTIAL NCSLT0298

{W0016681.3}

# Program Overview

The First Marblehead Corporation (FMC) has combined resources with The Education Resources Institute (TERI) to provide Charter One Bank, N.A. ("Lender" or "Charter One") with a unique opportunity to deliver privately branded alternative loan products to meet specific marketing and economic objectives.

A.    Summary of Program Participants

**Program Lender:** As program lender, Charter One is an FDIC insured financial institution able to "export" the laws concerning interest rate and fees from the state where Lender is located to all 50 states. Charter One will sub-contract origination functions to TERI but will be the legal entity who approves credit criteria and makes program loans in accordance with TERI underwriting guidelines. Charter One will provide initial loan funding and own the loans until they are purchased in a transaction organized by the Securitization Sponsor at agreed upon intervals.

**Program Origination Processing:** TERI will provide the full complement of alternative student loan origination capabilities for Charter One's programs. These services include application processing, underwriting, loan documentation and disclosure, and loan disbursement processing. TERI may subcontract these services as provided in the Loan Origination Agreement.

**Program Guarantor:** The Education Resources Institute, Inc. (TERI) will provide loan guarantee services on behalf of the Lender during the loan holding period and then to the Securitization Sponsor from the point of purchase forward. As guarantor, TERI approves the program's underwriting guidelines.

**Program Servicer:** The Servicer, Pennsylvania Higher Education Assistance Agency (PHEAA) is responsible for performing loan servicing and administration services over the life of the loan. The Servicer maintains loan servicing procedures in accordance with the loan program guidelines.

**Program Marketer:** NextStudent. The Program Marketer promotes NextStudent Loans to prospective borrowers pursuant to a Referral Marketing Agreement with Charter One.

**Securitization Sponsor:** The First Marblehead Corporation (FMC) will form or cause to be formed special purpose business trusts or other special purpose entities to purchase loans from Charter One at agreed intervals. FMC coordinates all aspects of the loan purchase process with the program partners.

**Participating Schools:** Eligible primary and secondary schools, undergraduate colleges and universities, and graduate schools approved by TERI and that are approved by TERI, Charter One, and the Program Manager as provided in Schedules A through D of these Guidelines.

B.    **Basic Loan Program Description**

Charter One Loan Programs are fully credit tested education loans. Students and families may use the loan to finance any portion of the current academic year's educational expenses and past due balances. Students must be enrolled at least half-time at Participating Schools. For all loans except NextStudent K-12 loans and continuing education loans, the program in which the student is enrolled must be a degree- or certificate-granting program. Students are the primary borrowers, with other creditworthy persons signing the loan note as co-obligors if necessary.

CONFIDENTIAL NCSLT0299

[W00:10081.3]

Charter One and NextStudent may solicit borrowers to promote the respective Loan Program(s) to students and parents.   Charter One and NextStudent may distribute branded application materials to targeted families as well as make them available more generally (Internet, etc.).

Students (and co-borrowers) apply through the program for a credit-tested loan, with multiple repayment options.  The loan is variable rate, based on the average of the one-month London Interbank Offered Rates ("LIBOR") published in The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding each quarterly change date.

Generally, loan proceeds are mailed directly to the borrower (and co-borrower) in single disbursements unless the applicant has not submitted timely proof of enrollment, in which case the loan check will be made co-payable to the borrower and the Participating School.

Shortly after the final disbursement(s) have been made, it is anticipated that all eligible program loans will be purchased into a securitization organized by the Securitization Sponsor.

4

CONFIDENTIAL NCSLT0300

{W0010681 3}

March 25, 2002

# 1.    Schedule 3.3 To Guaranty Agreement Between TERI And Charter One

**Charter One Direct to Consumer NextStudent Referral Product: TERI Guarantee Fee Payment Structure by Product**

| 1. Charter One Product (In credit definitions below: "B" stands for borrower; "c" stands for co-borrower; "S" stands for student; "CWS" stands for creditworthy student); and "F" stands for FICO score) | 2. Loan interest rate | 3. Loan fee charged to borrower | 4. Guaranty Fee paid by Charter One to TERI on gross loan amount at time of disbursement | 5. Subsequent Guaranty Fee paid by Charter One on gross loan amount at disbursement and held by Agent in Pledged Account | 6. Subsequent Guaranty Fee paid at time of securitization (regardless of repayment date) on gross loan amount as of disbursement & deposited into segregated reserve held by the securitization trustee | 7. Total Guaranty Fee paid on the loan |
|---|---|---|---|---|---|---|
| **K-12 Creditworthy loan:** | LIBOR + | Immediate repayment | | Immediate repayment | | Immediate repayment |
| B F >660 | 4.95% | 6.0% | 1.5% | 4.5% | 0% | 6.0% |
| | | Deferred* | | Deferred* | | Deferred* |
| | 4.95% | 6.5% | 1.5% | 5.0% | 0% | 6.5% |
| **Continuing Ed Creditworthy loan:** | | | | | | |
| CWS F >660 or C F >660 with S F >625 (or no FICO) | 4.95% | Deferred* 6.5% | 1.5% | Deferred* 5.0% | 0% | Deferred* 6.5% |
| **Undergraduate Creditworthy loan:** | | Immediate repayment /deferred* | | Immediate repayment* /deferred* | | Immediate repayment /deferred* |
| C F >660 & S F >625 (or no FICO), or CWS F >660 | 4.65% | 5%/6.5% | 1.5% | 1.5%/5.0% | 0% | 5.0%/6.5% |
| **Graduate Creditworthy loan:** | | Deferred* | | Deferred* | | Deferred* |
| C F >660 & S F >625 (or no FICO), or CWS F >660 | 4.65% | 6.5% | 1.5% | 5.0% | 0% | 6.5% |

\* Deferred interest is compounded in accordance with the terms of the Note.

