# ADDENDUM DATED MAY 1, 2003
## to
## SERVICING GUIDELINES DATED SEPT. 27, 2000

1. Cancellation Policy. The following provisions replace the section titled "Refunds/Cancellations" in the Servicing Guidelines for TERI Loan Programs Serviced at SLSC/GLC dated September 27, 2000 (the "Guidelines"). This Revision replaces the side letters dated September 12, 2001 and September 18, 2001 and is effective upon approval by TERI and AES.

## SCHOOL/BORROWER CANCELLATIONS

The Cancellation Window differs for school certified loans ("School Channel") and loans funded direct to consumers without school certification ("DTC"). The Cancellation Window for School Channel is ninety (90) days after disbursement. The Cancellation Window for DTC is thirty (30) days after disbursement. TERI shall specify which products are DTC or School Channel.

Any disbursement returned to TERI within the Cancellation Window will result in the Servicer posting a full cancellation of the disbursement including fees and interest. A full cancellation is a refund received in the amount equal to the disbursement and/or loan amount.

If the school or borrower returns funds directly to the Servicer, the funds will be posted effective the date the funds are received. If the full loan amount is received from the school within the Cancellation Window, the Servicer will automatically reverse the fees and the outstanding interest will be written off. If the borrower sends in a payment that may equal the amount of the disbursement, the payment will be posted as a borrower payment and no fees will be waived. If the lender and TERI agree the payment should be treated as a cancellation within the Cancellation Window, the payment can be reversed and posted as a cancellation. The Servicer will then send a request to TERI for the outstanding guarantee fee credit. This cash credit will be returned to the Servicer on the lender's behalf via their customer account. Partial cancellations received at any time will be posted as a principal-only payment and no fees or interest will be waived on the borrower's account. Any cancellation received outside of the Cancellation Window will be posted as a principal-only payment and no fees or accrued interest will be waived or returned. However, on a case by case basis TERI will allow exceptions beyond the Cancellation Window for unusual circumstances such as mail delays and escalated customer service issues.

## CANCELLATION PROCESSING

When TERI receives the cancellation payments, TERI will send the borrower's full cancellation amount including Guaranty Fees to the Servicer along with a completed detailed transmittal form on a daily basis. TERI will endorse all checks with "Pay to the order of AES". This process will provide both the client and borrower satisfaction in that the borrower's account will have a zero balance and the client will receive the Guaranty Fees within the same month as the borrower's full cancellation. The lenders guarantee fees will be credited by the Servicer as miscellaneous

1

CONFIDENTIAL NCSLT0446

cash adjustments, and will be identified as full guarantee fee, lender fee (LF), or no fee (NF) depending on the type of loan.

Transmittal forms and checks should be sent to:    **AES Financial Adjustments HQ5, 1200 North 7th Street, Harrisburg, PA 17102-1444.** Telephone (717) 720-3130, Fax (717) 720-3913, or e-mail dsaaoud@aessuccess.org, abeck@aessuccess.org, cleining@aescuccess.org.

Some cancellation funds may be sent to the Servicer via ACH, and the transmittals for these funds will then be faxed to the above contact, and an e-mail confirmation will be done between TERI and the Servicer.

*The Servicer will process the full cancellation as listed in the example below:*

*Example:     Borrower Loan Amount  $5,000.00*

| | |
|---|---|
| *$4,700.00* | *posted with a 1045C cash transaction code (returned disbursement amount)* |
| *($300.00)* | *posted with a 1401A non-cash transaction code (guarantee fee amount)* |
| *$300.00* | *misc. cash posting to the client's Customer Account (guarantee fee amount)* |
| *$5,000.00* | |

2. Armed Forces Deferment Policy. The following provisions are effective upon notice to the Servicer that all owners of TERI - guaranteed loans have consented to these changes, plus such additional time as is required to implement the policy at the Servicer. The Servicer will notify owners of TERI-guaranteed loans when the policy becomes effective. Upon effectiveness of the policy, the Servicer may, but is not required to, apply it retroactively to December 31, 2001.

"Armed Forces Deferment Policy"

TERI Armed Forces deferment is intended to cover an active duty status in the U.S. Armed Forces for up to (36) thirty-six months. In order to be eligible for this deferment, the borrower must submit proof of military mobilization or call to active duty with a beginning and end date. If no end date is provided, the deferment will be approved for one year. During the deferment period, borrowers will not receive bills but will receive interest notices. Interest will accrue and be capitalized at the end of the deferment period. The Servicer will notify borrowers that capitalization at the end of deferment is part of the policy.

The Servicer may also grant an administrative forbearance to cover any delinquency prior to the date the documentation is received, if it is not covered by the military deferment. Any borrowers who were in school when placed on active duty and returning to school after their active duty can be eligible for school forbearance for up to 48 months.

3. Billing to Co-Signers. The following provision is added to the Guidelines. The following provision is effective immediately.

CONFIDENTIAL NCSLT0447

"Billing Co-Signers. Certain TERI programs include tiered pricing and credit approval. Certain lower tiers require billing directly to the co-signer and not the student borrower. TERI will designate, in a mutually acceptable manner, those loans that should be billed to the co-signer. These bill recipients cannot be changed throughout the life of the loan."

4. Original Note Form; Revised TERI Note Process. The following provision is added to the Guidelines. The following provision is effective immediately.

"Definition of 'Original Note Form' for computer-generated notes.

Loans originated at TERI are currently documented on computer-generated credit agreement forms and not preprinted forms, in the vast majority of cases. The borrower is permitted to enter into the credit agreement by signing and returning the cover page or pages of the multi page form. TERI maintains a record of the standard "boiler plate" on the succeeding pages. For purposes of claim filing procedures and record maintenance at the Servicer, the signed first or first two pages of the note (beginning with the borrower and lender name and ending with a signature) shall be deemed the "original note." Because facsimile signatures are accepted for TERI-originated loans for certain lenders, a legible reproduction of the signature page (whether a fax or a duplicate of a fax) shall be considered an "original" unless accompanied by a cover sheet identifying it as "copy of wet signature note, original not available. If TERI provides a wet signature note, Servicer will maintain that note."

5. Extended Enrollment Period for Health Professions. The following provision is added to the Guidelines. The following provision is effective immediately.

"Extended enrollment for certain health loans.

Regardless of program year the loan programs listed below will be eligible for an additional twelve or twenty-four-month enrollment period in order to complete a fifth or sixth year of school, prior to starting an internship or residency, if required by their program. Students may not exceed seventy-two months of an enrollment period. All borrowers covered by this paragraph must enter into repayment within ten and three quarters years of the first disbursement date. Servicer is not required to obtain certification of the program requirements for enrollment duration at a school. Servicer may rely on the fact of enrollment as certified (a) in writing by a school official or (b) in any customary medium previously set forth in these Servicing Guidelines under IN SCHOOL/GRACE ELIGIBILITY, when implementing this provision.

- Health Professions Loan Programs (HPL or HLTHLN)

- IEFC Offshore Medical Loan Programs

- IEFC Medical Select Loan Programs

- IEFC Medical Residency Loan Programs

- IEFC ISLP Health/Medical Loan Programs"

6. Appeal Period for Claim Rejects.

This section of the Guidelines is revised to read as follows:

APPEAL PERIOD FOR CLAIM REJECTS

The SERVICER will have 90 days to appeal a decision by TERI to reject a claim or impose an interest penalty for either origination error(s) or omissions in the servicing of the loan as specified in these Servicing Guidelines. If the Servicer fails to appeal the rejection within 90 days, the Servicer may nevertheless attempt to reinstate the guaranty by using the Cure Procedures, set forth below. A new 90 Day Appeal Period is started for each subsequent rejection if the reason for rejection differs from the initial reject reason(s); however, if the initial reject reasons(s) has (have) not been addressed, the claim will be rejected without regard to subsequent reject reasons. The SERVICER will not be held liable for the time TERI processes the appeal during the appeal period. The 90 Day Appeal Period begins four (4) calendar days after the date TERI sends the decision to the SERVICER, also know as the "date shipped." If a missing document is located from an outside entity following the appeal period, the loan will become eligible for reinstatement of guarantee by using the established Cure Procedures.

This change shall become effective immediately.

7. Cure Procedures.

The first sentence of the first paragraph on page 10 is deleted and replaced with the following:

"If a claim has been rejected due to due diligence violations, untimely claim filings or untimely claim appeals the guarantee will be reinstated if the SERVICER is successful in collecting payments from the borrower in one of three ways."

This change is effective immediately.

8. Appendix A.

All references to "182 days" are deleted and replaced with "90 Days."

This change is effective immediately.

9. Default Claims

Under the heading "Default Claims," after the words "Credit Bureau Report," add the words: "(not required for TERI-originated loans)."

This change is effective immediately.

10. <u>Effectiveness of This Addendum</u>.

Pursuant to the last section of the Guidelines, this Addendum is submitted to all LENDERS for review and comment. Any provision not objected to within 60 days shall become part of the Guidelines. In order to facilitate immediate implementation of socially imperative changes such as Military Forbearance, Servicer intends to commence programming after 30 days. TERI and Servicer request LENDER comment, if any, within that period.

APPROVED:                           APPROVED:
TERI                                AES/PHEAA

By: _____               By: _____
Date: ___5|7|03___                  Date: __5/13/03__

# ADDENDUM DATED May 1, 2004
to
## SERVICING GUIDELINES DATED SEPT. 27, 2000

The following provisions are added as new paragraphs in the Servicing Guidelines for TERI Loan Programs Serviced at SLSC/GLC dated September 27, 2000, as amended by an Addendum dated May 1, 2003 (the "Guidelines").

## REPAYMENT EFFECTIVE DATE (CONVERSION) FOR MULTIPLE DISBURSEMENT, IMMEDIATE REPAYMENT LOANS.

Immediate repayment loans that involve more than one disbursement require the SERVICER to suspend commencement of repayment of the loan pending completion or cancellation of scheduled disbursements. SERVICER will place multiply disbursed immediate repayment loans in interim or not fully disbursed status pending notice that any additional anticipated disbursements have either occurred, been withdrawn, or been cancelled. The SERVICER and TERI agree that such notice may be provided in a variety of forms including, but not limited to, regular daily and weekly electronic disbursement files from the originator. The Lender, or the loan originator acting on its behalf will promptly notify the SERVICER that the anticipated disbursements have occurred, been cancelled, or withdrawn.

At this time the effective date of repayment for an immediate repayment loan is between 30 to 60 days of the last disbursement date. However, multiply disbursed immediate repayment loans with a cancelled or withdrawn anticipated disbursement will enter repayment 30 to 60 days from the date the notice from the originator is received by SERVICER.

## DEFAULT CLAIMS

Immigrant Naturalization Services (INS) card (if applicable) will be revised to include the following types of documentation:
Borrowers:
- INS 151 or INS 551 or 1551 form with a valid expiration
- A departure record (1-94) with a valid expiration date issued from the INS showing "Refugee" or "Asylum Granted" or "Indefinite Parole" and/or humanitarian parole.

