Damian P. Richard, Esq. (SBN 262805)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:   619/758-1891
Fax:   619/296-2013
drichard@sessions.legal
*Attorneys for Defendants*
*National Collegiate Student Loan Trust 2006-1,*
*National Collegiate Student Loan Trust 2006-4,*
*National Collegiate Student Loan Trust 2007-4*
*(erroneously sued as National Collegiate Student Loan Trust 2007-1)*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>    JOHN MARTIN MATA<br>    LIVIER MATA<br><br>――――――――――――――――<br><br>JOHN M. MATA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2006-1, et<br>al.<br><br>                    Defendants.<br>――――――――――――――――　| Case No.  16-BK-30625-MH<br><br>Chapter 7<br><br>Adversary No. 6:18-AP-01089-MH<br><br>REPLY MEMORANDUM IN<br>SUPPORT OF DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT |

Defendants National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-4 (erroneously sued as National Collegiate Student Loan Trust 2007-1) (collectively "Defendants") through undersigned counsel hereby file Defendants' memorandum in Reply to Plaintiff John M. Mata ("Plaintiff")'s Opposition to Defendants' motion for summary judgment ("Opposition").

# **Table of Contents**

I.     INTRODUCTION ........................................................................ 3

II.    BASED ON THE PLAIN LANGUAGE OF THE STATUTE,
       PLAINTIFF'S STUDENT LOANS ARE EXCEPTED FROM
       DISCHARGE ............................................................................ 3

III.   PLAINTIFF'S STUDENT LOANS OWING TO DEFENDANTS *WERE*
       FOR EDUCATIONAL PURPOSES CONSTITUTING
       EDUCATIONAL OBLIGATIONS .......................................... 12

IV.    TERI IS A NONPROFIT INSTITUTION WHO GUARANTEED AND
       THEREFORE FUNDED PLAINTIFF'S THREE STUDENT LOANS
       OWING TO DEFENDANTS .................................................. 13

V.     PLAINTIFF'S STUDENT LOANS WERE ASSIGNED TO
       DEFENDANTS TOGETHER WITH RIGHTS UNDER THE TERI
       GUARANTY ............................................................................ 18

VI.    DEFENDANTS HAVE MET THEIR BURDEN; JUDGMENT
       SHOULD BE ENTERED FOR DEFENDANTS AND ENTIRE
       ADVERSARY CASE DISMISSED WITH PREJUDICE BECAUSE
       PLAINTIFF FAILS TO ESTABLISH (NOR EVEN ALLEGE) ANY
       UNDUE HARDSHIP ............................................................... 19

VII.   CONCLUSION ......................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    <u>INTRODUCTION</u>

Defendants' Motion is brought pursuant to 11 U.S.C. § 523(a)(8)(A)(i) only, because each of Plaintiff's three student loans owing to Defendants were made under programs funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a nonprofit institution.  Plaintiff's Opposition seems to miss this point entirely, repeatedly relying on language from subsections 523(a)(8)(A)(ii) and 523(a)(8)(B), and cases discussing those subsections, which, for the purposes of this Motion, are irrelevant.  Most eye-popping, however, is how Plaintiff distorts the plain language of subsection 523(a)(8)(A)(i) and attempts to create terms and elements that do not exist (i.e. "DTC," "Higher Education," "Cost of Attendance" etc.).  "Courts . . . are obligated to refrain from inserting language into a statute that Congress has opted to omit." *In re USinternetworking, Inc.,* 291 B.R. 378, 381 (Bankr. D.Md. 2003).

The U.S. Court of Appeals for the Second Circuit has already answered this very question, specifically holding that where TERI has guaranteed a student loan, that "student loan was made under a program that was funded in whole or in part by a nonprofit institution" such that the loan was non-dischargeable under subsection 523(a)(8)(A)(i).  *In re O'Brien,* 419 F.3d 104, 106 (2d Cir. 2005) (holding loan at issue was funded by TERI nonprofit "corporation that conditionally guarantees loans extended by private lenders under TERI's student loan programs.").  Courts have interpreted *O'Brien* to hold that a loan may be excepted from discharge under subsection 523(a)(8)(A)(i) where "the nonprofit entity played any meaningful part in procurement of the loans under the program." *In re Page,* 592 B.R. 334, 337 (B.A.P. 8th Cir. 2018).  As such, summary judgment is warranted.

## II.    <u>BASED ON THE PLAIN LANGUAGE OF THE STATUTE, PLAINTIFF'S STUDENT LOANS ARE EXCEPTED FROM</u>

## **DISCHARGE**

Defendants' Motion is brought exclusively under subsection 523(a)(8)(A)(i), with the greater section 523(a)(8) providing in relevant part:

A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .

