Damian P. Richard, Esq. (SBN 262805)
SESSION FISHMAN NATHAN & ISRAEL, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA 92108
Tel: 619-758-1891
Fax: 877-334-0661
Email: drichard@sessions.legal
*Attorney for Defendants*

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA-RIVERSIDE DIVISION

| | |
|---|---|
| IN RE:<br>　　JOHN MARTIN MATA<br>　　LIVIER MATA | Case No.  6:13-BK-30625-MH<br><br>Chapter 7 |
| JOHN M. MATA,<br>　　　　　　Plaintiff,<br>　vs.<br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1, et al.<br>　　　　　　Defendants. | Adversary No. 6:18-AP-01089-MH<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Date: May 8, 2019<br>Time: 2:00 p.m.<br>Courtroom: 303<br>Hon. Judge Mark Houle |

On January 9, 2019, Defendants National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-4 (erroneously sued as National Collegiate Student Loan Trust 2007-1) (collectively "Defendants") filed a Motion for Summary Judgment.  (ECF No. 33.) Hearings were held on February 27, 2019, and May 8, 2019.  A Tentative Ruling was issued prior to each hearing.  Defendants were represented Damian P. Richard.  Plaintiff John M. Mata was represented by Austin C. Smith and Erik Clark.  Based upon the ruling made at the hearing on May 8, 2019, the attached Tentative Ruling became the

Order of the Court, as set forth in the attached Tentative Ruling, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

# # #

# United States Bankruptcy Court
# Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                                                             **Hearing Room    303**

<u>2:00 PM</u>
**6:13-30625    John Martin Mata**                                                                                                  **Chapter 7**
Adv#: 6:18-01089        Mata et al v. National Collegiate Student Loan Trust 2006-1 et a

   **#19.00**    CONT Motion For Summary Judgment

                From: 2/27/19, 3/27/19

                Also #20

                EH__

                                            Docket        33

**Tentative Ruling:**

   <u>MARCH 27TH, 2019</u>

   <u>PROCEDURAL BACKGROUND</u>

   On December 31, 2013, John & Livier Mata ("Debtors") filed a Chapter 7 voluntary petition. On April 14, 2014, Debtors received a discharge, and the following day their case was closed.

   On April 18, 2018, Debtors filed a complaint against National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-4, and National Collegiate Student Loan Trust 2007-1 (collectively, "Defendants") seeking for determination of dischargeability. Specifically, Debtors seek a declaratory judgment that their loans were discharged. On May 18, 2018, Defendants filed their answer.

   On January 9, 2019, Defendants filed a motion for summary judgment. On February 5, 2019, Debtors filed their opposition. Defendants filed their reply to Debtor's opposition on February 13, 2019. This matter has been continued once by the Court.

   <u>FACTUAL BACKGROUND</u>

   The background of the extant case is simple, but the underlying context is far more complex.

# United States Bankruptcy Court
## Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                                                              **Hearing Room    303**

<u>2:00 PM</u>
**CONT...    John Martin Mata**                                                                                                        **Chapter 7**

First Marblehead Corporation is a formerly NYSE listed private company that, in the mid-2000's, was a dominant player in the private student loan business. In early 2001, it purchased the operating assets of The Education Resources Institute (hereinafter "TERI"), a nonprofit group primarily involved in the guaranteeing of private student loans. Beginning in 2001, First Marblehead established a financial plan under which banks would offer private student loans, which would then be collected and repackaged into National Collegiate Student Loan Trusts (hereinafter "NCSLT"), which would all be, at least ostensibly, guaranteed by TERI, intended to grant the loans protection from discharge, and were finally offered on the open market for investment. The banks involved in the funding of these loans include JP Morgan, HSBC, Citizens, PNC, and, in this particular case, Charter One, among many others. There were 15 NCSLTs in total, owning more than 800,000 private loans worth billions of dollars.[1]

Beginning in 2005, First Marblehead became increasingly aggressive in expanding loan volume to riskier debtors and increasing the value of those loans. As the economy began its downturn in 2007, default rates began rapidly increasing, resulting in the eventual bankruptcy of TERI in 2008.

The question of the nature of the dischargeability of the NCSLT loans has since been taken on by bankruptcy courts across the country. This is one of those cases.

