James K. Schultz, Esq. (SBN 309945)
Debbie P. Kirkpatrick, Esq. (SBN 207112)
SESSIONS, FISHMAN, NATHAN & ISRAEL, LLP
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:    619/758-1891
Fax:   619/296-2013
jschultz@sessions.legal
dkirkpatrick@sessions.legal
*Attorneys for Defendants*
*Attorneys for Defendants*
*National Collegiate Student Loan Trust 2006-1,*
*National Collegiate Student Loan Trust 2006-4,*
*National Collegiate Student Loan Trust 2007-4*
*(erroneously sued as National Collegiate Student Loan Trust 2007-1)*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>    John Martin Mata<br>    Livier Mata<br><br>John M. Mata,<br><br>                Plaintiff,<br><br>  vs.<br><br>National Collegiate Student Loan Trust 2006-1, et al.<br><br>                Defendants. | Case No. 16-BK-30625-MH<br><br>Chapter 7<br><br><br>Adversary No. 6:18-AP-01089-MH<br><br>RESPONSE IN OPPOSITION TO PLAINTIFF'S "NOTICE OF SUPPLEMENTAL AUTHORITY" DOCKET NO. 78 |

This Court granted summary judgment to Defendants National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-4.  Docket Nos. 70-71.  Plaintiff has not filed an appeal or sought reconsideration of that ruling.  Instead, and without first requesting leave to do so, Plaintiff has filed a supplemental post-judgment brief entitled Notice of Supplemental Authority ("Notice") (Docket No. 78).  The Notice is not properly before the Court and cites to inapplicable and irrelevant caselaw. The Notice should be stricken or ignored.

**1.     The Notice Should be Stricken**

The Court has not authorized additional, supplemental briefing, and there is no Local Bankruptcy Rule allowing more briefing. For these reasons alone, Plaintiff's Notice should be stricken.

### 2. The Supplemental Authority is Not Instructive and Should be Ignored

Plaintiff's Notice informs the Court about the Supreme Court's recent opinion in a trademark licensing dispute, *Mission Product Holdings, Inc. v. Tempnology, LLC,* 139 S. Ct. 1652, 67 Bankr. Ct. Dec. (CRR) 51 (2019). However, *Tempnology* deals exclusively with rejection of executory contracts and the post-rejection rights of the counter-parties to such contracts. Importantly, the case does not impact 11 U.S.C. § 523(a)(8) or the law governing nondischargeability of student loans. Moreover, the guaranty agreements at issue in the present case were expressly *not* rejected and were non-executory, completed contracts.

#### a. TERI's guaranty obligations to Defendants were never voided or rejected

Section 365(g) describes what rejection means, and as the Court in *Tempnology* reiterated, rejection "constitutes a breach of [an executory] contract[.]"

Upon filing its Ch. 11 petition, The Education Resources Institute (TERI) almost immediately filed motions to *"honor"* and *not* reject its guaranty obligations to Defendants—guarantees which were secured by specifically pledged accounts. *See e.g. The Educational Resources Institute, Inc., v. The National Collegiate Master Student Loan Trust I, et al.,* BAP No. MB 09-058, Judgment Dismissing Interlocutory Appeal (B.A.P. 1st Cir. Oct. 30, 2009) *available at* TERI Ch. 11., Dkt. No. 111 (Bankr. D.Mass. Nov. 5, 2009).

> On June 5, 2008, the Debtor filed a Motion for Order Pursuant to Sections 105, 352 and 363 of the Bankruptcy Code Authorizing the Debtor to *Honor* Certain of its Guaranty Obligations and Purchase Defaulted Loans Using Certain Pledged Accounts Established for the Benefit of the Trusts ("Trusts Motion"). The Trusts Motion identified seventeen such Trusts, each of which had been established to hold and

        securitize pools of student loans.  Upon securitization, *pledged* accounts were created from *pre-existing* so-called "pooled accounts" or other accounts *previously pledged* for the benefit of the original lenders. The pledged accounts were intended to *secure* the Debtor's guaranty obligations with respect to the securitized loans. . . . "each Trust has a valid, enforceable, *perfected security interest* in its respective Collateral . . . ."

*Id.* at pages 4-5 (emphasis added).

        At the beginning of the TERI Ch. 11, only those guaranty agreements pertaining to certain "Pipeline," "Make and Wait," or "Make and Hold" loans were rejected as "executory contracts."[1] But Plaintiff's student loans were not "Pipeline" loans. Each of Plaintiff's student loans had already been originated by Charter One Bank, N.A., guaranteed by TERI, and assigned to Defendants years earlier.[2]

        Defendants' loans, which were already securitized, were expressly distinguished from the Pipeline, "make-and-wait," and "make-and-hold" loans which were "earmarked for securitization" at the time of TERI's petition date, but not yet securitized.[3] Within the context of the TERI Ch.11, Defendants, "in good faith," settled and "compromise[d]" their claims and on how to enforce TERI's guaranty obligations.[4] This compromise allowed TERI, "one of the largest not-for-profit entities in the country,"[5] to emerge from Chapter 11, maintain its nonprofit charter, and "continue to maintain its college access program" and other "loan-related services."[6] Defendants were paid "in cash, in full, at the allowed amount of the secured claim" in order for TERI to "[h]onor" "its Guaranty Obligations,"

---

[1] *See* ECF No. 63 at pages 8-14 of 241, ECF No. 36 at page 101; TERI Ch. 11 ECF No. *306,* at *¶7*, ECF Nos. 520-522, 544, 753, 774.

