K. JOHN SHAFFER (Cal. Bar No. 153729)
RAZMIG IZAKELIAN (Cal. Bar. No. 292137)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: johnshaffer@quinnemanuel.com
razmigizakelian@quinnemanuel.com

*Attorneys for the National Consumer Bankruptcy Rights Center*

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JOHN M. MATA<br><br>Debtor.<br><br>JOHN MATA<br><br>Plaintiff<br><br>v.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-4<br><br>Defendants | Case No. 16-BK-30625-MH<br>Chapter 7<br><br>Adv. Pro. No. 6:18-ap-01089-MH<br><br>**REPLY IN SUPPORT OF MOTION TO UNSEAL COURT RECORDS**<br><br>Date:    December 18, 2019<br>Time:    2:00 p.m.<br>Place:    3420 Twelfth Street<br>           Courtroom 303<br>           Riverside, CA 92501<br>Judge:  Hon. Mark Houle |

# **TABLE OF CONTENTS**

**Page**

REPLY ............................................................................................................................................3

      A.     Defendants Overstate The Breadth Of Section 107(b)(1)'s Limited
             Exception To Public Disclosure Of Judicial Records. ...............................................3

      B.     Defendants Have Failed To Meet Their Heavy Burden Of Proving That The
             Sealed Documents Are Protected Under Section 107(b). ..........................................8

      C.     Defendants Cannot Use Sealing As A Shield And A Sword. ..................................10

CONCLUSION ............................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Alterra Healthcare Corp.*,
  353 B.R. 66 (Bankr. D. Del. 2006) .................................................................................. 3

*In re Anthracite Capital, Inc.*,
  492 B.R. 162 (Bankr. S.D.N.Y. 2013) .......................................................................... 3, 4

*In re Barney's, Inc.*,
  201 B.R. 703 (Bankr. S.D.N.Y. 1996) .......................................................................... 3, 7

*In re Borders*,
  462 B.R. 42 (Bankr. S.D.N.Y. 2011) ................................................................................ 3

*Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*,
  710 F.2d 1165 (6th Cir. 1983) .......................................................................................... 5

*In re Cont'l Ill. Sec. Litig.*,
  732 F.2d 1302 (7th Cir. 1984) .......................................................................................... 5

*Courthouse News Service v. Planet*,
  750 F.3d 776 (9th Cir. 2014) ............................................................................................ 5

*In re Crawford*,
  194 F.3d 954 (9th Cir. 1999) ............................................................................... 2, 3, 4, 5

*In re Ditech Holding Corp.*,
  2019 WL 3294684 at *8 (Bankr. S.D.N.Y. July 19, 2019) ............................................... 3

*In re Farmland Indus, Inc.*,
  290 B.R. 364 (Bankr. W.D. Mo. 2003) ............................................................................ 7

*In re Frontier Group, LLC*,
  256 B.R. 771 (Bankr. E.D. Tenn. 2000) ........................................................................... 7

*Geltzer v. Andersen Worldwide, S.C.*,
  2007 WL 273526 at *2 (S.D.N.Y. Jan. 30, 2007) ......................................................... 4, 9

*In re Gibbs*,
  2017 WL 6506324 at *1 (Bankr. D. Haw. 2017) ..................................................... 1, 3, 6

*Hagestad v. Tragesser*,
  49 F.3d 1430 (9th Cir. 1995) ............................................................................................ 2

*In re Itel Corp.*,
  17 B.R. 942 (B.A.P. 9th Cir. 1982) .................................................................................. 6

*In re Kahn*,
  2013 WL 6645436 at *3 (B.A.P. 9th Cir. 2013) ............................................................... 4

*In re Kilroy*,
  2017 WL 4325558 (Bankr. C.D. Cal. Sept. 27, 2017), *tentative ruling adopted*, 2017
  WL 4417462 (Bankr. C.D. Cal. Sept. 27, 2017) ............................................................... 4

*Koch v. Greenberg*,
  2012 WL 1449186 (S.D.N.Y. 2012) ................................................................................ 9

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) ............................................................................................ 4

*In re Motors Liquidation Co.*,
   561 B.R. 36 (Bankr. S.D.N.Y. 2016) ............................................................................. 3