[W01068-1]

5

CONFIDENTIAL NCSLT0301

## 2.    Loan Program Description Detail

CONFIDENTIAL NCSLT0302

{W0010681 3}

# Undergraduate Loan Program Detail

| A. Terms | Specifications |
|---|---|
| Target Audience | Undergraduate students with credit tested cosigner |
| Loan Index | Average of the one month LIBOR<br>Quarterly adjustment |
| Margin | Various, please see pricing grids (Schedule 3.3) |
| Borrower Origination Fees | If applicable, added to loan balance at time of origination |
| Repayment Term | Up to 20 Year level repay for loan under $40,000<br>Up to 25 Year level repay for loans over $40,000<br><br>Interest rate increases may result in up to 30 additional monthly payments (and may increase the Repayment Term by up to 30 months). Additional interest rate increases may result in increased payment amount. |
| Repayment Options | Immediate repayment of principal and interest<br>Full deferral of principal and interest<br>Interest only payments (Deferral of principal only) |
| Interest Capitalization | Once at repayment for deferred loans<br>Again at the end of any forbearance periods<br>Quarterly prior to repayment for direct-to-consumer loans |
| Minimum Loan Amount | $1,500 |
| Maximum Loan Amount | Annual Maximum:<br>　　25,000 annually for education related expenses<br>　+　 5,000 for personal computer to use for school<br>　　$30,000 TOTAL<br>Aggregate program maximum: $130,000 |
| Past Due Balances | Can borrow past due amounts with school verification<br>No current enrollment status required |

CONFIDENTIAL NCSLT0303

[W:00106S1.3]

| B. Delivery | Specifications |
| --- | --- |
| Application Methods | Paper, Web, Telephone |
| Application Status | Web, Telephone |
| Underwriting | FICO score w/ analyst re-consideration<br>Conditional approval within minutes<br>Analyst re-consideration within two business days |
| Branding | Lender branding supported through web application and phone Application |
| School Certification | Enrollment verification required |
| Disbursements | Individual check payable to borrower<br><br>Disbursements processed for Program Lender by TERI using lender reimbursed sweep account with electronic notification to servicer<br><br>Truth-in-Lending Disclosure provided with disbursement |
| International Student Applicants | May apply with a creditworthy US citizen or Permanent Resident<br><br>Qualified applicant must have lived in the US at least 2 years |
| Enrollment Requirements | At least ½ time in a certificate or degree granting program at a TERI approved school |
| Eligible Schools | All TERI approved schools (list available upon request), generally those schools with a FFELP cohort default rate of 12% or less. |
| Repayment | Repayment varies depending on loan type as follows:<br><br>(i) For immediate repayment loans, payment of principal and interest begins 45 days after the last disbursement;<br><br>(ii) For loans with deferred principal and interest, repayment of principal and interest begins 180 days after graduation (or if the student ceases to be enrolled at least half-time prior to graduation, repayment of principal and interest begins 180 days after that event), or<br><br>(iii) For loans with deferred principal payments, interest payments begin 45 days after the loan's first disbursement, and principal payments begin 45 days after graduation (or if the student ceases to be enrolled at least half-time prior to graduation, repayment of principal begins 45 days after that event). |

{W0010681.3}

CONFIDENTIAL NCSLT0304

| C. Servicing | Specifications |
|---|---|
| Minimum Payment | $25 minimum monthly payment per loan |
| Reporting | Monthly servicer reports available<br>Monthly servicing systems downloads information for all active accounts by owner pool |
| Billing | Monthly billing<br><br>Depending on servicer, loans can be combined with student's FFELP loans |
| Forbearance | Financial Hardship<br>Interest only or P + I forbearance only<br>Up to 12 months, life of loan in 6 month intervals |
| Enrollment Verification | Monthly electronic verification with clearing houses depending on school eligibility<br><br>Quarterly verification with paper schools |
| Exit Interview | Provided by servicer:<br>    Loan repayment schedule<br>    Forbearance and auto debit forms<br>    Servicing center contact list<br>    Borrower education materials |
| Default, Diligence, Cure | In accordance with guarantor's established policies |
| Borrower Access | Borrower's account status available on the web, which can be linked to lender's site |

9

CONFIDENTIAL NCSLT0305

{W0016681.1}

# Graduate Loan Program Detail

| A. Terms | Specifications |
| --- | --- |
| Target Audience | Graduate student with credit tested cosigner |
| Loan Index | Average of the one month LIBOR, quarterly adjustment |
| Margin | Various, please see pricing grids (Schedule 3.3) |
| Borrower Origination Fees | If applicable, added to loan balance at time of origination |
| Repayment | Up to 20 Year level repay for loan under $40,000<br>Up to 25 Year level repay for loans over $40,000<br><br>Interest rate increases may result in up to 30 additional monthly payments (and may increase the Repayment Term by up to 30 months). Additional interest rate increases may result in increased payment amount. |
| Repayment Options | Full deferral of P + I |
| Interest Capitalization | Once at time of repayment<br>Again at the end of any forbearance periods<br>Quarterly prior to repayment for direct-to-consumer loans |
| Minimum Loan Amount | $1,500 |
| Maximum Loan Amount | Annual Limit:<br>    25,000 annually for education related expenses<br>  +  5,000 for personal computer to use for school<br>  $30,000 TOTAL<br>Aggregate program loan maximum:  $130,000 |
| Past Due Balances | Can borrow past due amounts with school verification.<br>No current enrollment status required. |