Students:
- Copy of his or her student visa, permanent resident card, F-1 or I –20 form.
- Permanent Resident Aliens must provide a copy of a valid Permanent Resident/Alien card

## REPAYMENT EFFECTIVE DATE FOR LOANS WITH ENROLLMENT PERIODS LESS THAN THE DISBURSEMENT DATE AT TIME OF CONVERSION

All loans with an enrollment period less than the last disbursement date will be added to the servicing system with a separation date equal to the last disbursement date.

(W0227407.2)

1

CONFIDENTIAL NCSLT0451

## NATURAL DISASTER FORBEARANCE

The SERVICER will be allowed to determine when borrowers are eligible to receive Disaster Area Forbearances based on the following guidelines. If a borrower calls and states their home or Place of Employment has been affected by a NATURAL disaster and they are having difficulty making payments, the SERVICER will use the following procedures:

Obtain and document the following information:

Type of NATURAL Disaster (Weather Related - i.e. Tornado, Hurricane, Flood)
Did the Disaster affect their Home or Place of Employment?
Date of the Disaster
Date the borrower was affected by the Disaster

The Disaster Forbearance will begin on the later of the date of the disaster or the date the borrower was affected and continue for 3 months. A continuation beyond the 3-month period will require the borrower to request a Temporary Hardship Forbearance. A verbally approved Temporary Hardship Forbearance will be used to cover delinquency that exists prior to the begin date of the Disaster Area Forbearance.

## EFFECTIVENESS OF THIS ADDENDUM

Pursuant to the last section of the Guidelines, this Addendum is submitted to all LENDERS for review and comment. Any provision not objected to shall become part of the Guidelines on July 1, 2004. TERI and SERVICER request LENDER/OWNER comment, if any, within 30 days of receipt.

APPROVED:
TERI

By: _Michael Lambee_
Date: _4/23/04_

APPROVED:
AES/PHEAA

By: _James R Preston_
Date: _4/27/04_

CONFIDENTIAL NCSLT0452

## 4. A. Promissory Notes

CONFIDENTIAL NCSLT0453

## Charter One Bank Loan Request/Credit Agreement Instructions

You have been conditionally approved for a Private Education Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document**
**Urgent Reply Requested**

## Follow these 4 Steps to receive your loan funds quickly:

_____ **1. REVIEW** all pre-printed information, complete and **SIGN** the Loan Request/Credit Agreement

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change. Please do not use correction fluid ("white out") for any changes.
- If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), be sure to legibly sign and date the bottom of the first page of the Loan Request/Credit Agreement. Signatures of the borrower and cosigner must match the names pre-printed on the Loan Request/Credit Agreement.
- Do not cross out anything in the date or signature fields. If you have made an error on the signature or date lines, please contact us as you will need to complete a new promissory note.

_____ **2. ATTACH** proof of income

- For regular wage earners: provide a copy of the cosigner's current paycheck stub not more than 60 days old that contains the company name and the name of the employee.
- For self-employed individuals: provide the cosigner's Federal tax returns for the last 2 years, complete with all schedules and signatures.
- For retired individuals: provide the cosigner's 1099 forms for the last 2 years.

_____ **3. ATTACH** proof of school enrollment (all forms must contain student and school name and must reflect the same academic period as the period for which the loan is requested) and other information (if applicable)

- Copy of current tuition bill from the school for the loan period indicated on this Loan Request/Credit Agreement, **OR**
- Copy of acceptance letter from the school verifying enrollment for the loan period indicated on this Loan Request/Credit Agreement, **OR**
- Copy of current registration schedule from the school with student's name for the loan period indicated on this Loan Request/Credit Agreement.
- If either the student or cosigner is an "eligible non-citizen," you must provide one of the following: Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from INS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.
- If either the student or cosigner has defaulted on a student loan or declared bankruptcy, please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).
- If the cosigner is relying on alimony or child support payments to repay this loan, please provide a complete copy of the divorce decree.
- If this loan is for a past due balance, please submit a current invoice indicating the amount owed for the specific academic period.

_____ **4. RETURN** signed paperwork and all requested documents

- Please return all information described in Steps 2 and 3 above to the address below. If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), return the signed signature pages from the Loan Request/Credit Agreement. Retain all remaining pages for your records.

  For regular delivery, mail to:      For overnight delivery, send to:
  TERI                                TERI
  P.O. Box 312                        31 St. James Avenue, 6th Floor
  Boston, MA  02117-0312              Boston, MA  02116

- For faster loan processing, you can FAX to [_____] **FROM A DOMESTIC FAX NUMBER** the information described in Steps 2 and 3, and, if any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), the signature page of your Loan Request/Credit Agreement.

**Once I return my Loan Request/Credit Agreement, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon receipt of the signed signature page and proof of income and enrollment. Please allow 2 business days from receipt of your completed paperwork to disbursement of your funds. At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.
**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime. Simply visit us online at [_____] or call [_____].

**Borrower and Cosigner:  Before signing this Loan Request/Credit Agreement, read the entire document, including the Federal law notice for all applicants set forth at the beginning of Section M. Then, read and, where indicated, sign and date the next page.**

(W0201080.5) AB.04-05.CLCO.10SC.0104

CONFIDENTIAL NCSLT0454

**\* Cosigned CEL \***    **Loan Request/Credit Agreement - Signature Page**

## NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

Loan Program:

Lender: Charter One Bank, N.A.                School:

Loan Amount Requested:                Academic Period:
Deferral Period Margin:                Repayment Period Margin:                Loan Origination Fee Percentage:

### STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name:                Home Address:
Social Security #:                Date of Birth:                Home Telephone:

Student Citizenship (check one box):    ☐ U.S. Citizen        ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name:_____    Reference Home Tel #:_____    Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:

### COSIGNER INFORMATION (Must be at least 18 years of age)

Cosigner Name:                Home Address:
Social Security #:                Date of Birth:                Home Telephone:
Have you ever defaulted on a student loan or declared bankruptcy?    ☐ No    ☐ Yes
Current Employer:                Employer Telephone:
Current Position:                Years There:
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.**

Cosigner Citizenship (check one box):    ☐ U.S. Citizen        ☐ Eligible Non-Citizen (Attach front & back copy of INS)
Note:  Personal reference name and address cannot match that of the Student.
Personal Reference Name:_____    Reference Home Tel #:_____    Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement AB.04-05.CLCO.10SC.0104 ("Credit Agreement").  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment.  This Credit Agreement is signed under seal.  I understand that I am not required to fax my signature on nor to sign electronically this Credit Agreement and any related notices that require signature.  If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) any fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) the fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR <u>ALABAMA</u> RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**
**FOR <u>WISCONSIN</u> RESIDENTS: NOTICE TO CUSTOMER:**
(a)  **DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
(b)  **DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
(c)  **YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
(d)  **YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

### PLEASE SIGN BELOW.  RETURN This Page With Proof of Income and Enrollment.  FAX TO:

Signature of Borrower_____    Date_____

## BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner _____    Date_____

{W0201080.3}AB.04-05.CLCO.10SC.0104                1 of 4                CONFIDENTIAL NCSLT0455

In this Credit Agreement, the words "I", "me", "my", and "mine" mean each person who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following:
(a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" has the following meaning:
(a) If the Student is enrolled in a degree or certificate-granting program at the School, the earlier of the date which is (i) 180 days after the Student graduates or earns the certificate, (ii) 180 days after the Student ceases to be enrolled at the School, or (iii) 2 years after date of the loan disbursement under this Credit Agreement.
(b) If the Student is not enrolled in a degree or certificate-granting program at the School, the earlier of the date which is (i) 180 days after the end of the Academic Period described on the first page of this Credit Agreement, or (ii) 180 days after the Student ceases to be enrolled at the School.
4. The "Repayment Period" begins the day after the Deferment Period ends. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based

on the London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of The Wall Street Journal. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If The Wall Street Journal is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize interest") as of the last day of the Deferment Period and at the end of any forbearance period. In all cases, the sum is thereafter considered the principal, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**
1. Deferment Period – You will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to me at the address shown on your records. I may, but am not required to, make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal loan balance at the end of the Deferment Period, as described in Paragraph D.3.
2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. You reserve the right to send monthly statements to either the Borrower or the Cosigner. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.
3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.
4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.
5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.
6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.
7. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

CONFIDENTIAL NCSLT0456

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of the loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**
1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner.

**K. INFORMATION:**
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

**L. ADDITIONAL AGREEMENTS:**
1. I understand that you are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School. The Cosigner will not receive any of the loan proceeds.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.
4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.
5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.
6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.
7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.
8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.
9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on

me. If I am a Cosigner, I agree that you do not have to notify me of that fact. It is not necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.
10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.
11. If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.
12. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.
13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g. enrollment status, prior loan history, and current address).
14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.
15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.
16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.
17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

**M. DISCLOSURE NOTICES**

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CONFIDENTIAL NCSLT0457

CALIFORNIA AND UTAH RESIDENTS: As required by law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender):** NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

FOR OBLIGORS COSIGNING IN WEST VIRGINIA:

NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

**FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:**
NOTICE: You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in this Credit Agreement or contract. You will also have to pay some or all of those costs and charges if this Credit Agreement or contract, the payment of which you are guaranteeing requires the borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.
Name of Creditor: Charter One Bank, N.A., and its successors and assigns.
Date: If the loan is disbursed by check, the date of the check. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.
Kind of Debt: Education loan.
Total of Payments: The Loan Amount Requested set forth on the first page of this Credit Agreement (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Credit Agreement.

FOR OBLIGORS COSIGNING IN VERMONT:

*NOTICE TO COSIGNER*

**YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

CONFIDENTIAL NCSLT0458

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

---

**NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley):**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

---

CONFIDENTIAL NCSLT0459

## Charter One Bank Loan Request/Credit Agreement Instructions

You have been conditionally approved for a Private Education Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document**
**Urgent Reply Requested**

## Follow these 4 Steps to receive your loan funds quickly:

_____ 1. **REVIEW** all pre-printed information, complete and **SIGN** the Loan Request/Credit Agreement

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change. Please do not use correction fluid ("white out") for any changes.
- If you physically sign the Loan Request/Credit Agreement (rather than sign electronically), be sure to legibly sign and date the bottom of the first page of the Loan Request/Credit Agreement. Your signature must match the name pre-printed on the Loan Request/Credit Agreement.
- Do not cross out anything in the date or signature fields. If you have made an error on the signature or date lines, please contact us as you will need to complete a new Loan Request/Credit Agreement.

_____ 2. **ATTACH proof of income**

- For regular wage earners: provide a copy of your **current paycheck stub** not more than 60 days old that contains the company name and the name of the employee.
- For self-employed individuals: provide your **Federal tax returns for the last 2 years**, complete with all schedules and signatures.
- For retired individuals: provide your **1099 forms for the last 2 years**.