(8)      unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

(A)(i) [1] an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, [2] or made under any program funded in whole or in part by a governmental unit or *nonprofit institution*; or

(ii) [3] an obligation to repay funds received as an *educational benefit*, scholarship, or stipend; or

(B) [4] *any other educational loan* that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8) (emphasis added).  *See also Institute of Imaginal Studies v. Christoff (In re Christoff),* 527 B.R. 624, 632 (B.A.P. 9th Cir. 2015) (holding that the section explicitly exempts four separate categories [1 through 4] from discharge).

Here, Defendants' Motion is made under number [2] *only*, the latter part of subsection 523(a)(8)(A)(i). Plaintiff's Opposition wholly confuses numbers [2] and [4] and inserts terms and requirements into subsection 523(a)(8)(A)(i) that do not

exist.[1]

Any exercise of statutory interpretation must begin with the plain language of the statute itself. *United States v. Ron Pair Enters.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *In re Perez,* 318 B.R. 742, 747 (Bankr. M.D. Fla. 2005). If no ambiguity appears on the face of the statute, its plain meaning is to be given effect. *Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026 ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982))); *In re Proalert, LLC,* 314 B.R. 436, 441 (9th Cir. BAP 2004) ("When the words of a statute are clear, 'judicial inquiry is complete.'" (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992))). When a statute's language is clear, "the sole function of the court is to enforce it according to its terms." *Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026.

Subsection 523(a)(8)(A)(i) requires only that there be an educational obligation consisting of a "loan," "made under *any program* funded in whole or in part by a" "*nonprofit institution.*" (Emphasis added.) Defendants need only show that a student "loan" was "made"—with "made" being a verb stated in the past tense— "under *any* program funded in whole or in part by a" "nonprofit institution." With the term "funded" also being in the past tense. Plaintiff seemingly concedes

---

[1] Subsection 523(a)(8)(B) contains a host of specifically-defined term, defined elsewhere in the U.S. Code, and in turn, triggers a host of other defined terms all applicable to subsection 523(a)(8)(B), but not applicable here. *See e.g.* 26 U.S.C. § 221(d)(1) ("qualified education loans" defined); 20 U.S.C. § 1087ll ("cost of attendance" defined). Based on Plaintiff's Adversary Complaint, which seeks only "declaratory relief" solely under subsection 523(a)(8)(B), Plaintiff likely intended on making arguments under subsection 523(a)(8)(B) and tries to confuse and interpose terms and requirements which have no relevance to the straightforward analysis under subsection 523(a)(8)(A)(i).

this point by agreeing that his three loans at issue "were at one time guaranteed by TERI." (ECF No. 46, n. 52.)

Plaintiff's legislative history is largely revisionist and aimed at bending decades of bankruptcy jurisprudence for his own financial gain.[2]  The best pre-*and*-post-BAPCPA legislative history of subsection 523(a)(8)(A)(i) is found in *In re Nunez,* 527 B.R. 410 (Bankr. D. Or. 2015).  *Nunez* provides an accurate legislative history of subsection 523(a)(8)(A)(i) and in turn analyzes Judge Perris's pre-BAPCPA analysis of subsection 523(a)(8)(A)(i) in her published opinion in *Plumbers Joint Apprenticeship and Journeyman Training Committee v. Rosen (In re Rosen),* 179 B.R. 935 (Bankr. D. Or. 1995).  Judge Perris began her analysis by rejecting the debtor's contentions that the term "educational" should be interpreted narrowly to apply only to obligations pertaining to education received at "institutions of higher or post-secondary education."  *In re Nunez,* 527 B.R. at 414.

In *In re Rosen* Judge Perris reasoned:

---

[2] The Opposition seems to entirely overlook the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23 (April 20, 2005) ("BAPCPA"), and its expressly-stated, overarching policy objectives to bring 523(a)(8) protection to the very private, nonprofit-funded loans at issue in this case.  The policy objectives of Congress in enacting BAPCPA are spelled out most clearly in *Micko v. Student Loan Finance Corp. (In re Micko),* 356 B.R. 210, 216-17 (Bankr. D. Ariz. 2006), where the court described BAPCPA as the latest in Congress' continued expansion of the protections offered to lenders.  The *In re Micko* Court held: "Since its enactment as part of the Bankruptcy Reform Act of 1978, Section 523(a)(8) has been amended several times. From these amendments, a general pattern has emerged.  Each time, Congress has provided additional protection from discharge to lenders offering student loans."  The Opposition seems to suggest that Congress was overly concerned with the plight of seminarians, and other charitable "institutions" of higher learning, and fails to give the term "nonprofit institution" the plain meaning it deserves.  Plaintiff offers no law in support of his rendition of legislative history, more importantly, it is simply not true.  To support his theory that the "nonprofit" itself must be an institution of higher learning, Plaintiff relies on 3 pages of "comments" from 1983—not from subsection 523(a)(8)(A)(i)'s drafters—but rather from a nongovernmental witness who was apparently a member of a nongovernmental conference which did "not take[] [any] position[] on the [1984] amendments."  (ECF No. 46 at p. 37.)  This simply represents the views of one informed person on an issue and does not constitute reliable legislative history.