John Mata took out three $30,000 loans as part of his graduate studies in counseling at Loma Linda University. These occurred in January of 2006, September of 2006, and August of 2007. Each loan was cosigned by Livier Mata, and carried a respective interest rate of 9, 12, and 14%. The loan agreements each stated that the loan was explicitly limited to the costs of attending the school, and one of the loans, that of January 2006 said that TERI was guaranteeing the loan, while the latter two stated that TERI had the option to guarantee the loan. Each of these loans was allegedly then repackaged into the one of the three trusts who are currently the Defendants in this matter (NCSLT 2006-1, 2006-4, 2007-1).

**LEGAL STANDARD**

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. Rule 56(a) (incorporated into bankruptcy proceedings by FED. R. BANKR. P. Rule 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party

# United States Bankruptcy Court
## Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                                 **Hearing Room    303**

<u>2:00 PM</u>
**CONT...        John Martin Mata                                                                              Chapter 7**

shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id*. at 324. The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).

If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact…." *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**LEGAL ANALYSIS**

Defendants are seeking to show that Debtors' debts are exempt from discharge under 11 U.S.C. § 523.

11 U.S.C. § 523(a)(8) states:

> (a)  A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
>> (8) unless excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents, for –
>>
>>> (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>>
>>> (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
>>>
>>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue

## United States Bankruptcy Court
## Central District of California
Riverside
Judge Mark Houle, Presiding
Courtroom 303 Calendar

**Wednesday, May 8, 2019**     Hearing Room    **303**

2:00 PM
**CONT...**     **John Martin Mata**     **Chapter 7**

Code of 1986, incurred by a debtor who is an individual

Defendants have stated that their motion for summary judgment is based purely nondischargeability of the debt under 11 U.S.C. § 523(a)(8)(A)(i), and the Court will treat Defendants' and Debtors' argument accordingly. In order for Defendants to establish that Debtors' debts aren't dischargeable under § 523(a)(8)(A)(i), they must prove two elements:

1    that the loans to the Debtors were "educational loans" and;
2    that the loans were made under any program funded in whole or in part by a nonprofit institution.

It is important to note that discussion of the determination of the dischargeability of student debts, including the discussions that occurred within the court cases cited, all occurs under the shadow of the general rule that exceptions to discharge are to be construed narrowly in favor of the debtor. 4 COLLIER ON BANKRUPTCY P 523.05 (Richard Levin & Henry J. Sommer eds., 16th ed.).

    **I.**     **Whether Debtors' loans were "educational loans."**

Courts analyze whether loans are "educational loans" separately from considering whether they are "qualified educational loans" under 26 U.S.C. § 221. *In re Oliver*, 499 B.R. 617, 623-4 (Bankr. S.D.In. 2013). § 523(a)(8)(A)(i) requires that the loans be "educational loans", while § 523(a)(8)(B) has a higher standard, requiring that the loans be "qualified educational loans." *Id.* (finding that all qualified educational loans are educational loans, but not all educational loans are qualified). The 9th Circuit Bankruptcy Appellate Panel has followed this approach, holding that an "educational loan" was distinct from an "educational benefit" or a "qualified educational loan." *See Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 166 (9th Cir. BAP 2017).

The question of whether a loan is an "educational loan" is determined by its stated purpose, not its actual use. *See Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Busson-Sokolik)*, 635 F.3d 261, 266 (7th Cir. 2011). The fact that a debtor spent loan proceeds in excess of tuition and expenses does not except debt from discharge. Murphy v. Pa. Higher Educ. Assistance Agency, 282 F.3d 868, 873 (5th Cir. 2002). Educational purpose encompasses both tuition and fees, as well as room, board, and miscellaneous personal expenses, as part of the school's general cost of attendance as calculated by statute. *Id.* at 872-3 (*citing* 20 U.S.C. § 1087II(2)-(3). It is up to the individual schools to calculate their reasonable costs of attendance, which determines the disbursement by lenders (with debtors having the choice of how much of said disbursement to accept and use).

# United States Bankruptcy Court
## Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                                                              **Hearing Room    303**

2:00 PM
CONT...         **John Martin Mata**                                                                                          **Chapter 7**

Each of the respective loans in this matter was explicitly restricted to the costs of attending Linda Loma University. (Decl. Bradly Luke, ECF 33, Exhibit A-1 (page 12) (January 2006 loan), Exhibit A-5 (page 57) (September 2006 loan), Exhibit A-9 (page 98) (August 2007 loan)). This appears to clearly state their purpose.