[2] ECF No. 33-4, Luke Decl. ¶¶ 16, 24, 32.

[3] ECF No. 63 at 22:17-19, 23:6-9, 24:5-25, 25:1 of 241.

[4] ECF No. 63 at pp. 36-37 of 241.

[5] ECF No. 63 at 47-48, 91:13-24 of 241.

[6] ECF No. 63 at 38:3-10 of 241.

pursuant to the "terms of the applicable Guaranty Agreement and Deposit and Security Agreement."[7]

Plaintiff continues to mistakenly rely on an Order and Agreement in TERI's bankruptcy as support for his theory that TERI's guaranty obligations pertaining to the Plaintiff's loans were rejected. But that Order and Agreement applied *only* to "Pipeline Loans," originated on or after TERI's 2008 filing for Chapter 11 Reorganization,[8] and *not* to "Prior Loans,"[9] such as Plaintiff's. The "Purpose" of the Order and Agreement was to "minimize adverse consequences to qualified *applicants*" who were in the "Pipeline" at the time TERI filed its 2008 petition.[10] RBS agreed to "release" TERI of its Guaranty *only as to* "post-petition" "Pipeline Loans."[11] The Order and Agreement cited *expressly* does not apply to, and leaves in place, TERI's Guaranty of "Prior Loans" such as Plaintiff's, which were already originated, funded, guaranteed, pooled and assigned years prior, in 2006 and 2007 respectively.[12]

### b. TERI's guaranty obligations were not executory contracts

An "Executory Contract" is defined as a "contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy,* 57 Minn. L. Rev. 439, 446 (1973). *See also* U.S. Attorney General Opinion No. 59, Executory Contracts In Bankruptcy—Introduction, Threshold Issues, available at https://www.justice.gov/jm/civil-resource-manual-59-executory-contracts-bankruptcy (2019) (Only "contracts where performance

---

[7] ECF No. 63 at 57:23-24, 105-108, 110 of 241.

[8] ECF No. 46 at page 125.

[9] *Id.* at page 102.

[10] *Id.* at page 103.

[11] *Id.* at pages 103-104, 205.

[12] *Id.* at page 106.

remains due on both sides are executory." . . . "Contracts in which one party has no postpetition obligation or no obligation other than the payment of money are not executory." . . . "A contract substantially performed is not executory." (citations omitted.)).

Here, 11 U.S.C. § 523(a)(8)(A)(i) requires only that the student loan is "made under any program funded in whole or in part by a" "nonprofit institution." Defendants have shown that both of Plaintiff's loans were "made"—with the verb "made" being in the past tense—"under [a] program funded in whole or in part by a" "nonprofit institution" —with the verb "funded" also being in the past tense. Having guaranteed Plaintiff's student loans at the time each loan was funded, TERI's obligation to guaranty the Plaintiff's student loans was substantially performed well before TERI filed bankruptcy, and so its obligation is not executory.

**3. Even if TERI's Guaranty Obligations were Executory Contracts (which they were not) and even if TERI's Ch. 11 reorganization is construed as a rejection of those Executory Contracts (which it is not), Tempnology Supports This Court's Conclusion that the Subject Loans Are Nondischargeable**

Plaintiff is not a party to the TERI guaranty agreements. Thus, to the extent there was a breach of any obligations under the TERI guaranty agreements, *Tempnology* teaches that Defendants, and only Defendants (not TERI and certainly not Plaintiff), had the option to elect remedies. As such, the holding of *Tempnology* actually *supports* Defendants' right to reaffirm and rely on the guaranty obligations expressed by a non-profit institution and, consequently, this Court's ruling granting summary judgment in Defendants' favor. (Dkt. Nos. 70-71.). Moreover, just like Mission Product Holdings, Inc. had the right to continue its rights under its license in *Tempnology*—continuing to use the trademarks on the goods it was producing pursuant to the licensed intellectual property—Defendants here would not lose the nonprofit-funded character of its loans, *even if* the guaranty agreements were later rejected, which they were not.

## CONCLUSION

For the foregoing reasons, Plaintiff's Notice of Supplemental Authority should be stricken or ignored.

Date: July 24, 2019          SESSIONS FISHMAN NATHAN & ISRAEL, L.L.P.

*/s/James K. Schultz*
James K. Schultz, Esq.
Attorney for Defendants
National Collegiate Student Loan Trust 2006-1,
National Collegiate Student Loan Trust 2006-4,
National Collegiate Student Loan Trust 2007-4
(erroneously sued as National Collegiate Student Loan Trust 2007-1)