*NBC Subsidiary (KNBC–TV), Inc. v. Superior Court*,
   20 Cal. 4th 1178 (1999) ................................................................................................. 5

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
   684 F.3d 286 (2d Cir. 2011) .......................................................................................... 5

*Nixon v. Warner Comm., Inc.*,
   435 U.S. 589 (1978) ................................................................................................... 2, 4

*In re Northstar Energy, Inc.*,
   315 B.R. 425 (Bankr. E.D. Tex. 2004) .......................................................................... 7

*In re Orion Pictures Corp.*,
   21 F.3d 24 (2d Cir. 1994) ................................................................................ 5, 6, 7, 10

*Page v. National Collegiate Student Loan Trust 2006-1*,
   Adv. Pro. 17-04062, Dkt. Nos. 63 and 69 (Bankr. E.D. Mo.) ..................................... 11

*Pintos v. Pacific Creditors Ass'n*,
   605 F.3d 665 (9th Cir. 2010 .......................................................................................... 2

*Publicker Indus., Inc. v. Cohen*,
   733 F.2d 1059 (3d Cir. 1984) ........................................................................................ 5

*In re Roman Catholic Archbishop of Portland*,
   661 F.3d 417 (9th Cir. 2011) ................................................................................. 2, 4, 6

*In re Thomas*,
   583 B.R. 385 (Bankr. E.D. Ky. 2018) ........................................................................... 3

*U.S. v. Security Indus. Bank*,
   459 U.S. 70 (1982) ........................................................................................................ 4

*In re Waring*,
   406 B.R. 763 (Bankr. N.D. Ohio 2009) ........................................................................ 3

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*,
   529 F. Supp. 866 (E.D. Pa. 1981) ................................................................................. 9

**Statutes**

11 U.S. Code § 107 ........................................................................................... 2, 4, 5, 6

11 U.S. Code § 107(a) ...................................................................................... 2, 3, 4, 6

11 U.S. Code § 107(b) .......................................................................................... 6, 7, 10

11 U.S. Code § 107(b)(1) ............................................................................... 1, 3, 4, 5, 6

11 U.S. Code § 107(b)(2) ............................................................................................... 6

**Miscellaneous Authorities**

*Trump Education Office to Resign and Call for Mass Student-Loan Forgiveness*, Wall
   Street Journal, Oct. 24, 2019 ........................................................................................ 2

*Student Loans A Lot Like The Subprime Mortgage Debacle, Watchdog Says*, National
   Public Radio, Dec. 9, 2019 ............................................................................................ 2

The National Consumer Bankruptcy Rights Center ("NCBRC") hereby replies in support of its motion to unseal the Sealed Documents.[1]

Defendants have not come close to meeting their heavy burden of proving that the information in the Sealed Documents is "so critical" to their operations "that its disclosure will unfairly benefit [Defendants'] competitors." *In re Gibbs*, 2017 WL 6506324 at *1 (Bankr. D. Haw. 2017) (quotations omitted). The Sealed Documents are more than fifteen years old, and they involve agreements with an alleged nonprofit that has long-since liquidated. No new loans have been guaranteed by TERI in over a decade. It is simply not credible that business plans and underwriting standards developed long before the financial crisis and TERI's demise remain "critical" to Defendants' competitive standing today.

The only evidence Defendants have submitted in support of denying public access to the Sealed Documents is the Declaration of Bradley Luke, an employee of Defendants' post-default subservicer. Mr. Luke does not purport to be involved in any aspect of Defendants' business other than suing and collecting from debtors. There is no mention in his Declaration of negotiating, developing, or implementing Defendants' business plans or underwriting standards. Nonetheless, without foundation, Mr. Luke summarily contends that disclosure of this stale, fifteen-year old information somehow "*could* negatively impact Defendants' competitive standing in the student loan industry." (at ¶ 16, emphasis added). Even if proven, however, Mr. Luke's *ipse dixit* assertion is insufficient to justify sealing under Bankruptcy Code section 107(b). Speculation as to the mere possibility of competitive harm does not warrant departure from section 107(a)'s general rule that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."