10

{W0010651 3}

| B. Delivery | Specifications |
| --- | --- |
| Application Methods | Paper, Web, Telephone |
| Application Status | Web, Telephone |
| Underwriting | FICO score w/ analyst re-consideration<br>Conditional approval within minutes<br>Analyst re-consideration within two business days |
| Branding | Lender branding supported through web application and phone Application |
| School Certification | Enrollment verification required |
| Disbursements | Individual check payable to borrower<br><br>Disbursements processed for Program Lender using lender reimbursed sweep account with electronic notification to servicer<br><br>Truth-in-Lending Disclosure provided with disbursement |
| International Student Applicants | May apply with creditworthy US citizen or Permanent Resident<br>Qualified applicant must have lived in the US at least 2 years |
| Enrollment Requirements | At least ½ time in a certificate or degree granting program at a TERI approved school |
| Eligible Schools | All TERI approved schools (list available upon request), generally those schools with a FFELP cohort default rate of 12% or less. |
| Repayment | Repayment starts 180 days after graduation or school separation date |
| Deferred Loans | Medical students can request a deferment after graduation for up to four years while completing an internship or residency<br><br>During this period the in-school rate applies |

CONFIDENTIAL NCSLT0307

{W0010681.3}

| C. Servicing | Specifications |
|---|---|
| Minimum Payment | $25 minimum monthly payment per loan |
| Reporting | Monthly servicer reports available<br>Monthly servicing system downloads information for all active accounts by owner pool |
| Billing | Monthly billing<br><br>Depending on servicer, loans can be combined with student's FFELP loans |
| Forbearance | Financial Hardship<br>Interest only or P + I forbearance only<br>Up to 12 months, life of loan in 6 month intervals<br>Delinquency periods can be rolled in if loan is in full P + I deferral |
| Enrollment Verification | Monthly electronic verification with clearing houses depending on school eligibility<br><br>Quarterly verification with paper schools |
| Exit Interview | Provided by servicer:<br>　　Loan repayment schedule<br>　　Forbearance and auto debit forms<br>　　Servicing center contact list<br>　　Borrower education materials |
| Default, Diligence, Cure | In accordance with guarantor's established policies |
| Borrower Access | Borrower's account status available on the web which can be linked to lender's site |

{W0010681 3}                                                                 CONFIDENTIAL NCSLT0308

## Continuing Education Loan Program Detail

| A. Terms | Specifications |
|---|---|
| Target Audience | Students enrolled in continuing education programs at Participating Schools |
| Loan Index | Average of the one month LIBOR<br>Quarterly adjustment |
| Margin | Various, please see pricing grids (Schedule 3.3) |
| Borrower Origination Fees | If applicable, added to loan balance at time of origination |
| Repayment Term | Up to 20 year (240 mo) level repay for all loan amounts<br><br>Interest rate increases may result in up to 30 additional monthly payments (and may increase the Repayment Term by up to 30 months). Additional interest rate increases may result in increased payment amount. |
| Repayment Options | Single Repayment Option |
| Interest Capitalization | Once at repayment<br>Again at the end of any forbearance periods<br>Quarterly prior to repayment for direct-to-consumer loans |
| Minimum Loan Amount | $1,500 |
| Maximum Loan Amount | Annual Limit:<br>    25,000 annually for education related expenses<br>+   5,000 for personal computer to use for school<br>   $30,000 TOTAL<br>Aggregate program loan maximum:  $130,000 |
| Past Due Balances | N/A |

13

CONFIDENTIAL NCSLT0309

{W0010681.3}

| B. Delivery | Specifications |
|---|---|
| Application Methods | Paper, Web, Telephone |
| Application Status | Web, Telephone |
| Underwriting | FICO score w/ analyst re-consideration<br>Conditional approval within minutes<br>Analyst re-consideration within two business days |
| School Certification | Enrollment verification required |
| Branding | Lender branding supported through web application and phone application |
| Disbursements | One per loan, check payable to borrower<br><br>Disbursements are processed for Program Lender by TERI using lender reimbursed sweep account with electronic notification to servicer<br><br>Truth-in-Lending Disclosure provided with disbursement |
| International Student Applicants | May apply with a creditworthy US citizen or Permanent Resident<br><br>Qualified applicant must have lived in the US at least 2 years |
| Enrollment Requirements | Enrolled in a continuing education program at a TERI approved school |
| Eligible Schools | All TERI approved schools (list available upon request), generally those schools with a FFELP cohort default rate of 12% or less |
| Repayment | (a) If the Student is enrolled in a degree or certificate-granting program at the school, the earliest of the dates which is (i) 180 days after the student graduates or earns the certificate, (ii) 180 days after the student ceases to be enrolled at the school, or (iii) 2 years after date of the last loan disbursement.<br>(b) If the student is not enrolled in a degree or certificate-granting program at the school, the earlier of the date which is (i) 180 days after the end of the current academic period, or (ii) 180 days after the student ceases to be enrolled at the school. |

14

CONFIDENTIAL NCSLT0310

{W0010681.3}

| C. Servicing | Specifications |
|---|---|
| Minimum Payment | $25 minimum monthly payment per loan |
| Reporting | Monthly servicer reports available<br>Monthly servicing systems downloads information for all active accounts by owner pool |
| Billing | Monthly billing<br>Depending on Servicer, loans can be combined on student's FFELP statements |
| Forbearance | Interest only or P + I forbearance only<br>Financial Hardship<br>Up to 12 months, life of loan in 6 month intervals |
| Exit Interview | Provided by servicer:<br>    Loan repayment schedule<br>    Forbearance and auto debit forms<br>    Servicing center contact list<br>    Borrower education materials |
| Default, Diligence, Cure | In accordance with guarantor's established policies |
| Borrower Access | Borrower's account status available on the web, which can be linked to lender's site |