_____ 3. **ATTACH proof of school enrollment** (all forms must contain student and school name and must reflect the same academic period as the period for which the loan is requested) and other information (if applicable)

- Copy of current tuition bill from the school for the loan period indicated on this Loan Request/Credit Agreement, **OR**
- Copy of acceptance letter from the school verifying enrollment for the loan period indicated on this Loan Request/Credit Agreement, **OR**
- Copy of current registration schedule from the school with student's name for the loan period indicated on this Loan Request/Credit Agreement.
- If this loan is for a past due balance, please submit a current invoice indicating the amount owed for the specific academic period.

_____ 4. **RETURN signed paperwork and all requested documents**

- Please return all information described in Steps 2 and 3 above to the address below. If you physically sign the Loan Request/Credit Agreement (rather than sign electronically), return the signature page from the Loan Request/Credit Agreement. Retain all remaining pages for your records.

  For regular delivery, mail to:       For overnight delivery, send to:
  TERI                                  TERI
  P.O. Box 312                          31 St. James Avenue, 6th Floor
  Boston, MA  02117-0312                Boston, MA  02116

- For faster loan processing, you can FAX to [_____] **FROM A DOMESTIC FAX NUMBER** the information described by Steps 2 and 3, and, if you physically sign the Loan Request/Credit Agreement (rather than sign electronically), the signature page of your Loan Request/Credit Agreement.

**Once I return my Loan Request/Credit Agreement, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon receipt of the signed signature page and proof of income and enrollment. Please allow 2 business days from receipt of your completed paperwork to disbursement of your funds. At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.
**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime. Simply visit us online at [_____] or call [_____].

## Before signing this Loan Request/Credit Agreement, read the entire document, including the Federal law notice for all applicants set forth at the beginning of Section M. Then, read and, where indicated, sign and date the next page.

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

## LOAN PROGRAM INFORMATION

Loan Program:

Lender: Charter One Bank, N.A.          School:

Academic Period:          Loan Amount Requested:

Deferral Period Margin:          Repayment Period Margin:          Loan Origination Fee Percentage:

## STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name:          Home Address:

Social Security #:          Date of Birth:          Home Telephone:

Current Employer:          Employer Telephone:
Current Position:          Years There:
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.**

Student Citizenship (check one box):   ☐ U.S. Citizen          ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Personal Reference Name:_____   Reference Home Tel #:_____ Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement AB.04-05.CLCW.10SC.0104 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on nor to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
**(a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
**(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

## PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Enrollment – FAX TO:

Signature of Borrower_____          Date_____

In this Credit Agreement, the words "I", "me", "my", and "Borrower" mean each person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" has the following meaning:
(a) If the Student is enrolled in a degree or certificate-granting program at the School, the earlier of the date which is (i) 180 days after the Student graduates or earns the certificate, (ii) 180 days after the Student ceases to be enrolled at the School, or (iii) 2 years after date of the loan disbursement under this Credit Agreement.
(b) If the Student is not enrolled in a degree or certificate-granting program at the School, the earlier of the date which is (i) 180 days after the end of the Academic Period described on the first page of this Credit Agreement, or (ii) 180 days after the Student ceases to be enrolled at the School.
4. The "Repayment Period" begins the day after the Deferment Period ends. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the

Money Rates section of The Wall Street Journal. The index for each calendar quarter (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If The Wall Street Journal is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize interest") as of the last day of the Deferment Period and at the end of any forbearance period. In all cases, the sum is thereafter considered the principal, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**
1. Deferment Period - You will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to me at the address shown on your records. I may, but am not required to, make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal loan balance at the end of the Deferment Period, as described in Paragraph D.3.
2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.
3. Repayment Terms - My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.
4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.
5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.
6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.
7. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I

understand that such modification would be at your option and that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**
1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

**K. INFORMATION:**
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

**L. ADDITIONAL AGREEMENTS:**
1. I understand that you are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.
4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.
5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.
6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.
7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.
8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.
9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.
10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.
**11. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit Institution.**
12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

agents to (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.
14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.
15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.
16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.
**M. DISCLOSURE NOTICES**

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.
CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.
IOWA, KANSAS, AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.
MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.
**MISSOURI RESIDENTS:** Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of

the agreement between us, except as we may agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including, without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

CONFIDENTIAL NCSLT0464

## Charter One Bank Loan Request/Credit Agreement Instructions

You have been conditionally approved for a Private Education Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document
Urgent Reply Requested**

## Follow these 4 Steps to receive your loan funds quickly:

_____ 1.   **REVIEW** all pre-printed information, complete and **SIGN** the Loan Request/Credit Agreement

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change. Please do not use correction fluid ("white out") for any changes.
- If you physically sign the Loan Request/Credit Agreement (rather than sign electronically), be sure to legibly sign and date the bottom of the first page of the Loan Request/Credit Agreement. Signature of the borrower must match the name pre-printed on the Loan Request/Credit Agreement.
- Do not cross out anything in the date or signature fields. If you have made an error on the signature or date lines, please contact us as you will need to complete a new Loan Request/Credit Agreement.

_____ 2.   **ATTACH** proof of income

- For regular wage earners: provide a copy of your current paycheck stub not more than 60 days old that contains the company name and the name of the employee.
- For self-employed individuals: provide your **Federal tax returns for the last 2 years**, complete with all schedules and signatures.
- For retired individuals: provide your **1099** forms for the last 2 years.

_____ 3.   **ATTACH** other required information (if applicable)

- If the student is an "eligible non-citizen," you must provide one of the following: Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from INS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.
- If the student has defaulted on a student loan or declared bankruptcy, please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).
- If the student is relying on alimony or child support payments to repay this loan, please provide a complete copy of the divorce decree.
- If this loan is for a past due balance, please submit a current invoice indicating the amount owed for the specific academic period.

_____ 4.   **RETURN** signed paperwork and all requested documents

- Please return all information described in Steps 2 and 3 above to the address below. If you physically sign the Loan Request/Credit Agreement (rather than sign electronically), return the signed signature page from the Loan Request/Credit Agreement. Retain all remaining pages for your records.

| For regular delivery, mail to: | For overnight delivery, send to: |
|---|---|
| TERI | TERI |
| P.O. Box 312 | 31 St. James Avenue, 6th Floor |
| Boston MA  02117-0312 | Boston, MA  02116 |

- For faster loan processing, you can FAX to [_____] **FROM A DOMESTIC FAX NUMBER** the information required in Steps 2 and 3, and, if you physically sign the Loan Request/Credit Agreement (rather than sign electronically), the signature page of your Loan Request/Credit Agreement.

**Once I return my Loan Request/Credit Agreement, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon 3 items: receipt of the signed signature page, proof of income and other information described above, and school certification of enrollment and loan amount. Please allow 2 business days from receipt of your completed paperwork to set a disbursement date for your funds. At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.
**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime. Simply visit us online at [_____]or call [_____].

**Before signing this Loan Request/Credit Agreement, read the entire document, including the Federal Law notice for all applicants set forth at the beginning of Section M. Then, read and, where indicated, sign and date the next page.**

   CONFIDENTIAL NCSLT0465

**\* *Creditworthy Student* \*    Loan Request/Credit Agreement – Signature Page**

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**LOAN PROGRAM INFORMATION**

Loan Program:

Lender: Charter One Bank, N.A.                School:

Loan Amount Requested:           Academic Period:                 Repayment Option:
Deferral Period Margin:           Repayment Period Margin:          Loan Origination Fee Percentage:

**STUDENT BORROWER INFORMATION (Must be at least 18 years of age)**

Borrower Name:                  Home Address:
Social Security #:               Date of Birth:                    Home Telephone:
Current Employer:                                                 Employer Telephone:
Current Position:                Years There:
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.**

Student Citizenship (check one box):    ☐ U.S. Citizen            ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Personal Reference Name:_____    Reference Home Tel #:_____ Work Tel #:_____
Reference  Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement AB.04-05.CRWO.10SC.0104 ("Credit Agreement").  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment.  This Credit Agreement is signed under seal.  I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature.  If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
**(a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
**(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

**PLEASE SIGN BELOW – RETURN** This Page With Proof of Income and Other Information (if applicable)    **FAX TO** 888-329-4374

Signature of Borrower_____    Date_____

In this Credit Agreement, the words "I", "me", "my", and "borrower" mean the Student who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time of each disbursement. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in each Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b)using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of each Disclosure Statement, I will review it and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in any Disclosure Statement, I may cancel the disbursement. To cancel any disbursement, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. I understand that the cancellation of any disbursement will not cancel any future disbursements or any previous disbursements. If loan proceeds have been disbursed, I agree that I will immediately return the canceled disbursement to you, will not endorse any check that disburses the loan proceeds to be canceled and will instruct the School to return the canceled disbursement to you. If I give notice of cancellation but do not cause the return of the disbursement as stated above, the disbursement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on your loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the final disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the first Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the first Disbursement Date.
(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the first Disbursement Date.
(c) *Health Professions Education Loan Program:* 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6 ¾ years

after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10 ¾ years after the first Disbursement Date.
(d) *Residency Loan Program:* 270 days after the first Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years (25 years for loans with a Principal Sum of $40,000 or more) unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize interest") as of the last day of the Deferment Period and at the end of any forbearance period. In addition, if my loan will be disbursed in multiple disbursements and if I have elected the "Immediate Repayment" option, you will capitalize interest that accrues between the first disbursement of my loan and the final disbursement of my loan. In all cases, the sum is thereafter considered the principal, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.
3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction of or increase in my

{W0201084 5} AB.04-05.CRWO.10SC.0104 CONFIDENTIAL NCSLT0467

monthly payment as calculated as of each Repayment Period during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. **Minimum Repayment** – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

5. **Amounts Owing at the End of the Repayment Period** – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. **Payments** – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. **Other Charges** - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

**K. INFORMATION:**

1. I must update the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

**L. ADDITIONAL AGREEMENTS:**

1. I understand that you are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the inability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this

Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. **I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.**

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. **Waiver by Lender:** You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

**M. DISCLOSURE NOTICES**

---

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*

---

**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**BORROWER CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every state in the United States except the following: Alabama and Nebraska 19 years old, and Mississippi and Puerto Rico 21 years old. I certify that I meet these state age requirements.

CONFIDENTIAL NCSLT0469

**Charter One Bank Loan Request/Credit Agreement Instructions**

You have been conditionally approved for a Private Education Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document
Urgent Reply Requested**

## Follow these 3 Steps to receive your loan funds quickly:

_____ 1. **REVIEW all pre-printed information, complete and SIGN the Loan Request/Credit Agreement**

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change. <u>Please do not use correction fluid ("white out") for any changes.</u>

- If you physically sign the Loan Request/Credit Agreement (rather than sign electronically), be sure to <u>legibly sign and date</u> the bottom of the first page of the Loan Request/Credit Agreement. Signature of the borrower must match the name pre-printed on the Loan Request/Credit Agreement.

- Do not cross out anything in the date or signature fields. If you have made an error on the signature or date lines, please contact us as you will need to complete a new Loan Request/Credit Agreement.