The language of section 523(a)(8) refers to *educational obligations*. It is not limited to obligations pertaining to education received at institutions of higher or post-secondary education. The Higher Education Act, the nondischargeability provisions added to the Higher Education Act and the nondischargeability provisions originally enacted as part of the Bankruptcy Reform Act of 1978 may have been so limited. Subsequent amendments to section 523(a)(8), however, have significantly broadened its scope. Most significantly, prior to 1984, section 523(a)(8) barred the discharge, inter alia, of certain loans made under any program funded in whole or in part by a governmental unit or "nonprofit institution of higher education." The Bankruptcy Amendments and Federal Judgeship Act of 1984, however, deleted the term "of higher education." The debtor would basically have me read the term back into section 523(a)(8) by imposing a post-secondary or higher education requirement. The language of the *statute is not so limited.*

179 B.R. at 938 (emphasis added).[3]

Under 523(a)(8)(A)(i), the creditor initially needs to only show that there is some sort of general, "educational" obligation to come "within the scope of section 523(a)(8)." *In re Rosen,* 179 B.R. at 939. Next, the creditor needs to only show that "the debt is for a *loan.*" *Id.* (emphasis added). Lastly, the creditor need only show that the loan was "made under *any program* funded in whole or in part by a" "nonprofit institution." *Id.* at 940.

The Opposition completely disregards the protections offered to lenders

---

[3] *See also Doyle v. Creeger (In re Creeger),* No. 14-34053, 2016 WL 3049972, at *8 (Bankr. N.D. Ohio May 20, 2016) ("Recently, in connection with interpreting another section of § 523(a), the Supreme Court has noted that: When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.") (citing *Husky International Electronics, Inc. v. Ritz,* 136 S. Ct. 1581 (2016).)

under subsection 523(a)(8)(A)(i) and instead argues decisions concerned about textual redundancies found in 523(a)(8)(A)(ii) and (B). *In re Kashikar,* 567 B.R. 160 (9th Cir. BAP 2017); *In re Dufrane,* 566 B.R. 28 (Bankr. C.D. Cal. 2017), and *In re Essangui,* 573 B.R. 614 (Bankr. D. Md. 2017)). Notwithstanding the misdirection, those decisions actually *support* Defendants' position as those courts have noted that the subject of one category of non-dischargeable debt is "an obligation to repay funds," which is different from another category "an educational benefit overpayment *or loan,*" which is also different from the last category "qualified educational loan." *See, e.g., Essangui,* 573 B.R. at 622 (emphasis added).[4]

_____

[4] For example, at pages 22-23 of his Opposition Plaintiff argues that TERI's Guaranty is invalid because the amount applied-for and obtained by Plaintiff—three loans of $30,000 spread-out over three academic years—somehow exceeded Loma Linda University ("LLU")'s "cost of attendance." Again, "cost of attendance" is a requirement under subsection 523(a)(8)(B), *not* subsection 523(a)(8)(A)(i). Moreover, Plaintiff misstates LLU's published cost of attendance. *See* Supplemental Request for Judicial Notice ("SRJN"), Exs. 1-3. The cost of attendance is "the amount determined by the institution for tuition and fees plus an allowance for books, supplies, transportation, room and board, and miscellaneous personal expenses." *In re Carow,* No. ADV 10-7011, 2011 WL 802847, at *4 (Bankr. D.N.D. Mar. 2, 2011). Notwithstanding the irrelevance under subsection 523(a)(8)(A)(i), Plaintiff's "cost of attendance" argument fails for an additional two reasons. *First,* Plaintiff is not a party to the Guaranty Agreements and lacks standing to challenge the underwriting guidelines and how they were implemented. By funding and guaranteeing Plaintiff's student loans, TERI could have just as easily waived certain underwriting guidelines, especially considering the cost of a graduate-school education in Southern California. *Second,* Plaintiff attended LLU between 2005 and 2007 as a graduate student pursuing a master's degree in counseling. (Adv. Comp. ¶ 10.) During that period, LLU's tuition plus room & board alone for each of those years was between $28,392 and $43,942. (SRJN Exs. 1-3.) Plaintiff spent approximately three years pursuing a "master's degree in counseling" from LLU. (Adv. Compl. ¶¶ 9-10.) As of 2005, when Plaintiff commenced his graduate studies at LLU, the master's degree in counseling was a program conferred by LLU's School of Science and Technology ("ST"), was a two-year program, and required between 72 and 103 total credits, at a cost of $465 per credit ($33,480-$47,895). (SRJN Exs. 1-3.) In 2006, the LLU/ST cost per credit increased to $535 ($38,520-$55,105). (*Id.*) In 2007, the LLU/ST cost per credit increased to $555 ($39,960-$57,165). (*Id.*) This tuition cost did not include any special charges or fees, or the costs for "books, supplies, transportation, and miscellaneous personal expenses, including a reasonable allowance for the documented rental or purchase of a personal computer." (*Id.*) This also did not include the cost of "professional licensure or certification," which in California is required. *See*