Debtors seeks to challenge the status of the loans as "educational loans" on three grounds. The first is that the amounts disbursed were far in excess of Linda Loma's graduate cost of attendance. The second is that the loans carry an unusually high interest rate, have high origination fees, and required a cosigner and credit check. The third is that the loans are not educational loans because they were provided directly to the consumer and ignored the school's financial aid office.

While limitation to the cost of attendance is an aspect of "qualified educational loans" not "educational loans", disbursement in great excess of the actual amount needed for educational purpose does argue against a finding that the loan was intended for educational purposes and for a purpose closer to a "student credit card" as the Debtors argue. However, Debtors inexcusably attempts to present the mere tuition cost and mandatory fees of the cost of attending Linda Loma, while completely ignoring the room and board and other miscellaneous expenses explicitly included in the calculations of the true cost of attendance. *See* Plaintiff's Opposition to Motion for Summary Judgment, Exh. 3 at 25, ECF No. 46 (finding a cost of attendance for Loma Linda of 19,640 purely through the addition of the average full-time graduate tuition of 17,760 and the required fees of 1,880, as reported by Institutional Characteristics). By contrast, Debtors have shown that the amounts were in line with Linda Loma's stated cost of attendance for graduate students. Supplemental Request for Judicial Notice Exh. 1-3, ECF No. 565 (showing that the tuition costs of Debtor's program rose from between $33,480-$47,895 to $39,960-57-160 over the course of his three years of attendance, while also showing room and board calculations of more than $15,000 for each year that Debtor attended).

On the second, the Court finds, as other courts have, that commercial features cannot disqualify a loan from being educational, with the sole test being its purpose. *Page v. JP Morgan Chase Bank (In re Page)*, 592 B.R. 334, 336 (8th Cir. BAP 2018). On the third, the Court repeats its finding that purpose controls over form, while also noting that other courts have analyzed direct to consumer loans and the question of whether the loan was disbursed directly to the consumer was a complete non-factor in their decision as to whether they were "educational loans" or not. *See id.*; *see also McDaniel v. Navient Solutions Inc. (In re McDaniel)*, 590 B.R. 537, 542, 546-551 (Bankr. D.Colo. 2018).

In view of the above, the Court cannot find, even after drawing all reasonable

# United States Bankruptcy Court
## Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                                 **Hearing Room    303**

<u>2:00 PM</u>
**CONT...    John Martin Mata                                                                              Chapter 7**

inferences for the Debtors' that they have established any genuine issues of material fact, or questions of law, as to the question of whether these loans were "educational loans."

> **II.    Whether the loans were "funded, in whole or in part, by a nonprofit institution."**

In the current case, Defendants' claim to exemption from discharge under 11 U.S.C. § 523(a)(8)(A)(i) is dependent on their showing that a nonprofit has funded the loan program under which the loan was made, either in whole, or in part. Defendants argue that the guarantee of the loan program through which Debtors' loan was made by The Education Resources Institute (TERI), a nonprofit institution, satisfies this requirement. This splits the question into two elements. First, whether TERI's guarantee is considered to have legally "funded" the loan program in question. Secondly, whether TERI did in fact guarantee the loans at issue, an issue of factual, not legal, controversy. Debtors raises a third issue, by arguing that the TERI's alleged voiding of the guarantees of the loans in question should strip the loans retroactively of their status as being guaranteed by a nonprofit institution.

> *A.    Whether a nonprofit can "fund" a loan program through guaranteeing the loans.*

This question has been litigated throughout several districts, often involving the NCSLTs, with the general consensus of the courts being that a nonprofit guaranteeing a loan functions is the nonprofit funding, in whole or in part, the loan program under which the educational loan was made. *See O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien)*, 419 F.3d 104, 106 (2nd Cir. 2005); *see also Educ. Res. Inst. Inc. v. Taratuska (In re Taratuska)*, 2008 U.S. Dist. LEXIS 93206 at *17-18 (D. MA 2008) (*reversing In re Taratuska*, 374 B.R. 24, 29 (Bankr. D.MA 2007), the only case cited by Debtors supporting their position that guaranteeing and funding are two separate actions, meaning that nonprofits aren't "funding" the loan through their guarantee). The 9th Circuit Bankruptcy Appellate Panel agrees with this line of reasoning, interpreting (A)(i) as covering "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit or nonprofit institution." *Inst. of Imaginal Studies v. Christoff (In re Christoff)*, 527 B.R. 624, 632 (9th Cir. BAP 2015). However, the BAP's interpretation of (A)(i) has never been litigated.