Defendants criticize NCBRC for citing cases discussing the First Amendment and common law principles of the public right to access. However, those were the only cases Defendants cited

---

[1] Capitalized terms not defined in this Reply are as defined in NCBRC's Memorandum Of Points And Authorities In Support Of Motion To Unseal Court Records [Dkt. No. 85-1].

in their Seal Motion, which did not even mention Bankruptcy Code section 107.  *See* Dkt. No. 36.[2]  Moreover, Defendants ignore the Ninth Circuit's holding that "Section 107(a) is rooted in the right of public access to judicial proceedings, a principle long-recognized in the common law and buttressed by the First Amendment."  *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999).  Thus, although section 107 has statutorily preempted the common law right to public access, *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 430 (9th Cir. 2011), it is not a wholesale invitation for parties to demand that judicial records be sealed based upon naked assertions of the possibility of harm.

NCBRC vehemently disagrees with Defendants' assertion that "the public at large has no interest in the confidential documents" and in whether Defendants' loans are nondischargeable.  Opp. at 3.  The student loan crisis is just that – a crisis – and one that has become of national importance.  *See, e.g.*, *Trump Education Office to Resign and Call for Mass Student-Loan Forgiveness*, Wall Street Journal, Oct. 24, 2019[3]; *Student Loans A Lot Like The Subprime Mortgage Debacle, Watchdog Says*, National Public Radio, Dec. 9, 2019.[4]  The public has a right to know the facts underlying the nondischargeability of Defendants' and other TERI-guaranteed student loans (which exceeded $20 billion in principal) so that it can be better informed about this crisis and possible legislative, regulatory, or judicial solutions to it.

Finally, Defendants' assertion that destitute debtors can effectively litigate issues relating to the dischargeability of Defendants' loans simply by taking discovery is as impractical as it is cynical.  More than 15% of the bankruptcy filings in this District are *pro se*,[5] and many more debtors who can (barely) afford an attorney to file their petitions cannot afford to also pay for discharge litigation,

---

[2] Citing *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 598 (1978); *Hagestad v. Tragesser*, 49 F.3d 1430, 1433-34 (9th Cir. 1995); *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677-78 (9th Cir. 2010).

[3] https://www.wsj.com/articles/trump-education-official-to-resign-and-call-for-mass-student-loan-forgiveness-11571909400

[4] https://www.npr.org/2019/12/09/785527874/student-loans-a-lot-like-the-subprime-mortgage-debacle-watchdog-says

[5] *See* https://ecf.cacb.uscourts.gov/ecfstatsdash-new.html (5,601 of 36,257 bankruptcy filings in the Central District of California to date this year have been *pro se*).

particularly against experienced and well-financed parties such as Defendants. Thus, it is essential that NCBRC and other nonprofit assistance programs have access to the Sealed Documents underlying these cases, so that they may assist debtors throughout the country with respect to common issues that may arise.

**REPLY**

**A.   Defendants Overstate The Breadth Of Section 107(b)(1)'s Limited Exception To Public Disclosure Of Judicial Records.**

Defendants assert that the Sealed Documents can be sealed because disclosure "***could*** negatively impact Defendants' competitive standing in the student loan industry." Opp. at 13. Mere conjecture of possible harm, however, is insufficient to justify sealing. Rather, section 107(b)(1) only protects information that is "so ***critical to the operations of the entity*** seeking the protective order ***that its disclosure will unfairly benefit the entity's competitors***." *Gibbs*, 2017 WL 6506324 at *1 (emphasis added, quotations omitted).[6] In other words, disclosure "must ***reasonably be expected*** to cause commercial injury." *In re Thomas*, 583 B.R. at 390 (emphasis added).[7] The burden of proof is on the party asserting confidentiality, and it is a "heavy" one. *See In re Ditech Holding Corp.*, 2019 WL 3294684 at *8 (Bankr. S.D.N.Y. July 19, 2019) (collecting cases); *see also In re Motors Liquidation Co.*, 561 B.R. at 42 ("The burden of proof is heavy, requiring an extraordinary circumstance or compelling need.").