15

CONFIDENTIAL NCSLT0311

{W001068 1 3}

# K-12 Loan Program Detail

| A. Terms | Specifications |
| --- | --- |
| Target Audience | Credit worthy Parents of students for primary and secondary education |
| Loan Index | Average of the one month LIBOR<br>Quarterly adjustment |
| Margin | Various, please see pricing grids (Schedule 3.3) |
| Borrower Origination Fees | If applicable, added to loan balance at time of origination |
| Repayment Term | Up to 20 Year level repay for loans of all amounts<br><br>Interest rate increases may result in up to 30 additional monthly payments (and may increase the Repayment Term by up to 30 months). Additional interest rate increases may result in increased payment amount. |
| Repayment Options | Repayment of principal and interest 45 days after final disbursement |
| Interest Capitalization | None |
| Minimum Loan Amount | $1,500 |
| Maximum Loan Amount | Annual limit:<br>25,000 annually for education related expenses<br>+   5,000 for personal computer to use for school<br>$30,000 TOTAL<br>Aggregate program loan maximum:  $130,000 |
| Past Due Balances | Can borrow past due amounts with school verification<br>No current enrollment status required |

16

{W0010681.3}

CONFIDENTIAL NCSLT0312

| B. Delivery | Specifications |
|---|---|
| Application Methods | Paper, Web, Telephone |
| Application Status | Web, Telephone |
| Underwriting | FICO score w/ analyst re-consideration<br>Conditional approval within minutes<br>Analyst re-consideration within two business days |
| Branding | Lender branding supported through web application and phone Application |
| School Certification | Enrollment verification required |
| Disbursements | Individual check payable to borrower<br><br>Disbursements done by TERI using lender reimbursed sweep account with electronic notification to servicer |
| International Student Applicants | None |
| Enrollment Requirements | At least ½ time in a primary or secondary program at a TERI approved school |
| Eligible Schools | All TERI approved schools (list available upon request) |
| Immediate Repayment | Repayment begins 45 days after disbursement |

CONFIDENTIAL NCSLT0313

{W0610681 3}

| C. Servicing | Specifications |
|---|---|
| Minimum Payment | $25 minimum monthly payment per loan |
| Reporting | Monthly servicer reports available<br>Monthly servicing systems downloads information for all active accounts by owner pool |
| Billing | Monthly billing |
| Forbearance | Financial Hardship<br>Interest only or P + I forbearance only<br>Up to 12 months, life of loan in 6 month intervals |
| Default, Diligence, Cure | In accordance with guarantor's established policies |
| Borrower Access | Borrower's account status available on the web, which can be linked to lender's site |

18

CONFIDENTIAL NCSLT0314

[W0010681 3]

## 3.    TERI Underwriting Guidelines

CONFIDENTIAL NCSLT0315

{W0010681.3}

<u>UNDERWRITING, ORIGINATION AND LOAN TERM</u>

<u>GUIDELINES FOR:</u>

<u>Charter One Bank, N.A.</u>

NextStudent Loan Program

NextStudent K-12 Loans
NextStudent Undergraduate Loans
NextStudent Graduate Loans
NextStudent Continuing Education Loans

**THE EDUCATION RESOURCES INSTITUTE, INC.**
330 Stuart Street
Boston, MA  02116

Revised: May 2, 2002
Effective as of: May 15, 2002

{W0010681.3}

CONFIDENTIAL NCSLT0316

## Table of Contents

**Overview**                                              pg.
I.        Scope of Coverage                               pg.
II.       Basic Program Design                            pg.

**Guidelines**                                            pg.
I.        Loan Acceptance Criteria                        pg.
          A.        General Policies                      pg.
          B.        Eligible Borrowers                    pg.
          C.        Creditworthiness Criteria             pg.
          D.        "Good Credit" Criteria                pg.
          E.        Documentation Required                pg.
          F.        Faxed Signature Policy                pg.

II.       Loan Program Terms                              pg.
          A.        Loan Amount                           pg.
          B.        Interest Rate                         pg.
          C.        Guaranty Fee                          pg.

III.      Guideline Amendment Process                     pg.

**Schedule A**                                            pg.

**Schedule B**                                            pg.

**Schedule C**                                            pg.

**Schedule D**                                            pg.

CONFIDENTIAL NCSLT0317

{W0010651 3}

# OVERVIEW

## I. Scope of coverage

Charter One and TERI, in coordination with the Program Manager (hereinafter defined), have adopted the following Program Guidelines ("Guidelines") to apply to all NextStudent loans made pursuant to the Guaranty Agreement (NextStudent Loan Program) dated May 15, 2002, between Charter One and TERI. Unless otherwise agreed hereafter, these Guidelines do not apply to loans made pursuant to any other Guaranty Agreement between Charter One and TERI, which remain in full force and effect according to their terms.

## II. Basic Program Design

- The **NextStudent K-12 Loan** is a fully credit-tested education loan for students enrolled in private primary or secondary schools. The parent is the primary obligor; co-borrowers are accepted if necessary to meet credit criteria.
- The **NextStudent Undergraduate Loan** is a fully credit-tested education loan. The student is the primary obligor; co-borrowers are accepted if necessary to meet credit criteria.
- The **NextStudent Graduate Loan** is a fully credit-tested education loan. The student is the primary obligor; co-borrowers are accepted if necessary to meet credit criteria.
- The **NextStudent Continuing Education Loan** is a fully credit-tested education loan. The student is the primary obligor; co-borrowers are accepted if necessary to meet credit criteria.
- Borrowers may use these loans to finance the current academic year's educational expenses and past due balances, subject to certain minimum and maximum amounts.
- Charter One and NextStudent may solicit borrowers directly to promote these loan programs to students and parents. Charter One and NextStudent may distribute branded application materials to targeted families, as well as make them available generally (e.g., via the Internet). Applications may be submitted by mail, by phone and via the Internet. Pursuant to a Referral Marketing Agreement, the principal marketing of the NextStudent Loan Program will be conducted by NextStudent.
- Loan proceeds are distributed directly to the borrower and co-borrower in a single disbursement unless the applicant has not submitted timely proof of enrollment, in which case the loan check will be made co-payable to the student and the Participating School.