_____ 2. **ATTACH other required information (if applicable)**

- <u>If the student is an "eligible non-citizen,"</u> you must provide one of the following: Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from INS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.

- <u>If the student has defaulted on a student loan or declared bankruptcy,</u> please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).

- <u>If this loan is for a past due balance,</u> please submit a current invoice indicating the amount owed for the specific academic period.

_____ 3. **RETURN signed paperwork and all requested documents**

- Please return all information described in Step 2 above to the address below. If you physically sign the Loan Request/Credit Agreement (rather than sign electronically), return the signed signature page from the Loan Request/Credit Agreement. Retain all remaining pages for your records.

For regular delivery, mail to:
TERI
P.O. Box 312
Boston MA 02117-0312

For overnight delivery, send to:
TERI
31 St. James Avenue, 6th Floor
Boston, MA 02116

- [For faster loan processing, you can FAX to [_____] **FROM A DOMESTIC FAX NUMBER** information described in Step 2, and, if you physically sign the Loan Request/Credit Agreement (rather than sign electronically), the signature page of your Loan Request/Credit Agreement.

**Once I return my Loan Request/Credit Agreement, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon 3 items; receipt of the signed signature page, other information described above if applicable, and school certification of enrollment and loan amount. Please allow <u>2 business days from receipt of your completed paperwork to set a disbursement date for your funds.</u> At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.

**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime. Simply visit us online at [_____] or call [_____].

**Before signing this Loan Request/Credit Agreement, read the entire document, including the Federal Law notice for all applicants set forth at the beginning of Section M. Then, read and, where indicated, sign and date the next page.**

CONFIDENTIAL NCSLT0470

## * Creditready Student *    Loan Request/Credit Agreement – Signature Page

### NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

### LOAN PROGRAM INFORMATION

Loan Program:

Lender: Charter One Bank, N.A.                    School:

Loan Amount Requested:           Academic Period:                    Repayment Option:
Deferral Period Margin:          Repayment Period Margin:
Disbursement Loan Origination Fee Percentage:          Repayment Loan Origination Fee Percentage:

### STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name:                    Home Address:
Social Security #:                Date of Birth:                    Home Telephone:

Student Citizenship (check one box):  ☐ U.S. Citizen          ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Personal Reference Name:_____    Reference Home Tel #:_____ Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement AB.04-05.CRRD.10SC.0104 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
(a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

### PLEASE SIGN BELOW – RETURN This Page With Other Information (if applicable) – FAX TO: 888-329-8374

Signature of Borrower_____          Date_____

In this Credit Agreement, the words "I", "me", "my", "mine" and "Borrower" mean each person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.

2. HOW I AGREE TO THE TERMS OF THIS LOAN. By signing this Credit Agreement and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time of each disbursement. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in each Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of each Disclosure Statement, I will review it and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in any Disclosure Statement, I may cancel the disbursement. To cancel any disbursement, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. I understand that the cancellation of any disbursement will not cancel any future disbursements or any previous disbursements. If loan proceeds have been disbursed, I agree that I will immediately return the canceled disbursement to you, will not endorse any check that disburses the loan proceeds to be canceled, and will instruct the School to return the canceled disbursement to you. If I give notice of cancellation but do not cause the return of the disbursement as stated above, the disbursement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement):

(a) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the first Disbursement Date.

(b) *Health Professions Education Loan Program:* 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6 ¾ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10 ¼ years after the first Disbursement Date.

(c) *Residency Loan Program:* 270 days after the first Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full.

interest is computed on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize interest") as of the last day of the Deferment Period and at the end of any forbearance period. In all cases, the sum is thereafter considered the principal, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – You will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges – If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts I incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Disbursement Loan Origination Fee at the time my loan is disbursed and a Repayment Loan Origination Fee at the time my loan enters the Repayment Period (each of such fees, a "Loan Origination Fee"). The dollar amount of the Disbursement Loan Origination Fee will be determined by multiplying the sum of the Disbursement Loan Origination Fee and the

Loan Amount Requested, to the extent advanced to me, and the Disbursement Loan Origination Fee Percentage shown on the first page of this Credit Agreement. For the Disbursement Loan Origination Fee, the percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 8% on the entire principal amount would equal 8.6957% of the amount advanced. The Disbursement Loan Origination Fee I will pay will be shown on my Disclosure Statement and will be added to the principal amount of my loan at the time you charge me. The dollar amount of the Repayment Loan Origination Fee will be determined by multiplying the outstanding principal balance (including capitalized interest as provided in Paragraph D.3) on the first day of the Repayment Period, times the Repayment Loan Origination Fee Percentage shown on the first page of this Credit Agreement, and will be added to the balance of my loan on the first day of the Repayment Period. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Disbursement Loan Origination Fee or Repayment Loan Origination Fee.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**
1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

**K. INFORMATION:**
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

**L. ADDITIONAL AGREEMENTS:**
1. I understand that you are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for my educational expenses at the School.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.
4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.
5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.
6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. This Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.
8. To the extent permitted by law, you have the right to apply any money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.
9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.
10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.
**11.** I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.
12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).
13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.
14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.
15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.
16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.
**M. DISCLOSURE NOTICES**

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

## MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.

CONFIDENTIAL NCSLT0474

## Charter One Bank Loan Request/Credit Agreement Instructions

You have been conditionally approved for a Private Education Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document**
**Urgent Reply Requested**

## Follow these 4 Steps to receive your loan funds quickly:

_____ **1. REVIEW all pre-printed information, complete and SIGN the Loan Request/Credit Agreement**

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change.  <u>Please do not use correction fluid ("white out") for any changes.</u>
- If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), be sure to <u>legibly sign and date</u> the bottom of the first page of the Loan Request/Credit Agreement. Signatures of the borrower and cosigner must match the names pre-printed on the Loan Request/Credit Agreement.
- Do not cross out anything in the date or signature fields. If you have made an error on the signature or date lines, please contact us as you will need to complete a new Loan Request/Credit Agreement.

_____ **2. ATTACH proof of income**

- For regular wage earners: provide a copy of the cosigner's current paycheck stub <u>no more than 60 days old that contains the company name and the name of the employee.</u>
- For self-employed individuals:  provide the cosigner's **Federal tax returns for the last 2 years,** complete with all schedules and signatures.
- For retired individuals:  provide the cosigner's **1099 forms for the last 2 years.**

_____ **3. ATTACH other required information (if applicable)**

- <u>If either the student or cosigner is an "eligible non-citizen,"</u> you must provide one of the following:  Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from INS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.
- <u>If either the student or cosigner has defaulted on a student loan or declared bankruptcy,</u> please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).
- <u>If the cosigner is relying on alimony or child support payments to repay this loan,</u> please provide a complete copy of the divorce decree.
- <u>If this loan is for a past due balance,</u> please submit a current invoice indicating the amount owed for the specific academic period.

_____ **4. RETURN signed paperwork and all requested documents**

- Please return all information described in Steps 2 and 3 above to the address below. If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), return the signed signature page from the Loan Request/Credit Agreement. Retain all remaining pages for your records.

For regular delivery, mail to:
TERI
P.O. Box 312
Boston MA  02117-0312

For overnight delivery, send to:
TERI
31 St. James Avenue 6th Floor
Boston, MA  02116

- For faster loan processing, you can FAX to [_____] **FROM A DOMESTIC FAX NUMBER** the information described in Steps 2 and 3, and, if any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), the signature page of your Loan Request/Credit Agreement.

**Once I return my Loan Request/Credit Agreement, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon 3 items; receipt of the signed signature page, proof of income and other information described above, and school certification of enrollment and loan amount. Please allow <u>2 business days from receipt of your completed paperwork to set a disbursement date for your funds.</u>  At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.

**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime.  Simply visit us online at [          ] or call [          ].

**Borrower and Cosigner:  Before signing this Loan Request/Credit Agreement, read the entire document, including the Federal Law notice for all applicants set forth at the beginning of Section M.  Then, read and, where indicated, sign and date the next page.**

***Cosigned*** **Loan Request/Credit Agreement Signature Page**

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Loan Program:

Lender: Charter One Bank, N.A.     School:

Loan Amount Requested:        Academic Period:        Repayment Option:
Deferral Period Margin:        Repayment Period Margin:        Loan Origination Fee Percentage:

### STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name:            Home Address:
Social Security #:          Date of Birth:            Home Telephone:
Student Citizenship (check one box):   ☐ U.S. Citizen   ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name:_____   Reference Home Tel #:_____ Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

### COSIGNER INFORMATION (Must be at least 18 years of age)

Cosigner Name:            Home Address:
Social Security #:          Date of Birth:            Home Telephone:
Have you ever defaulted on a student loan or declared bankruptcy?   ☐ No   ☐ Yes
Current Employer:                              Employer Telephone:
Current Position:              Years There:
Years at Previous Employment:

Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):   ☐ U.S. Citizen   ☐ Eligible Non-Citizen (Attach front & back copy of INS)
Note:  Personal reference name and address cannot match that of the Student.
Personal Reference Name:_____   Reference Home Tel #:_____ Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement AB.04-05.CSX1.10SC.0104 ("Credit Agreement").  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment.  This Credit Agreement is signed under seal.  I understand that I am not required to fax my signature on nor to sign electronically this Credit Agreement and any related notices that require signature.  If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:  (a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
**(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

### PLEASE SIGN BELOW & RETURN This Page With Proof of Income and Other Information (if applicable)  FAX TO: 888-329-8374

Signature of Borrower_____   Date_____

## BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.

Signature of Cosigner_____   Date_____

        CONFIDENTIAL NCSLT0476

In this Credit Agreement, the words "I", "me", "my", and "mine" mean each of you who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time of each disbursement. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in each Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of each Disclosure Statement, I will review it and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in any Disclosure Statement, I may cancel the disbursement. To cancel any disbursement, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. I understand that the cancellation of any disbursement will not cancel any future disbursements or any previous disbursements. If loan proceeds have been disbursed, I agree that I will immediately return the canceled disbursement to you, will not endorse any check that disburses the loan proceeds to be canceled, and will instruct the School to return the canceled disbursement to you. If I give notice of cancellation but do not cause the return of the disbursement as stated above, the disbursement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).
(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the final disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the first disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program), and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the first Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the first Disbursement Date.
(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the first Disbursement Date.

(c) *Healthcare Professions Education Loan Program:* 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6¼ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10¼ years after the first Disbursement Date.
(d) *Residency Loan Program:* 270 days after the first Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years (25 years for loans with a Principal Sum of $40,000 or more) unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize interest") as of the last day of the Deferment Period and at the end of any forbearance period. In addition, if my loan will be disbursed in multiple disbursements and if I have elected the "Immediate Repayment" option, you will capitalize interest that accrues between the first disbursement of my loan and the final disbursement of my loan. In all cases, the sum is thereafter considered the principal, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**
1. Deferment Period –If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to me at the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. You reserve the right to send monthly statements to either the Borrower or the Cosigner. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.
3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly

repayment amount will equal the amount necessary to repay during the months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:
1. I will send notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner.