There is also no support for Plaintiff's position that loans fall outside of subsection 523(a)(8)(A)(i) simply because the loans originated from private lenders and were made directly to consumers.[5]

Plaintiff's reliance on *In re Golden,* No. 16-40809-ESS, 2019 WL 442298 (Bankr. E.D.N.Y. Jan. 31, 2019) is misplaced.   First, the Court's focus was primarily on subsections 523(a)(8)(A)(ii) and 523(a)(8)(B), and not 523(a)(8)(A)(i). *Id.*  Second, *Golden* was decided on a Rule 12(b)(6) standard.  The Court repeatedly stated that it was "far from clear whether Ms. Golden can prove her allegations, [but] that question is not before the Court on these Motions to Dismiss." *Id.* at *22, 23, 26.

Plaintiff also repeatedly relies on *In re Clouser,* No. 11-33104, 2016 WL 5864493 (Bankr Or. Oct. 6, 016)   However, *Clouser* was not an adversary

---

*generally* Cal. Bus. & Prof. Code, Chapter 16, §§ 4999.10, et seq.  From 2005-2008, the estimated cost of room and board alone, as determined by LLU, was between $11,652-$15,360.  (SRJN Exs. 1-3.)  As such, the cost of attendance at LLU far exceeded the amount borrowed on the three loans.  Plaintiff certified under penalty of perjury that he would "repay[] immediately any funds [] receive[d] which are not . . . used for educational expenses related to attendance at" LLU.  (ECF No. 33-4, Luke Decl., ¶ 11, Ex. A-1, ¶ N, ¶ 19, Ex. A-5, ¶ N, ¶ 27, Ex. A-9, ¶ N.)  Plaintiff did not return or refund any of the loan proceeds to Defendants or their assignors.  (Luke Decl., ¶ 13, 21, 29.)  And most importantly for summary judgment purposes, Plaintiff does not offer any facts establishing that the student loan proceeds were used for *non*-education expenses.

[5] Plaintiff does not cite any decisions that support such a sweeping proposition.  Such an argument also is inconsistent with the explicit purpose of BAPCPA to extend the government loan protections to private lenders.  It would defeat Congress's stated purpose of BAPCPA to specifically include private lenders within the ambit of the statute's protection but then simultaneously restrict those lenders' ability to lend to consumers in this manner.  In the subsequent amendment of the BAPCPA, for-profit lenders are specifically granted section 523(a)(8) protection. *In re Cardona,* No. 15-16365-BKC-LMI, 2015 WL 9459883, at *2 (Bankr. S.D. Fla. Dec. 23, 2015) ("Nonetheless, Congress has spoken, and what started as an exception limited in time and scope now has an unlimited time horizon and applies to educational loans provided by or supported by government programs, not-for-profit lenders, and for [-]profit lenders.") *See also In re Rizor,* 553 B.R. 144, 149 (Bankr. D. Alaska 2016) (holding that fact loan may have been "originated" by "a for-profit institution is not disqualifying" under subsection 523(a)(8)(A)(i) if funded in part by a "nonprofit institution").

proceeding. *Id.* The unpublished opinion involves a motion for summary judgment as to an alleged violation of the discharge injunction. *Id.* The bankruptcy court in *Clouser* merely found that, when drawing all reasonable factual inferences in favor of the debtor, the section 523(a)(8) nondischargeability language in the loan agreement alone was insufficient to obtain summary judgment as to the alleged discharge violation. *Id.*

Here, however, Defendants provide much more, including but not limited to:

1.  Plaintiff's signed certifications on three separate students, each made "under penalty of perjury," certifying that each student loan is guaranteed by TERI and nondischargeable in bankruptcy pursuant to section 523(a)(8);[6]

2.  Plaintiff's *admissions* in his schedules that he owes "Student Loan Obligations" to Defendants;[7]

3.  Plaintiff's *admissions* in Schedule F that his debt owing to Defendants is for "Student Loan[s];"[8]

4.  Guaranty Agreements between TERI and Defendants pertaining to Plaintiff's student loans and the programs under which they were funded;[9]

5.  Declaration of Plaintiff's student loan servicer that Plaintiff's student loans were each guaranteed by TERI;[10]

---

[6] ECF No. 33-4, Exs. A-1, A-5, A-9, at ¶¶ L(2), L(12), H.

[7] ECF No. 34-1, RJN Ex. B, at p. 13.

[8] *Id.* at Sch. F. *See In re Bohrer,* 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001) ("Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions.")

[9] ECF No. 33-4, Exs. J-K (filed under seal).

[10] ECF No. 33-4, Luke Decl. ¶¶ 17, 25, 34.