In contrast to the general trend cited above, the District of Maine reached an opposite conclusion, finding that the guarantee of a loan by a nonprofit did not constitute the "funding" of the loan. *Wiley v. Wells Fargo Bank, N.A. (In re Wiley)*, 579 B.R. 1, 6-7 (Bankr. D.Me. 2017). The *Wiley* court built this finding on their interpretation of *O'Brien*, stating that it required the nonprofit to both guarantee the loan and fund the

United States Bankruptcy Court
Central District of California
Riverside
Judge Mark Houle, Presiding
Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                          **Hearing Room    303**

2:00 PM
**CONT...        John Martin Mata                                                          Chapter 7**

loan program, as well as on *Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989). *In re Wiley*, 579 B.R. at 6-7. However, there are two problems with there interpretation. The first is that *Hammerstrom*'s requirement of the direct funding of the loan, as received by the debtor, by the nonprofit was explicitly challenged by the 9th Circuit Bankruptcy Appellate Panel in *HEMAR Service Corp., Inc. v. Pilcher*, 149 B.R. 595, 600 (9th Cir. BAP 1993) (reversing the bankruptcy court's holding that a student loan could be discharged due to lack of a nonprofit providing the actual funds that debtor received, and finding that *Hammarstrom*'s requirement was a pure judicial construction, with the real test being whether the nonprofit had played "any meaningful part" in making the funds available under the program). Secondly, the *Wiley* court's interpretation of *O'Brien* is deeply flawed at best. The 2nd Circuit in *O'Brien* did state that the nonprofit had to "fund" the program, however, it defined "funding" using the bankruptcy court's test which required that the nonprofit actually pay out the guarantees when the triggering event occurred, and that the loan program's existence was causally linked to the nonprofit's provision of a guarantee to the for-profit lender for the loan. *See O'Brien*, 419 F.3d at 105-6 (specifically adopting the test created by the S.D.N.Y. Bankruptcy Court in *In re O'Brien*, 318 B.R. 258, 260-1 (Bankr. S.D.N.Y. 2005)).

The Court finds persuasive the consensus of courts around the country that a nonprofit's guaranteeing of a loan program satisfies the requirement of "funding" under 11 U.S.C. § 523(a)(8)(A)(i) for the purposes of exempting a loan from discharge, including that of the 9th Circuit Bankruptcy Appellate Panel, and also adopts this interpretation. As such, the Court agrees with Defendants that, if TERI has in fact guaranteed the loan program in question, they are entitled to judgment as a matter of law.

    B.  *Whether Defendant has established that there is no genuine issue of material fact that TERI actually guaranteed the loan.*

        1.        Did TERI, on paper, guarantee the loans?

Debtors argue that there is a material issue of fact concerning whether or not TERI was the actual guarantor of the September 2006 and August 2007 loans. This is based in part on two related grounds: the first is that two of the three loan agreement do not explicitly state that TERI will guarantee the loans, merely that they have the option to do so. The mere existence of an option, rather than direct proof that TERI in fact guaranteed the loan program in question, has been found sufficient to create a genuine issue of material fact. *See Golden et. al v. JP Morgan Chase Bank, et. al.*, 596 B.R. 239, 266 (Bankr. E.D.N.Y. 2019). The second issue raised by Debtors is that the NSCLT trust agreement schedules does not specifically list the NextStudent Graduate

# United States Bankruptcy Court
# Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**　　　　　　　　　　　　　　　　　　　　　　　　　　**Hearing Room**　　**303**

<u>2:00 PM</u>
**CONT...**　　　**John Martin Mata**　　　　　　　　　　　　　　　　　　　　　　　　　**Chapter 7**

Loan as one of the programs transferred or sold to the Trusts (listing instead NextStudent Alternative Loan Program). This has also been found sufficient to create a material issue of fact. *See National Coll. Student Loan Trust 2007-4 v. Watson*, 2016 N.Y. Misc. LEXIS 5116 at *7 (N.Y.City Civ.Ct. 2016).

　　　However, it is clear within this case that Debtor's loans were in fact guaranteed by TERI, and that they were each sold to the respective trusts that make up the defendants. Defendants have disclosed the Loan Financial Activity pages, which identify Debtors by name, and also state that the loans were guaranteed by TERI. Decl. Luke ¶15; *Id.* Exh. A-3 (page 18 within the declaration). It also includes the identification by social security number of Debtor within the trusts' contained loans, as well as guarantee agreements between TERI and each of the individual trusts. By contrast, in *Golden*, the genuine issue of material fact was due to the Defendants only providing the loan documentation stating that the loan potentially could be guaranteed by TERI. In short, the Court cannot find that there is a genuine issue of fact as to whether TERI, on paper, guaranteed the loan program which provided Debtors' loans.