The ample precedent limiting the scope of section 107(b)(1) and placing the burden on the moving party has not developed by accident. As the Ninth Circuit has made clear, "Section 107(a) is rooted in the right of public access to judicial proceedings, a principle long-recognized in the common law and buttressed by the First Amendment." *Crawford*, 194 F.3d at 960; *see also In re Anthracite Capital, Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) (explaining that "public

---

[6] *See also, e.g. In re Thomas*, 583 B.R. 385, 390 (Bankr. E.D. Ky. 2018); *In re Motors Liquidation Co.*, 561 B.R. 36, 43 (Bankr. S.D.N.Y. 2016); *In re Borders*, 462 B.R. 42, 47-48 (Bankr. S.D.N.Y. 2011); *In re Waring*, 406 B.R. 763, 768-69 (Bankr. N.D. Ohio 2009); *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75-76 (Bankr. D. Del. 2006); *In re Barney's, Inc.*, 201 B.R. 703, 708-09 (Bankr. S.D.N.Y. 1996).

[7] Quoting *Waring*, 406 B.R. at 768-69; *see also Alterra Healthcare*, 353 B.R. at 75.

monitoring [of court dockets] is an essential feature of democratic control"); *Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526 at *2 (S.D.N.Y. Jan. 30, 2007) (explaining that there is a "presumption of access" to judicial proceedings based on "the need for federal courts … to have a measure of accountability and for the public to have confidence in the administration of justice" (internal quotations omitted)). Thus, while section 107 "displaces the common law right of access," *Roman Catholic Archbishop*, 661 F.3d at 430, Congress legislated in the context of a long history favoring the public right to access. *In re Kahn*, 2013 WL 6645436 at *3 (B.A.P. 9th Cir. 2013) (citing both *Roman Catholic Archbishop* and *Crawford* and explaining that section 107(a) is "rooted in the right of public access to judicial proceedings"); *In re Kilroy*, 2017 WL 4325558, at *2 (Bankr. C.D. Cal. Sept. 27, 2017), *tentative ruling adopted*, 2017 WL 4417462 (Bankr. C.D. Cal. Sept. 27, 2017) (discussing in detail *Roman Catholic Archbishop*, and holding that section 107(a) "statutorily recognize[s]" the "general right of public access to bankruptcy court records"). Accordingly, exceptions to section 107's open records requirement are construed narrowly, *see Kahn*, 2013 WL 6645436 at *3,[8] and courts only exercise this "extraordinary measure … under rare circumstances." *Anthracite Capital*, 492 B.R. at 171.

Moreover, while Congress could through legislation alter the common law right to access, it could not impair the public's constitutional First Amendment right. Thus, section 107(b)(1) should be interpreted and applied narrowly, so as to avoid constitutional questions. *See U.S. v. Security Indus. Bank*, 459 U.S. 70, 78 (1982) (interpreting Bankruptcy Code lien avoidance section so as to avoid a Fifth Amendment takings issue, based on the "cardinal principle that this Court will first

---

[8] *Roman Catholic Archbishop* does not cite *Crawford*, or its holding that:

> Section 107(a) is rooted in the right of public access to judicial proceedings, a principle long-recognized in the common law and buttressed by the First Amendment. *See Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597-98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (recognizing common law right of access to judicial documents) … . This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system.

194 F.3d at 960. Generally, a three-judge panel of the Ninth Circuit (which *Roman Catholic Archbishop* was) may not overrule a prior decision of that court. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided" (quotations omitted)). Defendants argue that the Ninth Circuit has not ruled that the First Amendment applies to civil dockets. Opp. at 10. Yet, the Ninth Circuit has made clear that First Amendment access to civil records is "an important First Amendment question," and that "*the federal courts of appeals have widely agreed that it extends to civil proceedings and associated records and documents*." *Courthouse News Service v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) (emphasis added).[9] And, the Ninth Circuit has specifically recognized First Amendment principles underlying section 107. *See Crawford*, 194 F.3d at 960.

Finally, Defendants ignore the fact that "on a purely practical level, the sealing of court records inflicts a costly nuisance on the judicial system." *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir. 1994). Courts and litigants must redact pleadings and separately file and serve them on parties. If the sealed documents are to be testified or argued about in court, the courtroom may have to be cleared. Thus, sealing should be the exception, not the norm, and a party should not be allowed to seal documents based simply upon a thin claim of possible harm.