22

CONFIDENTIAL NCSLT0318

## GUIDELINES

I.    **Loan Acceptance Criteria:**

A.    **General Policies**

In order to obtain a loan under any of the programs described above, an applicant must be an eligible borrower, meet certain credit criteria, and be within the maximum loan limits (including aggregate education debt limits) that are set forth in the attached Schedules. No borrower who meets the eligibility requirements and qualifies under the above standards may be denied a loan within the applicable loan limits. Conversely, if a borrower is not eligible and does not meet the credit standards of these guidelines, he/she may not obtain a loan except pursuant to the overrides specifically permitted in these Guidelines.

B.    **Eligible Borrowers-**

1.    The student borrower must be enrolled on at least a half time in a Participating School (except for Continuing Education Program borrowers—see below). For all loans except NextStudent K-12 loans and continuing education loans, the program in which the student is enrolled must be a degree- or certificate-granting program.

2.    The student borrower must be at least the age of majority at the time of the loan application. (This does not apply to NextStudent K-12 loan students, because they are not signatories on their promissory notes.)

3.    In order to qualify for subsequent loans, the student must maintain satisfactory academic progress (except for Continuing Education Program borrowers—see below). Satisfactory academic progress is defined as matriculating to the next grade level each academic year. Exceptions to this policy may be made, but only with the explicit written approval of the Lender, FMER and TERI.

4.    Joint application is not required. If a second signer is necessary to meet credit criteria, or desired by the borrowers, then both applicants become joint applicants for the benefit of the student and co-borrowers under the promissory note. Borrower and co-borrower(s) need to sign the application and promissory note to be eligible for the loan. Unless the context requires otherwise, wherever the term "borrower" is used in these Guidelines it refers to all co-borrowers of a note collectively.

5.    U. S. Citizenship/Permanent Residency Status - On each loan, the borrower must be a United States citizen/national or a Permanent Resident alien of the United States. (If there are multiple borrowers on a loan, then at least one borrower who meets these citizenship requirements must also meet the credit criteria (see below).) Every applicant who is *not* a citizen must submit one of the following forms of documentation:

a)    INS 151 or INS 551 or 1551 form with a valid expiration date or
a departure record (1-94) with a valid expiration date issued from the INS showing "Refugee" or "Asylum Granted" or "Indefinite Parole" and/or humanitarian parole.

b)    In the case of a student, a copy of his or her student visa, F-1 or I –20 form.

6.    The standards for school eligibility to participate in these loan programs vary from program to program. Any minimum criteria such as accreditation or cohort default rate are set forth in the Schedule applicable to the particular program. These criteria can be waived on a case by case basis by agreement of TERI, the Lender, and the Program Manager. Those three entities will maintain a list of approved Participating Schools, which will be updated from time to time in

[W-0010681 ?]                                                                                            CONFIDENTIAL NCSLT0319

accordance with the procedures, if any, referenced in the Guaranty Agreement, or as otherwise agreed. Should a school's eligibility to participate in the Program cease, TERI will remove the school from such list effective with new applications received from date of notice and the completion of requisite system changes (unless TERI, the Lender and Program Manager mutually agree to allow the school to continue as a Participating School). Loan applications in process at the time of notice are to be processed normally.

7.   The applicant must submit one of the following proofs of enrollment that includes the school name and the name of the borrower:

   a) a letter from the Participating School,
   b) a bill or receipt for the upcoming term, or
   c) a letter of acceptance, in the case of a new incoming student.

In addition, if the student wishes to borrow amounts in excess of a Participating School's published cost of attendance, a letter is required from the School stating that these additional funds are needed as an education expense. Costs verified in this manner are consider part of the "Cost of Education" for purposes of the program maximums set forth in the attached Schedules.

If the student does not submit timely proof of enrollment, the Loan may be approved but the check must be made co-payable to the student and the Participating School.

No verification is required for amounts requested by the borrower for the purchase of a personal computer to be used in school, but any such request is subject to a cap as stated in the Schedules.

## C.   Creditworthiness Criteria-

Creditworthiness is mandatory for at least one applicant for any loan. This section of the Guidelines discusses what "creditworthiness" means.

### 1.   Credit Analysis.

The process of credit underwriting for all loan programs begins with obtaining an online credit bureau report for each applicant. The underwriter must analyze this report

(1) to determine if the **credit score** meets the minimum criteria for the particular loan program concerned,
(2) to determine if the **credit bureau rating** indicates the presence of derogatory items, and if so, then,
(3) to determine if the report meets the additional **judgmental criteria**.

#### ➢ Credit Bureau Criteria

a.  The credit bureau report must indicate a credit score that meets or exceeds the minimum requirement for the particular loan program concerned. (See the Schedules attached to these Guidelines for the score criteria.)
Note: TERI reserves the right to raise the credit score cutoff by up to 20 points during the course of a program year in response to changes in the credit quality of applications. In addition, in programs with tiered pricing, if a disproportionate volume of loans are referred by Marketer in tiers 3 and 4, TERI reserves the right to suspend approvals of loans in those tiers.

b.  The Credit Bureau Rating must be E1 or better. (An E1 rating indicates the presence of no more than one (1) major derogatory item).

c.  If the Rating is E1, the underwriter must review the report to determine that the derogatories meet the judgmental criteria set forth below.