K. INFORMATION:
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

L. ADDITIONAL AGREEMENTS:
1. I understand that you and I are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The loan proceeds will be used only for my educational expenses at the School. The Cosigner will not receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.

12. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement.

15. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a

CONFIDENTIAL NCSLT0478

copy to me upon request, (b) I can and have downloaded or printed this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

**M. DISCLOSURE NOTICES**

---

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

---

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

**IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.**

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make

this loan, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Cred t Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

**O.** STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

FOR OBLIGORS COSIGNING IN WEST VIRGINIA:

---

**NOTICE TO COSIGNER**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

---

FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:
*NOTICE:* You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.
Name of Creditor: Charter One Bank, N.A., and its successors and assigns.

CONFIDENTIAL NCSLT0479

Date:  If the loan is disbursed by check, the date the check is mailed. If the
loan is disbursed electronically, the date the creditor transmits the
funds to the School.

Kind of Debt: Education loan.

Total of Payments: The Loan Amount Requested set forth on the first
page of this Credit Agreement (to the extent advanced), plus interest
and the Loan Origination Fee set forth in this Credit Agreement.

**FOR OBLIGORS COSIGNING IN VERMONT:**

### *NOTICE TO COSIGNER*

**YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS
THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS
LOAN.  IF THE BORROWER DOES NOT PAY, THE LENDER HAS
A LEGAL RIGHT TO COLLECT FROM YOU.**

CONFIDENTIAL NCSLT0480

## FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

### NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley):

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

### AVISO PARA EL FIADOR (Spanish Translation Required by Law):

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

AB.04-05.CSX1.10SC.0104.FD
{W0201087.3}

CONFIDENTIAL NCSLT0481

## Charter One Bank Loan Request/Credit Agreement Instructions

You have been conditionally approved for a Private Education Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document
Urgent Reply Requested**

## Follow these 4 Steps to receive your loan funds quickly:

_____ **1.   REVIEW all pre-printed information, complete and SIGN the Loan Request/Credit Agreement**

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change. Please do not use correction fluid ("white out") for any changes.
- If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), be sure to legibly sign and date the bottom of the first page of the Loan Request/Credit Agreement. Signatures of the borrower and cosigners must match the names pre-printed on the Loan Request/Credit Agreement.
- Do not cross out anything in the date or signature fields. If you have made an error on the signature or date lines, please contact us as you will need to complete a new Loan Request/Credit Agreement.

_____ **2.   ATTACH proof of income**

- For regular wage earners: provide a copy of each cosigner's current paycheck stub not more than 60 days old that contains the company name and the name of the employee.
- For self-employed individuals: provide each cosigner's Federal tax returns for the last 2 years, complete with all schedules and signatures.
- For retired individuals: provide each cosigner's 1099 forms for the last 2 years.

_____ **3.   ATTACH other required information (if applicable)**

- If either the student or any cosigner is an "eligible non-citizen," you must provide one of the following: Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from INS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.
- If either the student or any cosigner has defaulted on a student loan or declared bankruptcy, please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).
- If the cosigner is relying on alimony or child support payments to repay this loan, please provide a complete copy of the divorce decree.
- If this loan is for a past due balance, please submit a current invoice indicating the amount owed for the specific academic period.

_____ **4.   RETURN signed paperwork and all requested documents**

- Please return all information described in Steps 2 and 3 above to the address below. If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), return the signed signature page from the Loan Request/Credit Agreement. Retain all remaining pages for your records.

For regular delivery, mail to:
TERI
P.O. Box 312
Boston MA 02117-0312

For overnight delivery, send to:
TERI
31 St. James Avenue, 6th Floor
Boston, MA 02116

- For faster loan processing, you can FAX to [_____] FROM A DOMESTIC FAX NUMBER the information described in Steps 2 and 3, and if any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), the signature page of your Loan Request/Credit Agreement.

**Once I return my Loan Request/Credit Agreement, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon 3 items; receipt of the signed signature page, proof of income and other information described above, and school certification of enrollment and loan amount. Please allow 2 business days from receipt of your completed paperwork to set a disbursement date for your funds. At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.
**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime. Simply visit us online at [_____] or call [_____].

**Borrower and Cosigner:  Before signing this Loan Request/Credit Agreement, read the entire document, including the Federal law notice for all applicants set forth at the beginning of Section M.  Then, read and, where indicated, sign and date the next page.**

{W0201085.2} AB.04-05.CSX2.10SC.0104

CONFIDENTIAL NCSLT0482

## * 2 Cosigners  Loan Request/Credit Agreement  Signature Page

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Loan Program:
Lender: Charter One Bank, N.A.                    School:
Loan Amount Requested:              Academic Period:              Repayment Option:
Deferral Period Margin:             Repayment Period Margin:      Loan Origination Fee Percentage:

### STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name:                                  Home Address:
Social Security #:                  Date of Birth:                Home Telephone:
Student Citizenship (check one box):   ☐ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Note:  Personal reference name and address cannot match that of the Cosigner(s).
Personal Reference Name:_____   Reference Home Tel #:_____   Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:

### COSIGNER #1 INFORMATION (Must be at least 18 years of age)

Cosigner Name:                                  Home Address:
Social Security #:                  Date of Birth:                Home Telephone:
Have you ever defaulted on a student loan or declared bankruptcy?   ☐ No   ☐ Yes
Current Employer:                                               Employer Telephone:
Current Position:                   Years There:
Years at Previous Employment:
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this
obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.
Cosigner Citizenship (check one box):   ☐ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of INS)
Note:  Personal reference name and address cannot match that of the Student.
Personal Reference Name:_____   Reference Home Tel #:_____   Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:

### COSIGNER #2 INFORMATION (Must be at least 18 years of age)

Cosigner Name:                                  Home Address:
Social Security #:                  Date of Birth:                Home Telephone:
Have you ever defaulted on a student loan or declared bankruptcy?   ☐ No   ☐ Yes
Current Employer:                                               Employer Telephone:
Current Position:                   Years There:
Years at Previous Employment:
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this
obligation.  If you are relying on such additional income, please provide details on a separate sheet of paper.
Cosigner Citizenship (check one box):   ☐ U.S. Citizen      ☐ Eligible Non-Citizen (Attach front & back copy of INS)
Note:  Personal reference name and address cannot match that of the Student.
Personal Reference Name:_____   Reference Home Tel #:_____   Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement AB.04-05.CSX2.10SC.0104 ("Credit Agreement").  I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment.  This Credit Agreement is signed under seal.  I understand that I am not required to fax my signature nor to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS:** CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

**FOR WISCONSIN RESIDENTS:** NOTICE TO CUSTOMER:
(a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**PLEASE SIGN BELOW** AND RETURN This Page With Proof of Income and Other Information (if applicable)  FAX TO:  888-329-5374

Signature of Borrower_____   Date_____

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner_____   Date_____

Signature of Cosigner _____   Date_____

{W0201085.2} AB.04-05.CSX2.10SC.0104                    1 of 4                    CONFIDENTIAL NCSLT0483

In this Credit Agreement, the words "I", "me", "my", and "mine" mean each person who signed this Credit Agreement as Borrower and Cosigner. The words "you", "your", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and one or both of the Cosigners or to me and the School.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time of each disbursement. The Disclosure Statement(s) are incorporated herein by reference and made a part hereof. The Disclosure Statement(s) will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in each Disclosure Statement by doing either of the following:  (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of each Disclosure Statement, I will review it and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in any Disclosure Statement, I may cancel the disbursement. To cancel any disbursement, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. I understand that the cancellation of any disbursement will not cancel any future disbursements or any previous disbursements. If loan proceeds have been disbursed, I agree that I will immediately return the canceled disbursement to you, will not endorse any check that disburses the loan proceeds to be canceled and will instruct the School to return the canceled disbursement to you. If I give notice of cancellation but do not cause the return of the disbursement as stated above, the disbursement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.

3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the final disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the first disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program) and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the first Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the first Disbursement Date.

(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the first Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the first Disbursement Date.

(c) *Health Professions Education Loan Program:* 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6 ¾ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10 ¾ years after the first Disbursement Date.

(d) *Residency Loan Program:* 270 days after the first Disbursement Date.

4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years (25 years for loans with a Principal Sum of $40,000 or more), unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of The Wall Street Journal. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If The Wall Street Journal is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

3. Capitalization – I understand that you will add all accrued and unpaid interest to the principal balance of my loan ("capitalize interest") as of the last day of the Deferment Period and at the end of any forbearance period. In addition, if my loan will be disbursed in multiple disbursements and I have elected the "Immediate Repayment" option, you will capitalize interest that accrues between the first disbursement of my loan and the final disbursement of my loan. In all cases, the sum is thereafter considered the principal, and interest will accrue on the new principal balance.

**E. TERMS OF REPAYMENT:**

1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). You reserve the right to send statements or notices to either the Borrower or the Cosigner. Statements will be sent to me at the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.

2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. You reserve the right to send monthly statements to either the Borrower or any Ccsigner. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly payment

CONFIDENTIAL NCSLT0484

amount will equal the amount necessary to pay in full the amount remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges – If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, so the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**

1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).

2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to my Cosigner.

**K. INFORMATION:**

1. I must authorize the information I provided to you whenever you ask me to do so.

2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

**L. ADDITIONAL AGREEMENTS:**

1. I understand that you are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.

The proceeds will be used only for my educational expenses at the School. Neither Cosigner will receive any of the loan proceeds.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

11. If the Student fails to complete the education program paid for with this loan, the Cosigners and I are not relieved of any obligation within or pursuant to this Credit Agreement.

**12. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.**

13. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigners either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigners provided in connection with this Credit Agreement.

15. Waiver by Lender. You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a

CONFIDENTIAL NCSLT0485

copy to me upon request; (b) I can and have download a printed copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

**M. DISCLOSURE NOTICES**

---

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

---

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and each Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make

this loan, a credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

N. BORROWER'S CERTIFICATION: I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school.

O. STATE-SPECIFIC COSIGNER NOTICES: For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

FOR OBLIGORS COSIGNING IN WEST VIRGINIA:

---

**NOTICE TO COSIGNER**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

---

FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:
NOTICE: You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.
Name of Creditor: Charter One Bank, N.A., and its successors and assigns.

CONFIDENTIAL NCSLT0486

Date: If the loan is disbursed by check, the date the check is sent. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.

Kind of Debt: Education loan.

Total of Payments: The Loan Amount Requested set forth on the first page of this Credit Agreement (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Credit Agreement.

FOR OBLIGORS COSIGNING IN VERMONT:

### NOTICE TO COSIGNER

YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

CONFIDENTIAL NCSLT0487

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

---

**NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley):**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

---

## Charter One Bank Loan Request/Credit Agreement Instructions

You have been conditionally approved for a Private Education Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

### This is a Legal Document
### Urgent Reply Requested

## Follow these 4 Steps to receive your loan funds quickly:

**1.  REVIEW all pre-printed information, complete and SIGN the Loan Request/Credit Agreement**

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change. Please do not use correction fluid ("white out") for any changes.