6. The servicing notes for each of Plaintiff's student loans;[11]

7. The Pool Supplements, assigning each student loan to Defendants together with the TERI "Guaranty Agreements";[12]

8. The judicially-noticeable Trust Agreements for each Defendant, also authenticated by Defendants' servicer;[13]

9. The judicially-noticeable Deposit and Security Agreements for each Defendant, also authenticated by Defendants' servicer;[14]

Plaintiff's Opposition provides no witness or other admissible declaration *at all* to rebut these facts, but mere attorney argument, which is not enough to survive summary judgment.[15]  Plaintiff offers no party testimony, no witness testimony, nor

---

[11] ECF No. 33-4, at pp. 18-25, 63-69, 104-109 ("GUARANTOR: TERI").

[12] ECF No. 33-4, Exs. A-3, A-7, A-11, at Arts. 1 & 5 ("assign[ing]" "claims" and "rights" "under the [TERI] Guaranty Agreements").

[13] ECF Nos. 33-4 and 34-1, Exs. D, E, and F, at Arts. I, VII(a) ("TERI Guaranteed Loans" "TERI Guaranty Agreements").  Plaintiff also *concedes* that "Documents from government websites are self-authenticating." (ECF No. 45 at 3:9-11, n.2.)

[14] ECF Nos. 33-4 and 34-1, Exs. G, H, and I, at p. 1 ("TERI guaranties the payment of principal and interest on the Loans in exchange for the payment of certain Guaranty Fees.").

[15] Defendants hereby object to Plaintiff's counsel's speculation and conjecture.  Plaintiff cannot create a triable issue of fact by merely speculating and re-alleging the allegations in Adversary Complaint.  *See Piantadosi v. Loew's, Inc.,* 137 F.2d 534, 534-37 (9th Cir. 1943).  An opposing declaration must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated.  Defendants object to Plaintiff's *counsel's* declaration, his lack of personal knowledge, *see* Fed.R.Civ.P. 56(c)(2) & (4), and submits that Plaintiff cannot defeat summary judgment based solely on suspicion and belief, attorney opinion or attorney speculation.  Declarations by attorneys are sufficient only if the facts stated are matters of which the *attorney* has knowledge—e.g., matters occurring during the course of the lawsuit, such as authenticity of a deposition transcript.  Attorney declarations made on information and belief do not satisfy the summary judgment procedural requirements.  *See Estremera v. U.S.,* 442 F.3d 580, 584-85 (7th Cir. 2006) (holding that attorney's declaration based upon review of documents is "second-hand knowledge," insufficient to create dispute of material facts); *Bliesner v. Communication Workers of America,* 464 F.3d 910, 913-15 (9th Cir. 2006) (holding that declarations that were not based upon personal

any other admissible evidence to support his positions.  Summary judgment in favor of Defendants is therefore warranted.

### III.     PLAINTIFF'S STUDENT LOANS OWING TO DEFENDANTS *WERE* FOR EDUCATIONAL PURPOSES CONSTITUTING EDUCATIONAL OBLIGATIONS

The is no question that Plaintiff's student loans owing to Defendants were applied for and obtained for educational purposes and therefore constitute educational obligations coming within the exception to discharge under subsection 523(a)(8)(A)(i).

1.  Between 2006 and 2007 Plaintiff borrowed a total of $90,000 over three academic years to help pay tuition, room and board, and related expenses at Loma Linda University;[16]

2.  The first page of each loan contract stated "Student," "Academic Period," and "School: Loma Linda University;"[17]

3.  Plaintiff certified, "under penalty of perjury" three separate times that the "proceeds of [each] loan will be used only for my educational expenses at the School," and further acknowledged and certified that the latter two loans were "education loan[s]" that "will be used only for costs of attendance at the School;"[18]

---

knowledge of the affiants were properly stricken);  *Horta v. Sullivan,* 4 F.3d 2, 8 (1st Cir. 1993) ("Mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact."); *Coleman v. United States,* 369 Fed. Appx. 459, 461 (4th Cir. 2010) (holding that a party "may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment").

[16] ECF No. 33-4, Exs. A-1, A-5, A-9.

[17] *Id.*

[18] *Id.* at ¶¶ L(2), L(12), H.

4. Each of the three times he applied, Plaintiff certified and acknowledged, "under penalty of perjury," that each loan was "guaranteed" by the "nonprofit institution" "TERI" and therefore "subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8);"[19]

5. In his 2014 Schedules, Plaintiff stated, "under penalty of perjury," that the loans owing to Defendants were "Student Loan Obligations;"[20] and

6. In his 2014 Schedule F, he repeatedly listed his loans owing to Defendants.[21]

   *See In re O'Brien*, 419 F.3d 104, 106 (2d Cir. 2005) ("We also note that the . . . loan itself stated that it 'evidences an educational loan made pursuant to a loan program funded in part by a nonprofit institution and is therefore subject to the limitations on dischargeability contained in Section 523(a)(8) of the United States Bankruptcy Code.'").