　　　2.　　Was TERI actually guarantee the loans?

In order to fund a loan program through guaranteeing the loans, the guarantee must actually come into effect, instead of just being a paper promise to render the debt exempt from discharge. *See O'Brien*, 419 F.3d at 105-6. Debtors' student loan servicer has declared that Debtors' student loans were guaranteed by TERI, but Debtors allege that the guarantees did not actually occur. Decl. Luke ¶¶ 17, 25, 34 (ECF No. 33-4). As noted by Debtors, evidence demonstrating the actual guarantee by TERI of the loans within the loan program would include guarantee agreements between TERI and the loan originators and, evidence that the loan originators actually paid TERI guarantee fees as agreed upon. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Exh. 4, Defendants Responses and Objections to Requests for Production No. 7, ECF No. 46 (Debtors requesting "all documents demonstrating that TERI guaranteed the loans" including checks payable by the loan originators to TERI for the guarantee fees and guarantee agreements between TERI and the loan originators).

However, Debtors appear to have answered this question themselves, when they showed that Defendants had refunded the Royal Bank of Scotland (who wholly owned, at the time of Debtors' loan creation Citizens Bank, who owned Charter One, the loan originator) $46,000,000 in guarantee fees as part of resolving RBS secured claims against TERI concerning loans extended prior to TERI's bankruptcy. *Id.* at Exh. 6, Fourth Amended Joint Plan of Reorganization of The Education Resources Institute, Inc at page 65; *Id.* at 11 (defining "collateral account" as a pledged account, victory fund, pool account, or joint pool account—all of which were accounts

# United States Bankruptcy Court
# Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                                                            **Hearing Room     303**

<u>2:00 PM</u>
**CONT...**     **John Martin Mata**                                                                    **Chapter 7**

containing guarantee fees intended for the payment of guarantees should the conditions be triggered); *see also* Supplementary Request for Judicial Notice, Exh. 4, Disclosure Statement for Fourth Amended Joint Plan of Reorganization of The Education Resources Institute at pages 3-7, ECF No. 55 (explaining how the myriad banks decided how TERI should segregate or not segregate the guarantee fees they paid in view of paying out guarantees on the loan). The massive balances on the collateral accounts of the NCSLTs, including all three trusts in question, revealed by the disclosure statement to the confirmed Fourth Amended Plan, shows that the combined guarantee fees sequestered for guarantee payments, as well as the recoveries collected, numbered in the hundreds of millions of dollars. Disclosure Statement at page 11.

It is difficult for this Court to find that Debtors have raised a genuine question of fact as to the substance of TERIs guarantees, when the Debtors themselves have put forward clear evidence that tens of millions of dollars were being paid in guarantee fees to TERI, including tens of millions by Charter One, and TERI was simultaneously shelling out tens of millions of dollars in loan purchases as part of the guarantee.

> C. *Whether TERI has voided their guarantee of the loan program in question, and whether, if shown, this would retroactively change whether the loans were funded by a nonprofit institution.*

Debtors correctly assert that TERI's debt guarantees for loans extended prior to TERI's petition were voided as a part of their confirmed plan for reorganization. Fourth Amended Plan at page 40, ECF No. 46. Defendants appear to be trying to confuse the Court by pointing to the transition agreement between TERI and RBS through which RBS agreed to accept the transfer of "pipeline" loans (loans applied for before, or on TERI's petition, but extended by the lender after). *See* Plaintiff's Opposition, Exh. 5, Transition Agreement Between TERI and RBS at pages 3-4. However, it is clear that the settling of the guarantees for loans prior to bankruptcy, as illustrated above, was the foundation of TERI's reorganization, and the Court proceeds accordingly.