The cases Defendants rely upon do not compel any different result, and indeed show why the Sealed Documents should be available to the public. Notably, in every case Defendants cite in which sealing under section 107(b)(1) was actually litigated, the courts required findings such as "*critical to the operations of the entity*," "*direct and adverse impairment*," "*serious and detrimental impact*," or would "*expose the heart and soul of the commercial operations*." Moreover, in every case that permitted sealing, the information was current and involved material, ongoing business relationships, rather than fifteen-year-old agreements with a liquidated guarantor.

---

[9] Citing *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 305 (2d Cir. 2011) (finding a right of access to administrative civil infraction hearings); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984) ("We hold that the First Amendment does secure a right of access to civil proceedings."); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (finding a right of access to litigation committee reports in shareholder derivative suits); *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983) (holding that the First Amendment limits judicial discretion to seal documents in a civil case); also citing *NBC Subsidiary (KNBC–TV), Inc. v. Superior Court*, 20 Cal. 4th 1178 (1999).

In *Gibbs*, the court denied a motion to seal a settlement agreement under section 107(b)(1). The court rejected the settling party's ("BANA") argument that it had "a commercial interest in keeping the terms of the settlement—specifically sensitive financial information such as the settlement payment—confidential," and that "[i]f made public, the terms of the settlement agreement would cause an unfair advantage to BANA's competitors in regard to BANA's settlement strategy and its assessment and scope of its legal risks, especially in light of the large number of matters involving nearly identical allegations pending in Hawaii ...." 2017 WL 6506324 at *1 (internal quotations and footnotes omitted). The court held that BANA's assertions were insufficient because the information to be sealed "must be so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors." *Id.* (internal quotations and footnotes omitted). The court also was concerned that, as with Defendants, BANA's real motivation appeared to be in protecting its litigation interests, rather than any real competitive concerns. *Id.* at **1-2.

Notably, *Gibbs* was decided after the Ninth Circuit's *Roman Catholic Archbishop* decision, and thus recognized that section 107 generally displaced the common law standards for sealing. *Id.* at *1 n.3. Nonetheless, the court concluded that the proper interpretation of section 107(b) was a narrow one, consistent with judicial precedent throughout the country. *See supra* n.6.[10]

In *Itel*, the Ninth Circuit BAP reversed the bankruptcy court's order sealing a list of the debtor's debenture holders. *In re Itel Corp.*, 17 B.R. 942 (B.A.P. 9th Cir. 1982). The BAP held that while it was "conceivable" that the list could provide competitors with an unfair advantage, this was not sufficient to justify sealing. *Id.* at 944.

In *Orion Pictures*, the Second Circuit held that "[t]he policy of open inspection, codified generally in § 107(a) of the Bankruptcy Code, evidences congress's strong desire to preserve the public's right of access to judicial records in a bankruptcy proceeding." 21 F.3d at 26. The court nonetheless affirmed the sealing of documents relating to an ongoing business relationship based on factual findings that disclosure "***very likely***" would result in "***a direct and adverse impairment*** to

---

[10] *Roman Catholic Archbishop* addressed only section 107(b)(2) (protection "with respect to scandalous or defamatory matter") and did not address the substance of section 107(b)(1).

-6-    Case No. 6:18-ap-01089-MH
REPLY IN SUPPORT OF MOTION TO UNSEAL COURT RECORDS

Orion's ability to negotiate favorable promotion agreements * * *, thereby giving Orion's competitors an unfair advantage." *Id.* at 28 (emphasis added).

In *Barneys*, the court denied the debtor's motion to seal a proposal to invest in company. 201 B.R. at 703. Following *Orion*, the court recognized the strong policy in favor of public access, and that "[i]t is a ***highly unusual and extraordinary remedy*** for the court to seal records in any case because of the generally recognized rule of law that the public has a right to know." *Id.* at 707 (emphasis added). Thus, "in enacting § 107(b), Congress did not intend that sealed pleadings be the rule in bankruptcy cases." *Id.* Rather, in order to seal under section 107, the information must be "***so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors***." *Id.* at 709 (emphasis added).

In *Farmland*, the court permitted the debtor to seal certain information in its DIP financial agreement, specifically deadlines for selling certain assets and liquidity requirements. *In re Farmland Indus, Inc.*, 290 B.R. 364 (Bankr. W.D. Mo. 2003). The court held that disclosure "would ***most likely have a serious and detrimental impact*** on the prices for which those assets could be sold." *Id.* at 369 (emphasis added).