24

d. For some borrowers, the judgmental criteria apply even if the Credit Bureau Rating is a D rating (D1, D2, etc.) (indicating one. two, or more derogatories but no major derogatories).   The borrowers to which this applies are identified on the attached Schedules.

> ➢ **Judgmental Criteria**

Where the underwriter is required to apply judgmental criteria to a credit bureau report, a loan may not be approved unless there is:

a. At least two years of credit history.

b. No record of a paid or unpaid charged off account over $200.00 within the past five years. *(An override may be granted after thorough review.)*

c. No record of a foreclosure, repossession, open judgment or suit, unpaid tax lien, or other negative public record items in the past seven years. *(An override may be granted where the  Applicant provides written documentation demonstrating the obligation has been paid.)*

d. No record of a bankruptcy in the past ten years.  *(An override may be granted where the Applicant provides written documentation demonstrating that the circumstances leading up to the bankruptcy were beyond his/her control.  Examples - large medical expenses; unemployment due to being laid off, etc.)*

*and*

e. No record of a student loan default. *(An override may be granted where the Applicant provides written documentation demonstrating the obligation has been paid.)*


2. **Additional Creditworthiness Criteria**

In order to be "creditworthy," a borrower must also meet the following employment, income, and length of residence criteria:

> ➢ **Employment and Income Verification**

1. **If the borrower is a Wage Earner:**

a. Borrower must supply a pay stub not more than sixty (60) days old that states the employer's name. If not available, letter from employer on company on letterhead stationary listing gross yearly salary and year-to-date earnings is acceptable.

b. If pay stub does not describe the number of hours employed, additional documentation can substitute:

    (i) A letter from employer(s) documenting start date(s), full-time status and hours worked; or
    (ii) Previous W2 statement or the first two pages of the most recent tax return.  The total gross annual wage will be divided by the amount listed on most recent pay stub.

(Note: Disability, military or maternity leave will not be deducted from time of employment.)

c. Borrower must have been employed at current or former employers for a minimum of two (2) continuous years (employment may have ended within 90 days of application).

{W 0010681.1}

CONFIDENTIAL NCSLT0321

d. If borrower is a Student and wishes to have his/her wage income used in the loan decision, borrower must submit, *in addition to the above,* a letter from his/her employer on company letterhead stating that he/she will be working while in school.  The letter must list his/her gross annual salary, year to date figure, and start date.

2. **If borrower is Self Employed:**

a. Must submit a signed copy of the last two (2) years' Federal personal income tax returns with all schedules plus a copy of the most recent Federal income tax return for each corporation or partnership that such applicant cites as an income source. (Must have been operating business for a minimum of 24 months.)

   **Or**

b. Must arrange for underwriter to receive an itemized statement of income and expense for the most recent tax year from a certified public accountant on the accountant's letterhead stationary.

3. **If borrower is Retired,** he/she must submit:

a. A copy of most recent pension statement (1099), and

b. A copy of most recent social security income statement (1099).

4. **If borrower cites OTHER INCOME** (interest, rental etc.) in application, he/she must submit a signed copy of most recent Federal personal income tax return with all schedules.


## ➢ SPECIAL INCOME AND EMPLOYMENT VERIFICATION RULES  FOR SMALLER LOANS TO CREDITWORTHY BORROWERS WITH A SCORE GREATER THAN OR EQUAL TO 680

1. For those creditworthy co-borrowers who meet the following criteria:
   A wage earner
   Applies for $10,000 or less
   Scores a 680 or greater
   Applying for an undergraduate, graduate, or K-12 (but not continuing education) loan, will be requested, **BUT NOT REQUIRED**, to verify income/employment through the stated forms of verification.


2. If a creditworthy co-borrower meets the above criteria but does not provide documentation of 2 years of continuous employment the following verification and action will be taken:

   A. Telephone verification of employment will substitute for income and employment documentation omitted by the co-borrower.

   B. Income and employment verification may be waived in the discretion of the analyst..

If telephone verification is attempted a written record, signed by the analyst will document the name and title of employer, dates of employment, calls, contacts, or waiver of the verification criteria.

The above income/employment waiver is subject to quarterly review and may be revoked by TERI at anytime.

26

{W0010661 3}

Written notification will be given by TERI if revocation occurs.

All other current income and employment criteria will remain the same for self-employed individuals, retired individuals, students applying in their own name as creditworthy, continuing education loans, and borrowers applying for more than $10,000.

> ➢ **Length of Residency**

If a borrower is applying on the basis of creditworthiness, then at least one creditworthy borrower must have:

a.  resided at his/her current address for a period exceeding twelve (12) months, **and**
b.  resided in the United States for the past two(2) years.

**D.  "Good Credit" Criteria**

In some programs, if there is a creditworthy co-borrower, the primary borrower need only have "good credit." Where this lower standard applies, it is noted on the Schedules attached to these Guidelines. To have good credit, an applicant must pass the same credit report analysis as a creditworthy applicant, but need not meet the additional employment, income, and residency requirements for creditworthiness. In other words, the applicant must pass the credit score test and credit rating test (or, in the alternative, judgmental test) described in Section C.1 above ("Credit Analysis"), but not the requirements of C.2 above ("Additional Creditworthiness Criteria").

**E.  Documentation required for final approval-**

1.  APPLICATION/PROMISSORY NOTE- Signed by all borrowers
2.  VERIFICATION OF ENROLLMENT
3.  SCHOOL INVOICE (If loan is being taken out to pay a past due balance)
4.  INS CARD/PROOF OF PERM RESIDENCY
5.  CREDIT BUREAU REPORT - for all borrowers
6.  FULL RECOURSE LETTER (if applicable)
7.  INCOME VERIFICATION LETTER (if applicable)
8.  REVOLVING DEBT BURDEN CALCULATION (if applicable)

TERI will forward to the Lender's servicer the application and promissory note and such other documentation as the servicer may need to retain in order to submit a guaranty claim.