- If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), be sure to legibly sign and date the bottom of the first page of the Loan Request/Credit Agreement. Signatures of the borrower and cosigner must match the names pre-printed on the Loan Request/Credit Agreement.

- Do not cross out anything in the date or signature fields. If you have made an error on the signature or date lines, please contact us as you will need to complete a new Loan Request/Credit Agreement.

**2.  ATTACH proof of income**

- For regular wage earners: provide a copy of current paycheck stub not more than 60 days old that contains the company name and the name of the employee.

- For self-employed individuals: provide Federal tax returns for the last 2 years, complete with all schedules and signatures.

- For retired individuals: provide 1099 forms for the last 2 years.

**3.  ATTACH other required information (if applicable)**

- If either the borrower or cosigner is an "eligible non-citizen," you must provide one of the following: Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from INS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.

- If either the borrower or cosigner has defaulted on a student loan or declared bankruptcy, please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).

- If either the borrower or the cosigner is relying on alimony or child support payments to repay this loan, please provide a complete copy of the divorce decree.

- If this loan is for a past due balance, please submit a current invoice indicating the amount owed for the specific academic period.

**4.  RETURN signed paperwork and all requested documents**

- Please return all information described Steps 2 and 3 above to the address below. If any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), return the signed signature page from the Loan Request/Credit Agreement. Retain all remaining pages for your records.

For regular delivery, mail to:      For overnight delivery, send to:
TERI                                 TERI
P.O. Box 312                         31 St. James Avenue, 6th Floor
Boston MA  02117-0312                Boston, MA  02116

- For faster loan processing, you can FAX to [_____] FROM A DOMESTIC FAX NUMBER the information described by Steps 2 and 3, and, if any or all borrowers physically sign the Loan Request/Credit Agreement (rather than sign electronically), the signature page of your Loan Request/Credit Agreement.

**Once I return my Loan Request/Credit Agreement, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon 3 items: receipt of the signed signature page, proof of income and other information described above, and school certification of enrollment and loan amount. Please allow 2 business days from receipt of your completed paperwork to set a disbursement date for your funds. At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.
**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime. Simply visit us online at [_____] or call [_____].

## Borrower and Cosigner:  Before signing this Loan Request/Credit Agreement, read the entire document, including the Federal law notice for all applicants set forth at the beginning of Section M. Then, read and, where indicated, sign and date the next page.

## * K-12 *   Loan Request/Credit Agreement - Signature Page

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Loan Program:

Lender: Charter One Bank, N.A.          School:

Student Name:          Student SSN:          Student's Date of Birth:

Loan Amount Requested:          Academic Period:          Margin:

Loan Origination Fee Percentage:

### BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name:          Home Address:
Social Security #:          Date of Birth:          Home Telephone:
Current Employer:          Employer Telephone:
Current Position:          Years There:
Years at Previous Employment:
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Borrower Citizenship (check one box):  ☐ U.S. Citizen          ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner(s).
Personal Reference Name:_____     Reference Home Tel #:_____ Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

### COSIGNER INFORMATION (Must be at least 18 years of age)

Cosigner Name:          Home Address:
Social Security #:          Date of Birth:          Home Telephone:
Have you ever defaulted on a student loan or declared bankruptcy?     ☐ No     ☐ Yes
Current Employer:          Employer Telephone:
Current Position:          Years There:
Years at Previous Employment:
Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.

Cosigner Citizenship (check one box):  ☐ U.S. Citizen          ☐ Eligible Non-Citizen (Attach front & back copy of INS)
Note: Personal reference name and address cannot match that of the Borrower.
Personal Reference Name:_____     Reference Home Tel #:_____ Work Tel #:_____
Reference Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement. AB.04-05.K-12.10SC.0104 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on nor to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR <u>ALABAMA</u> RESIDENTS:** CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.
**FOR <u>WISCONSIN</u> RESIDENTS:** NOTICE TO CUSTOMER:
(a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.
(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.
(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable)  FAX TO:  888-329-8374**

Signature of Borrower_____     Date_____

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner _____     Date_____

In this Credit Agreement, the words "I", "me", "my", "mine" and "us" mean who signed this Credit Agreement as Borrower and Cosigner. The words "you", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.6).

**B. IMPORTANT – READ THIS CAREFULLY:**

1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to not make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the Cosigner or to me and the School.

2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time of each disbursement. The Disclosure Statement(s) are incorporated herein by reference and made a part hereof. The Disclosure Statement(s) will tell me the amount of the loan that you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in each Disclosure Statement by doing either of the following: (a) endorsing or depositing the check that disburses the loan proceeds; or (b) allowing the loan proceeds to be used by or on behalf of the Student without objection. Upon receipt of each Disclosure Statement, I will review it and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in any Disclosure Statement, I may cancel the disbursement. To cancel any disbursement, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. I understand that the cancellation of any disbursement will not cancel any future disbursements or any previous disbursements. If loan proceeds have been disbursed, I agree that I will immediately return the canceled disbursement to you, will not endorse any check that disburses the loan proceeds to be canceled, and will instruct the School to return the canceled disbursement to you. If I give notice of cancellation but do not cause the return of the disbursement as stated above, the disbursement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**

1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.

2. The "Repayment Period" begins 30-60 days after the final Disbursement Date. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.3) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**

1. Accrual – Beginning on the first Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraphs D.3 and H. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.

2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margin is shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on the first Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of The Wall Street Journal. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If The Wall Street Journal is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.

**E. TERMS OF REPAYMENT:**

1. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. You reserve the right to send monthly statements to either the Borrower or the Cosigner only. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

2. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. Any new monthly payment amount will be disclosed to me by the servicer. The new monthly repayment amount will equal the amount necessary to pay in full, over the number of months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

3. Minimum Repayment – Notwithstanding Paragraph E.2, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

4. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

5. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

6. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

**F. LOAN ORIGINATION FEE:** If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6% on the entire principal amount would equal 6.3829% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

**G. RIGHT TO PREPAY:** I have the right to prepay all or any part of my loan at any time without penalty.

**H. FORBEARANCE:** If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance.

**I. WHOLE LOAN DUE:** To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for

this loan ... (cont.) that you will add to the principal balance of my loan prior to the due date of the first payment all interest that accrues between the first disbursement of my loan and the final disbursement of my loan. In all cases, the sum is thereafter considered the principal, and interest will accrue on the new principal balance.

this loan or any other student or education loan during the Grace Period. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

**J. NOTICES:**
1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or the Student's enrollment status (for example, if the Student withdraws from the School or transfers to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me. Unless required by applicable law, you need not give a separate notice to the Cosigner, if any.

**K. INFORMATION:**
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

**L. ADDITIONAL AGREEMENTS:**
1. I understand that you are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.
2. The proceeds of this loan will be used only for the educational expenses of the Student at the School. Neither I nor the Cosigner, if any, will receive any of the loan proceeds.
3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.
4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.
5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.
6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.
7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.
8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.
9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled as such by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearance or other modification of the repayment schedule and that such agreement will be binding on me. It shall not be necessary for you to resort to or exhaust your remedies against the borrower before calling upon me to make repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.
10. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.
11. If the Student fails to complete the education program paid for with this loan, the Cosigner and I are not relieved of any obligation within or pursuant to this Credit Agreement.
12. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and any other school that the Student may attend to release to you, and to any other persons designated by you, requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).
14. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, the Borrower, and/or the Cosigner either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower and/or the Cosigner provided in connection with this Credit Agreement..
15. Waiver by Lender. You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.
16. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.
17. If any Borrower or Cosigner elects to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and such person: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe. If I physically sign a copy of this document that has been electronically signed by any other Cosigner or Borrower, as between me and the Lender the copy I sign (and any fax of that copy I may send to Lender) will be an original. However, the electronic signature of another party to this Credit Agreement and the Lender's electronic record of this document containing that signature will be as valid against me as an original, physical document that is physically signed by all parties.

**M. DISCLOSURE NOTICES**

---

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
**To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.**

*What this means for you:*
**When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

---

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.
CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.
IOWA, KANSAS AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower and the Cosigner, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.
MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of

CONFIDENTIAL NCSLT0492

Maryland only to the extent not inconsistent with applicable laws, regulations and opinions, which you expressly reserve.

**MISSOURI RESIDENTS:** Oral agreements or commitments to **loan money, extend credit or to forbear from enforcing** repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at the School.

**O. STATE-SPECIFIC COSIGNER NOTICES:** For the purposes of the following notices only, the words "you" and "your" refer to the Cosigner, where applicable, not to the lender.

**FOR OBLIGORS COSIGNING IN WEST VIRGINIA:**

**NOTICE TO COSIGNER**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

**FOR OBLIGORS COSIGNING IN IOWA, NEW YORK AND SOUTH CAROLINA:**

NOTICE:  You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the borrower to pay such costs and charges. This notice is not the Credit Agreement or contract that obligates you to pay the debt. Read the Credit Agreement or contract for the exact terms of your obligation.

IDENTIFICATION OF DEBT (S) YOU MAY HAVE TO PAY
Name of Debtor: The Borrower and Cosigner identified on the first page of this Credit Agreement.
Name of Creditor: Charter One Bank, N.A., and its successors and assigns.
Date:  If the loan is disbursed by check, the date of the check.  If the loan is disbursed electronically, the date the creditor transmits the funds to the School.
Kind of Debt: Education loan.
Total of Payments: The Loan Amount Requested set forth on the first page of this Credit Agreement (to the extent advanced), plus interest and the Loan Origination Fee set forth in this Credit Agreement.

**FOR OBLIGORS COSIGNING IN VERMONT:**

**NOTICE TO COSIGNER**

**YOUR SIGNATURE ON THIS CREDIT AGREEMENT MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

CONFIDENTIAL NCSLT0493

# FEDERAL AND CALIFORNIA COSIGNER NOTICES

For the purposes of these Notices, the words "you" and "your" refer to the Cosigner, not the Lender.

---

**NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley):**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The holder of the loan can collect this debt from you without first trying to collect from the borrower. The holder of the loan can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

---

**AVISO PARA EL FIADOR (Spanish Translation Required by Law):**

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

---

CONFIDENTIAL NCSLT0494

## Charter One Bank Loan Request/Credit Agreement Instructions

You have been conditionally approved for a Private Education Loan. Attached is your Loan Request/Credit Agreement. Please review it carefully and follow the steps listed below for final loan approval and disbursement of your funds.

**This is a Legal Document
Urgent Reply Requested**

## Follow these 4 Steps to receive your loan funds quickly:

_____ 1.  **REVIEW all pre-printed information, complete and SIGN the Loan Request/Credit Agreement**

- If you find any incorrect information, put one line through the item that needs to be corrected, make the appropriate change directly above the item and initial the change. Please do not use correction fluid ("white out") for any changes.
- If you physically sign the Loan Request/Credit Agreement (rather than sign electronically), be sure to legibly sign and date the bottom of the first page of the Loan Request/Credit Agreement. Your signature must match the name pre-printed on the Loan Request/Credit Agreement.
- Do not cross out anything in the date or signature fields. If you have made an error on the signature or date lines, please contact us as you will need to complete a new Loan Request/Credit Agreement.