## IV.  TERI IS A NONPROFIT INSTITUTION WHO GUARANTEED AND THEREFORE FUNDED PLAINTIFF'S THREE STUDENT LOANS OWING TO DEFENDANTS

TERI is a "nonprofit institution" and was a "nonprofit institution" at the time it guaranteed Plaintiff's student loans now owing to Defendants.[22]  TERI did that

---

[19] *Id.* at ¶¶ L(12).

[20] ECF No. 34-1, RJN Ex. B, at p. 13.

[21] *Id.* at Sch. F (disclosing "National Collegiate Trust" and its then servicer "AES" and "Student Loan[s].")

[22] *See In re Cleveland*, 559 B.R. 265, 269-271 (Bankr. N.D. Ga. 2016) (holding that the NCSLT loans "were made under a program funded in whole or in part by a non-profit institution. . . [TERI]", and were thus non-dischargeable under § 523(a)(8)(A)(i)); *In re McClain*, 272 B.R. 42, 46 (Bankr. D. N.H. 2002) ("TERI played a meaningful part in procurement of the loans, making them nondischargeable pursuant to the language of § 523(a)(8)."); *In re Drumm*, 329 B.R. 23, 35 (Bankr. W.D. Pa. 2005) (The non-profit "must have only 'played a meaningful part in procurement of the loans.'  A meaningful financial contribution or a meaningful financial risk are not required . . . the fact that the for-profit entity's funding of the loan was conditioned upon the

when Plaintiff's loans were funded.  Plaintiff offers no authority for the proposition the nondischargeable status of her student loans under subsection 503(a)(8)(A)(i) is in any way altered by TERI's subsequent Chapter 11 Reorganization.[23]

TERI's website, upon which Plaintiff cites to and relies (ECF No. 45, p.2 ¶4; ECF No. 46 at pp.40-41), states it best:

> At TERI, we promote access to education at all levels for students of all ages and backgrounds. Founded in 1985, we are a nonprofit organization with two primary programs. Through our TERI guaranteed private education loan programs, we have helped over one million students access loans to pay for their education. Through our College Access programs, we have supported over one million low income and underserved individuals in their pursuits of a college degree.[24]

*And,* the filings from TERI's Chapter 11 Reorganization, submitted by Plaintiff in his Opposition, *support* the fact that TERI is a nonprofit institution and

---

non-profit participation in guaranteeing the loans was sufficient for the court to conclude that the non-profit played a meaningful part in procurement of the loans."); *In re Hammarstrom,* 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989) (examination of legislative history of the section, determining that the scope of the section included educational loans not directly payable to the government or nonprofits under the "any program funded in whole or in part" language); *In re Taratuska*, 2008 WL 4826279, *3 (D. Mass. Aug. 25, 2008) ("As TERI argues persuasively, the courts that have interpreted this clause of the statute in similar circumstances as the case on appeal here have uniformly found that loans made under any program funded in whole or in part by a nonprofit institution does encompass the role that nonprofit guarantors play.")

[23] Defendants acknowledge that the majority of TERI's guaranty obligations were eventually fulfilled through payments, settlements, and cash distributions to Defendants based on Defendants' rights under the Guaranty Agreements, during the pendency of TERI's Chapter 11 Bankruptcy which commenced on April 7, 2008 and closed on March 8, 2016.  *See In Re The Education Resources Institute, Inc.,* No. 08-12540 (Bankr. D. Mass) ("TERI Ch. 11.")

[24] TERI, *Bringing a Better Future Within Reach – About Us* (Feb. 7, 2019) *available at* http://www.teri.org/index/index.html.

that it guaranteed Plaintiff's student loans.  At Exhibit 5 of his Opposition, Plaintiff provides the 2008 Order pertaining to "Pipeline" loans originated by RBS Citizens, N.A. ("RBS"), a corporate successor to Plaintiff's originating lender Charter One Bank, N.A. ("Charter One").  The Order contains the 2008 "Transition Agreement" between RBS and TERI which identifies TERI as "private non-profit corporation organized under Chapter 180 of the Massachusetts General Laws," and provides for "the wind down" of the RBS and TERI loan program.[25]

To be clear, Plaintiff's loans were not "Pipeline" loans.  Each of Plaintiff's three student loans had already been originated by Charter One, guaranteed by TERI, and assigned to Defendants years earlier.[26]  The Order and Agreement Plaintiff points to applied *only* to "Pipeline Loans," originated on or after TERI's 2008 filing for Chapter 11 Reorganization,[27] and *not* to "Prior Loans,"[28] such as Plaintiff's.  The "Purpose" of the Order and Agreement was to "minimize adverse consequences to qualified *applicants*" who were in the "Pipeline" at the time TERI filed its 2008 petition.[29]  RBS agreed to "release" TERI of its Guaranty *only as to* "post-petition" "Pipeline Loans."[30]  Plaintiff blatantly misstates evidence to suggest the Order and Agreement "reject" any prior, pre-petition guarantees made by TERI. Quite the opposite is true as the Order and Agreement *expressly* do not apply to, and leave in place, TERI's Guaranty of "Prior Loans" such as Plaintiff's, which

---

[25] ECF No. 36 at p. 101.