However, even if the guarantee is no longer extant, the Court does not find that this changes the fundamental nature of how the loans were funded in the first place. § 523(a)(8)(A)(i) states that the exemption of a loan from discharge is dependent on the loan program under which it was made, not the context under which it still exists. The exemptions under § 523 look at actions of the debtor at the time that they took the action in question, not the status of those actions at the time of the current proceedings. Debtor should not be allowed to discharge a debt that he knew was intended to be exempt at the time he made the loan, was made under a program clearly

# United States Bankruptcy Court
## Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**      **Hearing Room**   **303**

<u>2:00 PM</u>
**CONT...**     **John Martin Mata**     **Chapter 7**

intended to protect the loans from discharge, and would still be exempt at the current time, barring the fact that the guarantor collapsed because too many other debtors had defaulted on their loans.

As such, the Court finds unpersuasive the argument that the rejection of TERI's argument that TERI's bankruptcy has retroactively changed the status of Debtors' debt.

**TENTATIVE RULING**

THE COURT FINDS THAT DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW, AND THAT THERE ARE NO GENUINE DISPUTES OF MATERIAL FACT. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS HEREBY GRANTED.

| Party Information |
|---|

**Debtor(s):**

| | |
|---|---|
| John Martin Mata | Represented By<br>Michael E Clark |

**Defendant(s):**

| | |
|---|---|
| National Collegiate Student Loan | Represented By<br>Damian P Richard<br>James  Schultz |
| NATIONAL COLLEGIATE | Represented By<br>Damian P Richard<br>James  Schultz |
| National Collegiate Student Loan | Represented By<br>Damian P Richard<br>James  Schultz |

**Joint Debtor(s):**

| | |
|---|---|
| Livier  Mata | Represented By<br>Michael E Clark |

**Movant(s):**

| | |
|---|---|
| National Collegiate Student Loan | Represented By |

# United States Bankruptcy Court
# Central District of California
## Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                                                           **Hearing Room    303**

<u>2:00 PM</u>
**CONT...**     **John Martin Mata**                                                                                                      **Chapter 7**
                                                                Damian P Richard
                                                                James  Schultz

    NATIONAL COLLEGIATE                        Represented By
                                                                Damian P Richard
                                                                James  Schultz

    National Collegiate Student Loan              Represented By
                                                                Damian P Richard
                                                                James  Schultz

**<u>Plaintiff(s):</u>**

    John Martin Mata                              Represented By
                                                                Michael E Clark
                                                                Austin C Smith

    Livier  Mata                                  Represented By
                                                                Michael E Clark
                                                                Austin C Smith

**<u>Trustee(s):</u>**

    Helen R. Frazer (TR)                          Pro Se

# United States Bankruptcy Court
# Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                                 **Hearing Room    303**

2:00 PM
**6:13-30625    John Martin Mata**                                                                 **Chapter 7**
Adv#: 6:18-01089        Mata et al v. National Collegiate Student Loan Trust 2006-1 et a

**#20.00**    CONT-Status Conference RE: [1] Adversary case 6:18-ap-01089. Complaint by John Martin Mata, Livier Mata against National Collegiate Student Loan Trust 2006-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, National Collegiate Student Loan Trust 2007-1. (Charge To Estate) - Filing Fee Not Required. Determination of Discharge Under 11 U.S.C. Sect 523(a)(8) Nature of Suit:  63 - Dischargeability - 523(a)(8), student loan, 91 - Declaratory judgment

From: 6/27/18, 8/22/18, 2/27/19, 3/27/19

Also #19

EH ___

Docket    1

**Tentative Ruling:**
- NONE LISTED -

| Party Information |
|---|

**Debtor(s):**

John Martin Mata                             Represented By
                                             Michael E Clark

**Defendant(s):**

National Collegiate Student Loan             Represented By
                                             Damian P Richard
                                             James  Schultz

NATIONAL COLLEGIATE                          Represented By
                                             Damian P Richard
                                             James  Schultz

National Collegiate Student Loan             Represented By
                                             Damian P Richard
                                             James  Schultz

# United States Bankruptcy Court
# Central District of California
### Riverside
### Judge Mark Houle, Presiding
### Courtroom 303 Calendar

**Wednesday, May 8, 2019**                                                                                           Hearing Room    **303**

<u>2:00 PM</u>
**CONT...    John Martin Mata**                                                                                                      **Chapter 7**

**Joint Debtor(s):**

   Livier Mata                                   Represented By
                                                    Michael E Clark

**Plaintiff(s):**

   John Martin Mata                              Represented By
                                                    Michael E Clark
                                                    Austin C Smith

   Livier Mata                                   Represented By
                                                    Michael E Clark
                                                   Austin C Smith

**Trustee(s):**

   Helen R. Frazer (TR)                          Pro Se