In *Northstar Energy*, the court allowed the debtor to seal a list of investors in the debtor's oil and gas business, but only because the list was "***crucial*** to [the debtor's] business plan," which would be "***severely jeopardized*** by the unrestricted publication of its investor list which ***would likely be utilized by competing promoters*** to the detriment of the Debtor and those creditors whose claims the Debtor is attempting to address in this proceeding." *In re Northstar Energy, Inc.*, 315 B.R. 425, 430 (Bankr. E.D. Tex. 2004) (emphasis added). "***Such disclosure would expose the heart and soul of the commercial operations of this Debtor***." *Id.* at 430-31 (emphasis added).

Finally, while in *Frontier Group* the court allowed the debtor to seal a list of physicians placed in temporary jobs by debtor placement agency, the court noted that the request was unopposed. *In re Frontier Group, LLC*, 256 B.R. 771, 773 n.3 (Bankr. E.D. Tenn. 2000) (noting the "the non-adversarial nature of the Motion").

### B. Defendants Have Failed To Meet Their Heavy Burden Of Proving That The Sealed Documents Are Protected Under Section 107(b).

The only evidence Defendants have presented is the Declaration of Bradley Luke, the Director of Operations for Defendants' post-default subservicer and custodian of records. Mr. Luke asserts that the Sealed Documents:

> contain exhibits outlining student loan program guidelines, servicer data requirements, and guaranty fee amounts. This information consists of descriptions of pricing systems, underwriting guidelines, servicing guidelines, borrower document templates, and business plans which are confidential and proprietary in nature, and not generally known in the student loan industry.

Luke Declaration at ¶ 16. According to Mr. Luke, public disclosure of this information "could negatively impact Defendants' competitive standing in the student loan industry," *id.*, and "would be harmful to the property interests of Defendants, the program lenders that are not parties to this case, other parties to the securitization process, and the owners of debt instruments or other securities who have invested in Defendants." *Id.* ¶ 18.

There are multiple problems with Mr. Luke's Declaration. *First*, he testifies as to the wrong standard. As discussed above, it is not sufficient that disclosure "*could* negatively impact … competitive standing." Rather, as noted, the information must be "***so critical***" that its disclosure "***will unfairly benefit the entity's competitors***," and must be "***reasonably be expected to cause commercial injury***." Nor does Mr. Luke explain what "property interests" might be harmed (¶ 18), or the significance of such property interests. Thus, Mr. Luke's speculation as to possible harm does not satisfy Defendants' burden of proof, and indeed is far less than the amount and certainty of harm required in even the cases that Defendants have cited (*e.g.*, that the information is "***critical to the operations***," or that disclosure would result in "***direct and adverse impairment***," a "***serious and detrimental impact***," or would "***expose the heart and soul of the commercial operations***").

*Second*, even if Mr. Luke purported to testify as to the correct standard, his testimony would lack foundation. Mr. Luke works for a post-default subservicer of the Debtor's loan. There is no evidence that either he or his company had any involvement in the origination or guaranty of Debtor's loan, or in the negotiation, drafting, or execution of the Sealed Documents. Indeed,

Mr. Luke was still in high school when the Sealed Documents were executed.[11]  Nor is there any indication that he has any experience in in the origination or guaranty of loans generally, or in the development of programs and business plans relating to the same.  Mr. Luke does not claim to have discussed these issues with Defendants, "program lenders," or any other parties, and such discussions would be hearsay in any event.  Thus, Mr. Luke has articulated no basis for knowing whether disclosure of the information in the Sealed Documents "will unfairly benefit" competitors or ""reasonably be expected to cause commercial injury."

*Third*, Mr. Luke's opinions are bare conclusory assertions.  Although Mr. Luke's declaration contains multiple paragraphs about his company's functions and prior efforts to keep the Sealed Documents confidential, it says very little about the purported "commercial information" or why it is necessary to keep that information sealed.  Indeed, his declaration boils down to just a couple of *ipse dixit* sentences in paragraphs 16 and 18.  Even if the information in the Sealed Documents had some competitive value at some point in the past, Mr. Luke fails to explain how it does so today – fifteen years after the Sealed Documents were executed, and long after the guarantor (TERI) liquidated.