**F.  Faxed Signature Policy**

If Charter One approves "borrower instructions" permitting faxed signatures, FMER and TERI will be accepting faxed borrower and co-borrower signatures on promissory notes and credit applications as final signatures. Under the terms of the Guaranty Agreement, Charter One is responsible for determining that fax signatures comply with all applicable State laws other than Massachusetts.

**II.  Loan Program Terms-**

  **A. Loan Amount-** Subject to the credit underwriting criteria described in Section 1, the borrower may obtain funds under the program, up to the applicable annual, program, and aggregate maximums identified on the Schedules to these Guidelines.

  **B. Interest Rate-** The interest rate(s) applicable to each program are set out in Schedule 3.3 to the Guaranty Agreement, which is incorporated into these Guidelines by reference. In each case the rate is calculated by adding to the LIBOR index a particular margin, e.g., "LIBOR plus 4.65%."

{W0010681 1}                                        CONFIDENTIAL NCSLT0323

"LIBOR" for these purposes means the average of the one-month London Interbank Offered Rates published in <u>The Wall Street Journal</u> on the first business day of each of the three (3) calendar months immediately preceding each change date.

**C. Guaranty Fee**- The Lender will pay a guaranty fee for every loan in a given program.  The amount(s) of guaranty fees and the timing of payment are set forth in Schedule 3.3 to the Guaranty Agreement.

III.    **Guideline Amendment Process:**

Modifications or changes to the suggested Guidelines will be made pursuant to the procedures outlined in the Guaranty Agreement.

CONFIDENTIAL NCSLT0324

{W0010651.3}

## Schedule A
## NextStudent
# UNDERGRADUATE LOAN PROGRAM DEFINITIONS

## ELIGIBILITY:

- Undergraduate students enrolled at least ½ time in a degree or certificate program at a Participating School.
- Credit score for creditworthy student applicant applying without creditworthy co-applicant: see Schedule 3.3.
- Credit score for student applicant and creditworthy co-applicant:
  Student:       see Schedule 3.3
  Co-applicant:  see Schedule 3.3.
- Judgmental signoff required if rating is:
  D1 or worse for returning borrowers;
  E1 or worse for new borrowers.
  [See Creditworthiness Criteria for definition of "D1" and "E1" ratings.]

## PARTICIPATING SCHOOLS:

An eligible school is any accredited degree-granting undergraduate institution of higher education in the United States or Canada or other schools approved by TERI. Lenders will receive periodic listings of approved schools. Upon the LENDER'S request, TERI will review other institutions for approval and provide written confirmation to the LENDER.

In order to receive TERI approval, a school must have a default rate as reported by the U.S. Department of Education no greater than twelve percent (12%). Upon TERI's request, a school must submit three years of its audited Financial Statements, as well as such other documentation as TERI may require, based on the circumstances of the request (e.g., school catalog, proof of accreditation, proof that the school is operating legally in the state in which it is located, certification that it is in compliance with all laws of that state concerning its education curriculum, etc.).

Further, TERI reserves the right to require additional financial information if the school has been in existence less than five years.

Also, the LENDER will be advised, in writing, of any school for which TERI has revoked its approval. The revocation has no retroactive effect.

## LIMITS:
- Minimum loan amount:  $1500
- Maximum loan amount:  25,000 annually for education related expenses
  +    5,000 for personal computer to use for school
       $30,000 TOTAL
- Aggregate NextStudent maximum:  $130,000

## REPAYMENT:

- Repayment varies depending on loan type as follows:
  - (i) For immediate repayment loans, payment of principal and interest begins 45 days after the last disbursement;
  - (ii) For loans with deferred principal and interest, repayment of principal and interest begins 180 days after graduation (or if the student ceases to be enrolled at least half-time prior to graduation, repayment of principal and interest begins 180 days after that event), or
  - (iii) For loans with deferred principal payments, interest payments begin 45 days after the

29

{W0010683.3}                                                                                          CONFIDENTIAL NCSLT0325

loan's first disbursement, and principal payments begin 45 days after graduation (or if the student ceases to be enrolled at least half-time prior to graduation, repayment of principal begins 45 days after that event).

- Minimum monthly payment—$25
- Up to 20 years to repay if loan amount is less than $40,000; Up to 25 years to repay for loan amounts over $40,000.
- For all loans, interest is capitalized once at repayment and then again at the end of any forbearance period. In addition, for loans in full deferment of both interest and principal, interest is capitalized quarterly prior to repayment.

## DEFERMENT OPTIONS:

- Defer principal and pay interest for up to four years while continuously enrolled in school (5 years if enrolled in 5-year degree program), plus 45 days after graduation.
- Defer both principal and interest for up to four years (5 years if enrolled in 5-year degree program), plus 180 days after graduation.

## INTEREST RATES:

Interest rates are set forth in Schedule 3.3 to the Guaranty Agreement.

## FEES:

Guaranty fees are set forth in Schedule 3.3 to the Guaranty Agreement.

## PROGRAM CODES:

- – deferred principal and interest
- – immediate repayment of principal and interest
- – deferred principal (interest only payments)

30

CONFIDENTIAL NCSLT0326

{W00106813}

## Schedule B
## NextStudent
## CREDITWORTHY GRADUATE LOAN
## PROGRAM DEFINITIONS

### ELIGIBILITY:

- Graduate/Professional students enrolled at least ½ time in a degree or certificate program at a graduate school approved by Charter One, FMER, and TERI.
- Credit score for creditworthy student applicant applying without creditworthy co-applicant: see Schedule 3.3.
- Credit score for creditworthy co-applicant: see Schedule 3.3.
- Judgmental sign-off required if rating is:
    E1 or worse for new creditworthy borrowers
    D1 or worse for returning creditworthy borrowers.
    (See Creditworthiness Criteria for definition of "D1" and "E1" ratings.)