_____ 2.  **ATTACH proof of income**

- **For regular wage earners:**  Provide a copy of your **current paycheck stub** not more than 60 days old that contains the company name and the name of the employee.
- **For self-employed individuals:**  provide your **Federal tax returns for the last 2 years,** complete with all schedules and signatures.
- **For retired individuals:**  provide your 1099 forms for the last 2 years.

_____ 3.  **ATTACH proof of enrollment and other required information (all forms must contain student and school name and must reflect the same academic period as the period for which the loan is requested)**
School Enrollment

- Copy of current tuition bill from the school for the loan period indicated on this Loan Request/Credit Agreement, **OR**
- Copy of acceptance letter from the school verifying enrollment for the loan period indicated on this Loan Request/Credit Agreement, **OR**
- Copy of current registration schedule from the school for the loan period indicated on this Loan Request/Credit Agreement.
- If the student is an "eligible non-citizen," you must provide one of the following: Form F-1 or I-20, alien registration receipt card with valid expiration date, departure record I-94 with valid expiration date issued from INS Showing "Refugee, Asylum Granted, or Indefinite Parole" and/or Humanitarian Parole.
- If the student has defaulted on a student loan or declared bankruptcy, please provide a letter indicating the state where you lived when this condition occurred, the reason it occurred, and the arrangements made to repay your debt(s).
- If the student is relying on alimony or child support payments to repay this loan, please provide a complete copy of the divorce decree.
- If this loan is for a past due balance, please submit a current invoice indicating the amount owed for the specific academic period.

_____ 4.  **RETURN signed paperwork and all requested documents**

- Please return all information described in Steps 2 and 3 above to the address below. If you physically sign the Loan Request/Credit Agreement (rather than sign electronically), return the signed signature page from the Loan Request/Credit Agreement. Retain all remaining pages for your records.

| For regular delivery, mail to: | For overnight delivery, send to: |
|---|---|
| TERI | TERI |
| P.O. Box 312 | 31 St. James Avenue, 6th Floor |
| Boston, MA  02117-0312 | Boston, MA  02116 |

- For faster loan processing, you can FAX to [_____] **FROM A DOMESTIC FAX NUMBER** the information described in Steps 2 and 3, and, if you physically sign the Loan Request/Credit Agreement (rather than sign electronically), the signature page of your Loan Request/Credit Agreement.

**Once I return my Loan Request/Credit Agreement, when will a disbursement date be set for my loan?**
Final approval of your loan is based upon receipt of the signed signature page and proof of income and enrollment and other requested information. Please allow 2 business days from receipt of your completed paperwork to disbursement of your funds. At the time your loan is disbursed, you will also be mailed a loan disclosure statement confirming the repayment terms of your loan.
**How can I check the status of my loan and confirm the disbursement date of my funds?**
You can check the status of your loan and confirm the disbursement date of your loan check at anytime. Simply visit us online at [_____] or call [_____].

**Before signing this Loan Request/Credit Agreement, read the entire document, including the Federal law notice for all applicants set forth at the beginning of Section M. Then, read and, where indicated, sign and date the next page.**

## * Creditworthy Student *    Loan Request/Credit Agreement – Signature Page

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

### LOAN PROGRAM INFORMATION

Loan Program:

Lender: Charter One Bank, N.A.                     School:

Loan Amount Requested:              Repayment Option:              Academic Period:

Deferral Period Margin:              Repayment Period Margin:              Loan Origination Fee Percentage:

### STUDENT BORROWER INFORMATION (Must be at least 18 years of age)

Borrower Name:                     Home Address:
Social Security #:                     Date of Birth:                     Home Telephone:
Current Employer:                                                             Employer Telephone:
Current Position:                     Years There:
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.**

Student Citizenship (check one box):    ☐ U.S. Citizen              ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Personal Reference Name:_____    Reference Home Tel #:_____ Work Tel #:_____
Reference  Street Address:_____
Reference City/State/Zip:_____

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all four (4) pages of this Loan Request/Credit Agreement AB.04-05.CRWO.10DC.0104 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER:**
**(a)  DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b)  DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
**(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

### PLEASE SIGN BELOW - RETURN This Page With Proof of Income and Other Information (if applicable) FAX TO:

Signature of Borrower_____    Date_____

In this Credit Agreement, the words "I", "me", "my", and "mine" mean each person who signed this Credit Agreement as Borrower. The words "you", "your", "yours", and "Lender" mean Charter One Bank, N.A., its successors and assigns, and any other holder of this Credit Agreement. "School" means the school named at the top of the first page of this Credit Agreement.

**A. PROMISE TO PAY:** I promise to pay to you the principal sum of the Loan Amount Requested shown on the first page of this Credit Agreement, to the extent it is advanced to me or paid on my behalf, and any Loan Origination Fee added to my loan (see Paragraph F) ("Principal Sum"), interest on such Principal Sum, interest on any unpaid interest added to the Principal Sum and late fees (see Paragraph E.7).

**B. IMPORTANT -- READ THIS CAREFULLY:**
1. When you receive my signed Credit Agreement, you are not agreeing to lend me money. If you decide to make a loan to me, you will electronically transfer the loan funds to the School for me, mail a loan check to the School for me, or mail a loan check directly to me. You have the right to make a loan or to lend an amount less than the Loan Amount Requested. I agree to accept an amount less than the Loan Amount Requested and to repay that portion of the Loan Amount Requested that you actually lend to me. You have the right to disburse my loan through an agent. At your option, you may also make any loan check co-payable to me and the School.
2. **HOW I AGREE TO THE TERMS OF THIS LOAN.** By signing this Credit Agreement, and submitting it to the Lender, I am requesting that you make this loan to me in an amount equal to the Loan Amount Requested plus any Loan Origination Fee described in Paragraph F of this Credit Agreement. If you approve this request and agree to make this loan, you will notify me in writing and provide me with a Disclosure Statement, as required by law, at the time the loan proceeds are disbursed. The Disclosure Statement is incorporated herein by reference and made a part hereof. The Disclosure Statement will tell me the amount of the loan which you have approved, the amount of the Loan Origination Fee, and other important information. I will let you know that I agree to the terms of the loan as set forth in this Credit Agreement and in the Disclosure Statement by doing either of the following:
(a) endorsing or depositing the check that disburses the loan proceeds; or (b) using or allowing the loan proceeds to be used on my behalf without objection. Upon receipt of the Disclosure Statement, I will review the Disclosure Statement and notify you in writing if I have any questions. If I am not satisfied with the terms of my loan as disclosed in the Disclosure Statement, I may cancel my loan. To cancel my loan, I will give you a written cancellation notice within ten (10) days after I receive the Disclosure Statement. If loan proceeds have been disbursed, I agree that I will immediately return the loan proceeds to you, will not endorse any check which disburses the loan proceeds and will instruct the School to return any loan proceeds to you. If I give notice of cancellation but do not comply with the requirements of this Paragraph B.2, this Credit Agreement will not be canceled and I will be in default of this Credit Agreement. (See Paragraph I.)

**C. DEFINITIONS:**
1. "Disbursement Date" means the date or dates on which you lend money to me in consideration for my Credit Agreement and will be the date(s) shown on any loan check you prepare or the date(s) you initiate any electronic funds transfer.
2. The "Deferment Period" will begin on the Disbursement Date and end on the Deferment End Date.
3. "Deferment End Date" means the date specified below for the applicable loan program (the applicable loan program is stated on the first page of this Credit Agreement).

(a) *Undergraduate Alternative Loan Program:* If I have elected the "Immediate Repayment" option (the applicable repayment option is stated on the first page of this Credit Agreement), there is no Deferment Period, and my first payment will be 30-60 days after the disbursement of my loan. If I have elected the "Interest Only" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then interest payments will begin 30-60 days after the disbursement of my loan, the "Deferment End Date" will be the date the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this loan program, and principal and interest payments will begin 30-60 days after that date. In any event, if I have elected the "Interest Only" repayment option, the Deferment End Date will be no more than 5 years after the Disbursement Date. If I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), then the "Deferment End Date" will be 180 days after the Student graduates or ceases to be enrolled at least half-time in the School (or another school participating in this Loan Program). In any event, if I have elected the "Full Deferral" repayment option, the Deferment End Date will be no more than 5½ years after the Disbursement Date.
(b) *Graduate Professional Education Loan Program:* 180 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 4½ years after the Disbursement Date; provided, however, that if the Student begins a medical residency or internship during the Deferment Period, then the Deferment Period will end 180 days after the day the residency or internship ends, but no more than 8½ years after the Disbursement Date.
(c) *Health Professions Education Loan Program:* 270 days after the Student graduates or ceases for any other reason to be enrolled at least half-time in the School (or another school participating in this Loan Program), but no more than 6 ¾ years after the Disbursement Date; provided, however, that if the Student begins a medical

residency or internship during the Deferment Period, then the Deferment Period will end 270 days after the day the residency or internship ends, but no more than 10 ¾ years after the Disbursement Date.
(d) *Residency Loan Program:* 270 days after the Disbursement Date.
4. The "Repayment Period" begins the day after the Deferment Period ends. If there is no Deferment Period for my loan, the Repayment Period will begin when my loan is fully disbursed. The Repayment Period is 20 years unless monthly payments equal to the minimum monthly payment amount (See Paragraph E.4) will repay all amounts owed in less than 20 years, in which case the Repayment Period will be the number of months necessary to pay in full the amount I owe at the minimum payment.

**D. INTEREST:**
1. Accrual – Beginning on the Disbursement Date, interest will be calculated at the Variable Rate (Paragraph D.2) and charged on the Principal Sum, and on any unpaid interest later added to the Principal Sum according to Paragraph D.3. During the Repayment Period, interest will be calculated at the Variable Rate and charged on the outstanding balance of this Credit Agreement until all amounts are paid in full. Interest will be calculated on a daily simple interest basis. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the number of days in that calendar year.
2. Variable Rate – The "Variable Rate" is equal to the Current Index plus or minus a Margin. The Margins for both the Deferment Period and the Repayment Period are shown on the first page of this Credit Agreement. In no event will the Variable Rate exceed the maximum interest rate allowed by the laws of the State of Ohio. The Variable Rate will change quarterly on the first day of each January, April, July and October (the "Change Date(s)") if the Current Index changes. The "Current Index" for any calendar quarter beginning on a Change Date (or for any shorter period beginning on the Disbursement Date and ending on the last day of a calendar quarter) is based on the one-month London Interbank Offered Rate ("LIBOR") as published in the "Money Rates" section of *The Wall Street Journal*. The index for each calendar quarter (or for any shorter period beginning on a Disbursement Date and ending on the last day of a calendar quarter) will equal the average of the LIBOR rates published on the first business day of each of the three (3) immediately preceding calendar months, rounded to the nearest one-hundredth percent (0.01%). If *The Wall Street Journal* is not published or the Current Index is not given on that date, then the Current Index will be determined by using the immediately preceding published Current Index. If the Current Index is no longer available, you will choose a comparable index.
3. Capitalization – If payment of principal and interest is deferred (Paragraph C.2) and I have elected the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), I am not obligated to make any payments until the loan enters the Repayment Period. You will add unpaid accrued interest to the principal loan balance as of the last day of each calendar quarter (the last day of December, March, June and September) during the Deferment Period and at the end of my Deferment Period. Interest that is added to principal is called "Capitalized" interest. Capitalized interest will be treated as principal. In addition, if I am in default and the loan has been sold to TERI (see Section L.11), TERI may capitalize accrued and unpaid interest as of the date it purchases my loan. I understand that you will add all accrued and unpaid interest to the principal balance of my loan on the last day of the Deferment Period and at the end of any forbearance period.