[26] ECF No. 33-4, Luke Decl.  ¶¶ 16, 24, 32.

[27] ECF No. 46 at p. 125.

[28] *Id.* at p. 102.

[29] *Id.* at p. 103.

[30] *Id.* at pp. 103-104, 205.

were already originated, funded, guaranteed, pooled and assigned years prior, in 2006 and 2007 respectively.[31]

The Guaranty Agreements covering Plaintiffs' student loans have been filed with this Court, under seal.[32]  In each Guaranty Agreement, TERI guaranteed Defendants (a) that it would use its confidential and proprietary "underwriting guidelines" when originating student loans for transfer, and (b) that it would subsequently make a "guaranty payment" to Defendants in the event of a "Guaranty Event," defined as either of the student loan borrower's (i) default, (ii) bankruptcy, or (iii) death.[33]  In fact, it was by virtue of these Guaranty Agreements that Defendants were expressly classified as "holder[s] of" "Secured Claims" throughout the duration of TERI's near decade-long reorganization, and entitled to distributions.[34]

The Disclosures filed together with TERI's Chapter 11 Plan clearly state that "The Plan accomplishes [] a compromise and settlement of guaranty Claims" and that only certain "executory contracts" still in execution phase at the time TERI filed bankruptcy would be "reject[ed]" (i.e. "Pipeline Loans.").[35]  In the Disclosures, TERI and Defendants are described as follows:

> [TERI] processed student loan applications, administered student loans, and provided guarantees in respect of such loans. . . .  At the time that the student loan was funded [TERI] was paid a Guaranty Fee in

---

[31] *Id.* at p. 106.

[32] ECF No. 33-4, Luke Decl., Exs. J-K.

[33] *Id.,* Luke Decl. Ex. J at § 1, ¶¶ 1.4 and 1.8-1.9 ("NextStudent Loan Program"), Ex. K. at § 1, ¶¶ 1.10-1.11 ("START Education Loan Program").

[34] ECF No. 46 at pp. 128, 177, 179, 186, 191-92.

[35] TERI Ch. 11, ECF No. 1013, at pp. 1-2, SRJN Ex. 4.

consideration for issuing a guaranty of the loan. . . .  Those lenders that made loans in anticipation of securitization required that a significant portion of the Guaranty Fees in respect of those loans be placed in a segregated collateral account (the "Segregated Fees") to secure TERI's guaranty payment obligations. . . .  When the loans were securitized, TERI's guaranty continued to guaranty the loans as now owned by the [Defendants] and the Segregated Fees were transferred from the Pool Account to a Pledged Account pledged to [Defendants] to secure TERI's guaranty obligations. . . .  On January 1, 2008, the administration of the accounts was transferred to TERI. . . .  The second category of holders of Secured Claims consists of certain Securitization Trusts . . . sometimes referred to as "The National Collegiate Trusts."  These National Collegiate Trusts hold loans guaranteed by TERI. TERI's guarantee obligations to the Securitization Trusts are secured by, among other things, Pledged Accounts. . . .[36]

The Chapter 11 Plan, together with Defendants' classification, participation, and payments therefrom, can be viewed as an enforcement of TERI's "Guaranty Obligations" under the "Guaranty Agreements."

TERI's judicially-noticeable status as a "nonprofit institution" cannot be negated by mere conjecture and speculation, nor by the purported suspicion and belief of only Plaintiff's counsel.  Again, Plaintiff provides no witness declaration or contradicting evidence, but merely attempts to defeat summary judgment with mere argument and baseless allegations of counsel.

Here, Defendants identify each program under which the student loans were extended, address the relationship between the originating lender, each Defendant,

---

[36] *Id.* at pp. 3-5, 9 (listing Defendants), 42-44, 47.

and TERI, and thereby establish, incontrovertibly that TERI funded the programs under which each of Plaintiff's student loans were made.

## V. PLAINTIFF'S STUDENT LOANS WERE ASSIGNED TO DEFENDANTS TOGETHER WITH RIGHTS UNDER THE TERI GUARANTY

In a footnote, Plaintiff seeks to sow confusion and create a disputed issue of fact on whether one of the student loans was actually assigned to Defendants. Specifically, Plaintiff wants to call into question whether the NCSLT 2006-1 loan was included in the pooled and assigned loans because the Pool Supplement appears to limit the loan programs being transferred to "the NextStudent Alternative Loan, and the NextStudent Private Consolidation Loan" programs, but does not specifically identify the loan described on the contact as NextStudent Graduate Loan.[37]  Plaintiff's objection to the naming conventions in the Pool Supplement is a red-herring that can be quickly dismissed, as there can be no *genuine* dispute of material fact that NCSLT 2006-1 is the current creditor of the loan disbursed to Plaintiff on January 6, 2006.  The actual evidence, both in testimonial and documentary form, leave no doubt that NCSLT 2006-1 is the holder of Plaintiff's loan.