Defendants assert (without support) in their Opposition that "a lapse of time, without more, does nothing to undermine the sensitive nature of this confidential business information."  Opp. at 13. But Mr. Luke does not even say this in his Declaration.  Indeed, he says nothing at all about the fact that the Sealed Documents are fifteen-year old agreements with a defunct guarantor.  Whatever "underwriting standards," "pricing systems," or "business plans" that existed then cannot possibly be relevant now, and certainly cannot rise to the level of justifying protection under section 107(b)(1). *See Koch v. Greenberg,* 2012 WL 1449186, at *4 (S.D.N.Y. 2012) (fact that information was 10 years old "can undermine the party's (or non-party's) claim that disclosure will create a competitive disadvantage"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd*., 529 F. Supp. 866, 906 (E.D. Pa. 1981); *Geltzer*, 2007 WL 273526, at *3 (it was "remarkable and untenable" to assert that a settlement amount is confidential because defendants were "no longer engage[d] in …

---

[11]  *See* https://www.linkedin.com/in/bradley-luke-a9938319 (noting that Mr. Luke entered college in 2005).

business operation[s]" and their "business now consist[ed] primarily of settling lawsuits brought against it").

### C.  Defendants Cannot Use Sealing As A Shield And A Sword.

As detailed in NCBRC's opening memorandum (at 5-6, 11), Defendants routinely rely upon the Sealed Documents for their own benefit in litigation. Indeed, they have done so in this case, and have selectively quoted from the documents in public filings. Yet, they refuse to make those documents public, even though they would be highly relevant to any debtor or prospective debtor who may want to discharge his or her student loan obligations (or simply determine with their counsel whether they could be discharged). Given that TERI guaranteed over $20 billion in student loans, that is a lot of debtors.

Defendants' contention that those debtors could obtain the documents through discovery misses the point. Many prospective debtors simply forgo filing on the (perhaps mistaken) belief that their student loans cannot be discharged. Thus, they never get to discovery. Moreover, as detailed above, many debtors are *pro se* or otherwise have no resources to undertake discovery. Thus, the denial of public access to the Sealed Documents effectively prevents them from litigating the dischargeability of their loans.

Citing *Orion*, Defendants contend that their own disclosures from the Sealed Documents do not prejudice their ability to use section 107(b). Opp. at 14. But the disclosure at issue in *Orion* was limited in nature, and done only in response to efforts to unseal the documents. Here, by contrast, Defendants have been relying upon the sealed documents in litigation throughout the United States for their own benefit, sometimes with success, and sometimes not. Although courts generally have obliged Defendants' request to seal, this is because no one has objected. As in this case, individual debtors generally do not have an incentive to object, and indeed are incentivized to agree to sealing in order to facilitate the documents' production. *See* Dkt No. 42 (declaration of Debtor's counsel, stating that he emailed Defendants' counsel, stating the information was already publicly available, but that Defendants' counsel refused to withdraw the confidentiality designation, and that "[r]ather than waste the parties or Court's time litigating this issue," Debtor sought to file a redacted version of his opposition to summary judgment). That said, at least one court *sua sponte*

1  has said "no" to Defendants' sealing request, thus resulting in a prompt settlement of the discharge
2  litigation on the merits. *See* Izakelian Decl., Exs 6-7 (*Page v. National Collegiate Student Loan*
3  *Trust 2006-1*, Adv. Pro. 17-04062, Dkt. Nos. 63 and 69 (Bankr. E.D. Mo.)).

4      NCBRC respectfully submits that if Defendants wish to use the Sealed Documents against
5  debtors in case-after-case, then it is appropriate that those documents be available to the public
6  generally, so that debtors, prospective debtors, and the public at large may understand the merits of
7  Defendants' position, and may assess its impacts on both individual cases and on the student loan
8  crisis as a whole.

## CONCLUSION

10     NCBRC respectfully requests that this Court unseal the Guaranty Agreement and other
11 Sealed Documents (Dkt. Nos. 41, 48, and 64).

Dated: December 11, 2019

_____

K. John Shaffer (Cal. Bar No. 153729)
Razmig Izakelian (Cal. Bar. No. 292137)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: johnshaffer@quinnemanuel.com
       razmigizakelian@quinnemanuel.com

*Attorneys for the National Consumer Bankruptcy Rights Center*