### PARTICIPATING SCHOOLS:

An eligible school is any institution of higher education in the United States or Canada that is accredited to grant master and/or doctorate degrees, or the equivalent, in any professional field, that has been been approved by TERI. Lenders will receive periodic listings of approved schools. Upon the LENDER'S request, TERI will review other institutions for approval and provide written confirmation to the LENDER.

In order to receive TERI approval, the school must have a default rate as reported by the U.S. Department of Education no greater than twelve percent (12%). Upon TERI's request, a school must submit three years of its audited Financial Statements, as well as such other documentation as TERI may require, based on the circumstances of the request (e.g., school catalog, proof of accreditation, proof that the school is operating legally in the state in which it is located, certification that it is in compliance with all laws of that state concerning its education curriculum, etc.).

Further, TERI reserves the right to require additional financial information if the school has been in existence less then five years.

Also, the LENDER will be advised, in writing, of any school for which TERI has revoked its approval. The revocation has no retroactive effect.

### LIMITS:
- Minimum loan amount: $1,500
- Maximum loan amount: 25,000 annually for education related expenses
    +   5,000 for personal computer to use for school
    $30,000 TOTAL
- Aggregate NextStudent Loan maximum: $130,000

### REPAYMENT:

- Repayment begins 180 days after graduation or separation.
- Minimum monthly payment—$25
- Up to 20 years to repay if loan amount is less than $40,000; up to 25 years to repay for loan amounts greater than $40,000.
- For all loans, interest is capitalized once at repayment and then again at the end of any forbearance period. In addition, interest is also capitalized quarterly prior to repayment.

CONFIDENTIAL NCSLT0327

{W0010681.3}

DEFERMENT OPTIONS:

- All loans have deferment of principal and interest while student remains enrolled at least half-time, up to a maximum of 4½ years from the date of the first disbursement of the Loan. (The 4½ year period includes the 180-day post-graduation deferment.)
- Medical students can request a deferment after graduation for up to four years while completing an internship or residency, as long as it does not exceed the program maximum of 8 ½ years of deferment.

INTEREST RATES:

Interest rates are set forth in Schedule 3.3 to the Guaranty Agreement.

FEES:

Guaranty fees are set forth in Schedule 3.3 to the Guaranty Agreement.

PROGRAM CODE:

- 

{W-0010651.3}    CONFIDENTIAL NCSLT0328

# Schedule C
## NextStudent
## CONTINUING EDUCATION LOAN PROGRAM DEFINITIONS

### ELIGIBILITY:

- Students enrolled less than ½ time in continuing education program at Participating Schools.
- Credit score for creditworthy student applicant applying without creditworthy co-applicant: see Schedule 3.3.
- Credit score for student applicant and creditworthy co-applicant:
    Student:       see Schedule 3.3.
    Co-applicant:  see Schedule 3.3 .
- Judgmental signoff required if rating is:  D1 or worse for returning borrowers
                                             E1 or worse for new borrowers
  [See Creditworthiness Criteria for definition of "D1" and "E1" ratings.]

### PARTICIPATING SCHOOLS:

An eligible school is any accredited degree-granting institution of higher education in the United States or Canada, or other schools approved by TERI. Lenders will receive periodic listings of approved schools. Upon the LENDER'S request, TERI will review other institutions for approval and provide written confirmation to the LENDER.

In order to receive TERI approval, the school must have a default rate as reported by the U.S. Department of Education no greater than twelve percent (12%). Upon TERI's request, a school must submit three years of its audited Financial Statements, as well as such other information as TERI may require, based on the circumstances of the request (e.g., school catalog, proof of accreditation, proof that the school is operating legally in the state in which it is located, certification that it is in compliance with all laws of that state concerning its education curriculum, etc.).

Further, TERI reserves the right to require additional financial information if the school has been in existence less than five years.

Also, the LENDER will be advised, in writing, of any school for which TERI has revoked its approval. The revocation has no retroactive effect.

### LIMITS:
- Minimum loan amount: $1,500
- Maximum loan amount:  25,000 annually for education related expenses
                        +   5,000 for personal computer to use for school
                        $30,000 TOTAL
- Aggregate NextStudent Loan maximum:  $130,000

### REPAYMENT:

- (a) If the Student is enrolled in a degree or certificate-granting program at the school, the earliest of the dates which is (i) 180 days after the student graduates or earns the certificate, (ii) 180 days after the student ceases to be enrolled at the school, or (iii) 2 years after date of the last loan disbursement.
  (b) If the student is not enrolled in a degree or certificate-granting program at the school, the earlier of the date which is (i) 180 days after the end of the current academic period, or (ii) 180 days after the student ceases to be enrolled at the school.

CONFIDENTIAL NCSLT0329

{W00106813}

- $25 minimum monthly payment.

- Up to 20 years to repay for all loan amounts.

- For all loans, interest is capitalized once at repayment and then again at the end of any forbearance period. In addition, interest is also capitalized quarterly prior to repayment.

<u>DEFERMENT OPTIONS</u>:

Full deferment of interest and principal prior to repayment

<u>INTEREST RATE</u>:

Interest rate is set forth in Schedule 3.3 to the Guaranty Agreement.

<u>FEES</u>:

Guaranty fees are set forth in Schedule 3.3 to the Guaranty Agreement.

<u>PROGRAM CODE</u>:

CONFIDENTIAL NCSLT0330

{W0010681.3}