**E. TERMS OF REPAYMENT:**
1. Deferment Period – If I have elected either the "Interest Only" repayment option or the "Full Deferral" repayment option (the applicable repayment option is stated on the first page of this Credit Agreement), you will send me statements during the Deferment Period (showing the total outstanding principal balance of my loan and the interest that has accrued on my loan). Statements will be sent to the address shown on your records. If I have elected the "Interest Only" repayment option, I agree to make payments each month during the Deferment Period equal to the accrued interest on the outstanding balance of this Credit Agreement. If I have elected the "Full Deferral" repayment option I may, but am not required to make payments during the Deferment Period. You will add any interest that I do not pay during the Deferment Period to the principal balance, as described in Paragraph D.3.
2. Repayment Period – During the Repayment Period, you will send me monthly statements that show the amounts of minimum monthly payments and the payment due dates. I will make consecutive monthly payments in amounts at least equal to such minimum monthly payments by the applicable payment due dates until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.
3. Repayment Terms – My monthly payment will be established based on the rules in this Credit Agreement when my Repayment Period begins. My monthly payment amount will be calculated as of the day the Repayment Period begins ("Repayment Date"). It will be recalculated (a) once each year prior to the anniversary of the Repayment Date, (b) if the Variable Rate changes between anniversaries of the Repayment Date to the extent that the amount of my monthly payment would not pay in full the accrued monthly interest on my loan, (c) following any subsequent deferment or forbearance period or (d) following any request by the Borrower to the servicer to change the monthly payment due date (each of which events is a new "Repayment Date"). As of any Repayment Date, my monthly payment will be recalculated. My new monthly payment amount will be disclosed to me by the servicer. The new monthly

repayment amount will equal the amount necessary to pay off my loan over the months remaining in the Repayment Period, the amount I owe in equal monthly installments of principal and interest at the Variable Rate in effect at the time of the calculation. I understand that this may result in a reduction or increase in my monthly payment as calculated as of each Repayment Date. I understand that during the Repayment Period (and, if I have elected the "Interest Only" repayment option, during the period of interest payments) the servicer may change the monthly payment due date of future payments to a later date for the convenience of the servicer in processing payments or in order to coordinate the due dates of all of my loans processed by the servicer.

4. Minimum Repayment – Notwithstanding Paragraph E.3, I agree to pay at least $25 each month during the Repayment Period or the unpaid balance whichever is less. I understand that I may pay more than my monthly payment at any time without penalty or charge. If my loan is in paid-ahead status, I may, but will not be required to make monthly payments.

5. Amounts Owing at the End of the Repayment Period – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid my late fees, I will also owe additional amounts for those late fees. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my loan in full.

6. Payments – Payments will be applied first to late fees, other fees and charges, accrued interest, and the remainder to principal.

7. Other Charges - If any part of a monthly payment remains unpaid for a period of more than 15 days after the payment due date, I will pay a late fee not exceeding $5.00 or 5% of the overdue payment amount, whichever is less. To the extent permitted by law, I agree to pay you all amounts you incur in enforcing the terms of this Credit Agreement, including reasonable collection agency and attorney's fees and court costs and other collection costs.

F. LOAN ORIGINATION FEE: If you charge me, I will pay you a Loan Origination Fee at the time my loan is disbursed. The dollar amount of any Loan Origination Fee will be determined by multiplying the sum of the Loan Origination Fee and the Loan Amount Requested, to the extent advanced to me, times the Loan Origination Fee Percentage shown on the first page of this Credit Agreement. The percentage would be higher if computed only on the amount advanced rather than the entire principal amount (Loan Origination Fee plus Loan Amount Requested). For example, a nominal Loan Origination Fee of 6.5% on the entire principal amount would equal 6.9519% of the amount advanced. The Loan Origination Fee I will pay, if any, will be shown on my Disclosure Statement and will be added to the principal amount of my loan. To the extent permitted by law, and unless I timely cancel this Credit Agreement (see Paragraph B.2), I will not be entitled to a refund of any Loan Origination Fee after my loan has been disbursed.

G. RIGHT TO PREPAY: I have the right to prepay all or any part of my loan at any time without penalty.

H. FORBEARANCE: If I am unable to repay my loan in accordance with the terms established under this Credit Agreement, I may request that you modify these terms. I understand that such modification would be at your option. I understand that I will remain responsible for all interest accruing during any period of forbearance and that you will add any interest that I do not pay during any forbearance period to the principal balance, as described in Paragraph D.3.

I. WHOLE LOAN DUE: To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you when due, (2) I die, (3) I break any of my other promises in this Credit Agreement, (4) Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefits of my creditors, or (5) I make any false written statement in applying for this loan or any other student or education loan or at any time during the Deferment or Repayment Periods. If I default, I will be required to pay interest on this loan accruing after default. The interest rate after default will be subject to adjustment in the same manner as before default. Upon default, you may also capitalize any interest and fees (i.e., add accrued and unpaid interest and fees to the principal balance), and increase the Margin used to compute the Variable Rate by two percentage points (2%).

J. NOTICES:
1. I will send written notice to you, or any subsequent holder of this Credit Agreement, within ten days after any change in my name, address, or enrollment status (for example, if I withdraw from the School or transfer to another school participating in this loan program).
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me.

K. INFORMATION:
1. I must update the information I provided to you whenever you ask me to do so.
2. I authorize you from time to time to request and receive from others credit related information about me (and about my spouse if I live in a community property state).

L. ADDITIONAL AGREEMENTS:
1. I understand that you are located in Ohio and that this Credit Agreement will be entered into in the same state. CONSEQUENTLY, THE PROVISIONS OF THIS CREDIT AGREEMENT WILL BE GOVERNED BY FEDERAL LAW AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAW RULES.

2. The proceeds of this loan will be used only for my educational expenses at the School.

3. My responsibility for paying the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or by your failure to notify me that a required payment has not been made. Without losing any of your rights under this Credit Agreement you may accept (a) late payments, (b) partial payments or (c) payments marked "paid in full" or with other restrictions. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present this Credit Agreement to me for payment or make protest of non-payment to me before suing to collect on this Credit Agreement if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. I WILL NOT SEND YOU PAYMENTS MARKED "PAID IN FULL", "WITHOUT RECOURSE" OR WITH OTHER SIMILAR LANGUAGE UNLESS THOSE PAYMENTS ARE MARKED FOR SPECIAL HANDLING AND SENT TO THE ADDRESS IDENTIFIED FOR SUCH PAYMENTS ON MY BILLING STATEMENT, OR TO SUCH OTHER ADDRESS AS I MAY BE GIVEN IN THE FUTURE.

4. I may not assign this Credit Agreement or any of its benefits or obligations. You may assign this Credit Agreement at any time.

5. The terms and conditions set forth in this Credit Agreement and Instructions and the Disclosure Statement constitute the entire agreement between you and me.

6. If any provision of this Credit Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.

7. A provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.

8. To the extent permitted by law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement. I hereby authorize you to obtain from the School all amounts which may be owed to me by the School, including any refund due to overpayment, early termination of enrollment, or otherwise.

9. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States Dollars with no deduction for currency exchange.

10. If I fail to complete the education program paid for with this loan, I am not relieved of any obligation within or pursuant to this Credit Agreement.

11. I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-profit institution.

12. I authorize any school that I may attend to release to you, and any other persons designated by you, any requested information pertinent to this loan (e.g., enrollment status, prior loan history, and current address).

13. I authorize the Lender, any subsequent holder of this Credit Agreement, and their agents to: (1) advise the School of the status of my application and my loan, (2) respond to inquiries from prior or subsequent lenders or holders with respect to my Credit Agreement and related documents, (3) release information and make inquiries to the persons I have given you as references, for the purposes of learning my current address and telephone number, (4) check my credit and employment history and to answer questions about their credit experience with me, and (5) disclose to TERI, either in connection with this transaction or any future transaction all information (including status information and non-public personal information) of the Borrower provided in connection with this Credit Agreement.

14. Waiver by Lender: You waive (give up) any right to claim a security interest in any property to secure this Credit Agreement. This does not affect any right to offset as a matter of law.

15. If I fax my signature(s) on the first page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the first page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain), taken together, shall constitute a single original agreement.

16. If I elect to sign electronically an electronic record of this Credit Agreement, then the following will apply as between Lender and me: (a) Lender will keep a non-modifiable electronic record of this document and provide a copy to me upon request, (b) I can and have downloaded and/or printed a copy of this document for my records or notified the Lender to mail me a copy of this document, and (c) the Lender's electronic record of this document and any printout from that record shall be an original for all purposes, including any lawsuit to collect amounts that I owe.

## M. DISCLOSURE NOTICES

**ALL APPLICANTS:**
**IMPORTANT FEDERAL LAW NOTICE—**

*Important information about procedures for opening a new account:*
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

*What this means for you:*
When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within 60 days a free copy of my consumer credit report from the consumer reporting agency who furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations.

IOWA, KANSAS, AND NEBRASKA RESIDENTS (For purposes of the following notice, the word "you" refers to the Borrower, not the Lender): NOTICE TO CONSUMER. This is a consumer credit transaction. 1. DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THIS CREDIT AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS CREDIT AGREEMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

MARYLAND RESIDENTS: You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. § 85 and related regulations and opinions, which you expressly reserve.

**MISSOURI RESIDENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect me (borrower(s)) and you (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

NEVADA RESIDENTS: This is a loan for study.

NEW JERSEY RESIDENTS: The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: For married Wisconsin residents, my signature on this Credit Agreement confirms that this loan obligation is being incurred in the interest of my marriage and my family. No provision of any marital property agreement (pre-marital

agreement, statement under Section 766.59 or court decree under Section 766.70 adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me.

**N. BORROWER'S CERTIFICATION:** I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that all information I provided to you in connection with this loan, including without limitation, the information contained in this Credit Agreement, is true, complete and correct to the best of my knowledge and belief and is made in good faith. I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Ford Direct Loan, or any other education loan received for attendance at any school. The legal age for entering into contracts is 18 years of age in every State in the United States except the following: Alabama and Nebraska (19 years old), and Mississippi and Puerto Rico (21 years old). I certify that I meet these state age requirements.