*First,* Bradley Luke, the custodian of record, testified unequivocally in his affidavit that the NextStudent Graduate Loan "was sold to NCSLT 2006-1."[38]  That testimony has not been challenged or rebutted in any substantive way.  *Second,* the Pool Supplement agreement with Charter One Bank incorporates loans from "Nextstudent" generally, Schedule 1 incorporating the Note Purchase Agreement with "the Program Lender for Nextstudent."[39]  *Third,* and most definitive, is the

---

[37] ECF No. 46 at n. 34.
[38] ECF No. 33-4, Luke Decl. ¶ 16.
[39] *Id.* Ex. A-3.

redacted portion of Schedule 2 of Exhibit A-3, which was incorporated into the Pool Supplement. The Pool Supplement operated as the agreement under which Charter One "transfers, sells, sets over and assigns . . . each student loan set forth on attached Schedule 2 (the 'Transferred Loans')."[40] The details from the redacted Schedule 2 demonstrate with certainty that Plaintiff's NextStudent Gradate loan from Charter One Bank was included in the Pool Supplement and transferred to NCSLT 2006-1. *See e.g. In re Scomparin,* 2014 WL 184175, *7-10 (Bankr. N.D. Cal. 2014) (finding that the "Schedule I . . . is a . . . Schedule identifying the [] loans deposited into the trust. A redacted copy of the [] Loan Schedule reflecting the deposit of the Loan into the trust was provided. . . . The court finds that Defendant [] Bank has demonstrated that it has a valid, enforceable interest . . .").

## VI. DEFENDANTS HAVE MET THEIR BURDEN; JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS AND ENTIRE ADVERSARY CASE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFF FAILS TO ESTABLISH (NOR EVEN ALLEGE) ANY UNDUE HARDSHIP

When the nonmoving party's claims are factually implausible, as is the case here, that party must then come forward with *more persuasive* evidence than otherwise would be required. *See Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1147 (9th Cir. 1998) (citation omitted). However, Plaintiff here has presented nothing other than attorney speculation and conjecture. *See Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460 (3d Cir. 1989) ("a nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert

---

[40] *Id.* Ex. A-3, p. 1, Schedule 2 Excerpt (redacted to remove all of the other transferred loans, identifies *Plaintiff's* loan by Lender Name (Charter One Bank), Marketer (NextStudent), a description of the loan (Graduate) and the Plaintiff's social security number (ending in 8533)

factually unsupported allegations contained in its pleadings") (citations omitted).

A party cannot withstand a motion for summary judgment merely by asserting that a fact is disputed; he must present sufficient evidence to the court to show that there is indeed a genuine issue of material fact.  *See Palila v. Hawaii Department of Land and Natural Resources,* 639 F.2d 495 at 497 (9th Cir. 1981).   Plaintiff's Opposition fails to oppose Defendants' motion in this regard and consists exclusively of disjointed and conclusory allegations, unsupported in the record, and based on mere suspicion and belief.   Plaintiff brought nothing before the court to show that he would be able to support his allegations with evidence at trial.  *See Bollow v. Fed. Reserve Bank of San Francisco,* 650 F.2d 1093, 1103 (9th Cir. 1981) (affirming grant of summary judgment as proper where plaintiff offered no evidence in response to sworn declaration, but merely repeated the allegations of complaint).

Here, Defendants have met the initial burden of establishing that the debt is of the type excepted from discharge under subsection 523(a)(8)(A)(i).  Because that showing has now been made, the burden shifts to Plaintiff to prove that excepting the student loan debt from discharge will cause him "undue hardship."  However, Plaintiff's Adversary Complaint seeks only "Declaratory Judgment," that the loans owing to Defendants "are not non-dischargeable student loans or qualified education loans under section 523(a)(8)," and nowhere in the Adversary Complaint does Plaintiff even allege any "undue hardship."  (*See* Adv. Compl.)  Plaintiff's complete lack of allegations or evidence of undue hardship is dispositive, and the Court should award judgment in favor of Defendants as a matter of law.

## VII.  **CONCLUSION**

WHEREFORE, Defendants respectfully request this Honorable Court enter judgment in their favor, dismiss Plaintiff's Adversary Complaint with prejudice, and for such other relief as this Court deems proper.

1

Date: February 13, 2019

SESSIONS FISHMAN NATHAN & ISRAEL, L.L.P.

2

*/s/Damian Richard*

Damian Richard, Esq.

3

Attorney for Defendants

4

National Collegiate Student Loan Trust 2006-1,
National Collegiate Student Loan Trust 2006-4,

5

National Collegiate Student Loan Trust 2007-4

6

(erroneously sued as National Collegiate Student

7

Loan Trust 2007-1)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28