M. Erik Clark, #188693
BOROWITZ & CLARK, LLP
100 N. Barranca Street, Suite 250
West Covina, CA 91791
Tel: (626) 332-8600
Fax: (626) 332-8644

Austin C. Smith
3 Mitchell Place
New York, NY 10017
917-992-2121

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br>JOHN MARTIN MATA<br>LIVIER MATA | Case No. 6:13-BK-30625-MH<br>Chapter 7 |
| JOHN M. MATA,<br>    Plaintiff,<br>vs.<br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1; et. al.,<br>    Defendants. | Adversary No. 6:18-AP-01089-MH<br><br>**PLAINTIFF'S SUPPLEMENTAL AUTHORITY** |

Plaintiff respectfully submits the following supplemental authority that bears upon the issues under consideration by this Court. In *Medina v. National Collegiate Student Loan Trust 2006-3,* currently pending in the Southern District of California, the Mata Defendants' sister trust moved for summary judgment on the same grounds as it moved in this action and offered into evidence substantially the same documents. The *Medina* Court requested supplemental evidence on whether, *inter alia*, TERI was sufficiently capitalized to honor the guarantees, and

whether the guarantees were in fact attached to Medina's loan. *See* Exhibit A. In the supplement, the NCSLT 2006-3 stated it had recently come into possession of new evidence, was no longer arguing that the guarantee was constructive funding and insisted that TERI had in fact *directly* funded the debtor's loan— as evidenced by the fact that TERI's name was on the loan check. Ex. B at 4 ("The disbursement check for Plaintiff's Loan was written out of a TERI bank account.").[1] The NCSLT seemed unaware that one cannot be both the funder and the guarantor of the same obligation. *See 150 Broadway N.Y. Assocs., L.P. v. Bodner*, 14 A.D.3d 1 (N.Y. App. Div. 2004) (rejecting interpretation "that would result in making a person or entity the guarantor of his, her or its own debt."); *PNC Capital v. Mech. Parking Sys., Inc.*, 283 A.D.2d 268 (N.Y. App. Div. 2001)("illogical [that] company would guaranty its own indebtedness, rendering entire Guaranty meaningless."). The supplement also contains TERI's audited financials from 2000-2002, which call into question the facts underpinning a host of the authorities Defendant relies on in this action.

In its 2019 Tentative, this Court stated that there were likely no material facts in genuine dispute: TERI had guaranteed the Mata Loan, and that it would not matter if the TERI guarantee was subsequently voided. The Medina filing raises at least two concerns. First, it must be asked in all sincerity whether anyone at

---

[1] As will be noted, TERI's name appears on the Mata checks, and yet Defendants never argued that meant TERI actually funded the loans in this case.

NCSLT has *actual* knowledge of the TERI guarantees. It should be recalled that Bradley Luke testified in this case that the basis for his testimony was derived either from a "person with personal knowledge" or "events described within the business record." ECF. No. 33-4 at ¶ 9. Those are two very different things. The former is a recognized method of acquiring personal knowledge, but the latter is simply another way of describing hearsay. *Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir. 2000)(stating court agreed with appellant's principle that "statements made by third parties in an otherwise admissible business record cannot properly be admitted for their truth unless they can be shown independently to fall within a recognized hearsay exception."). Second, TERI's 2000-2002 audited financials describe how another major student loan company, Access Group, terminated its guarantee agreement with TERI in 2000, and retroactively stripped $340 million in guarantees from loans made in 1998-1999. Exhibit C at 13, 15. Access Loans have been at the center of the many of the Defendants' authorities, *In re Jean-Baptiste*, 584 B.R. 574, 584 (Bankr. E.D.N.Y. 2018) ("loans associated with the Access Loan Program" are generally found non-dischargeable), including litigation from after 2005 where the Access Group has continued to argue that its 1998-1999 portfolio of loans were fully guaranteed by TERI. TERI's disclosure that the Access Group terminated its guarantee agreement in 2000 raises valid concerns about the integrity of many of those decisions, such as *Johnson*. "To obtain the Access Loans, Debtor completed

an Access Group Loan Program application for each loan extended between 1998 and 2000. Each application included a provision that Debtor would pay a guarantee fee and a supplemental guarantee fee to TERI as an inducement to NCB to make the loan." *In re Johnson*, No. 2008 WL 5120913, at *1 (Bankr. M.D. Pa. Dec. 3, 2008).[2] In that passage, the *Johnson* court is describing the very same sort of language as found in Mata's loan documents, language which the Defendants insist prove the loans were guaranteed by TERI, and language which would have remained in the loan documents despite TERI's retroactive stripping of the guarantees.

_____
M. Erik Clark, #188693
BOROWITZ & CLARK, LLP

---

[2] It is difficult to trace the procedural history in *Johnson* without concluding that the Access Group's attorneys were either actively misleading the court or else recklessly offering into evidence documents whose authenticity and veracity they had not bothered to examine. *See also Berg v. Access Grp., Inc.*, 2015 WL 246338, at *8–9 (E.D. Pa. 2015)(allowing amended complaint where Plaintiff alleged in a verified statement that she had obtained sworn testimony from an Access Group executive that the TERI guarantee was never consummated and was merely a pricing enhancement). Plaintiff does not believe the Defendants in this case are intentionally misleading anyone. But Plaintiff does contend the Defendants simply do not know all that happened over the course of the FMC/TERI debacle and are only parroting what it says in the documents.

# Exhibit A

Case 6:18-ap-01089-MH    Doc 100    Filed 05/07/20    Entered 05/07/20 11:27:18    Desc
Main Document    Page 5 of 20

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

# Minute Order

### *Hearing Information:*

**ADV:** 19-90065

**KRYSTAL ANNE MEDINA VS NATIONAL COLLEGIATE STUDENT LOAN TRUST 2**

| | |
|---|---|
| **Debtor:** | CESAR & KRYSTAL ANNE MEDINA |
| **Case Number:** | 17-05276-LT7    **Chapter:** 7 |
| **Date / Time / Room:** | WEDNESDAY, MARCH 11, 2020 10:00 AM    DEPARTMENT 3 |
| **Bankruptcy Judge:** | LAURA S. TAYLOR |
| **Courtroom Clerk:** | RUSSELL PALUSO |
| **Reporter / ECR:** | JENNIFER GIBSON |

### *Matters:*

1) PRE-TRIAL STATUS CONFERENCE (fr 12/4/19)

2) MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3

### *Appearances:*

CHRISTOPHER R. BUSH, ATTORNEY FOR KRYSTAL ANNE MEDINA
AUSTIN SMITH, CO-ATTORNEY FOR KRYSTAL ANNE MEDINA
RICHARD SOLOMON, ATTORNEY FOR NATIONAL COLLEGIATE STUDENT LOANS TRUST 2006-3

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## Minute Order

(continue).. 17-05276-LT7    WEDNESDAY, MARCH 11, 2020 10:00 AM

### *Disposition:*

1) Continued to 6/3/20 at 10:00 a.m.

2) Matters will be under submission as set forth on the record.

Defendant to file additional evidence on nonprofit status and may file additional supportive memorandum (no more than 10 pages in length, including caption). Evidence maybe in form of appropriate request for judicial notice or business records or other declaration. Documents due by 4/8/20 as set forth on the record. Evidentiary objections, if any, or responses to the additional evidence and memorandum, (no more than 10 pages in length, including caption), are due by 4/22/20 as set forth on the record.

Defendant to file additional evidence on guarantee as equivalent to funding of "Program" and may file additional supportive memorandum (no more than 10 pages in length, including caption). Evidence maybe in form of appropriate request for judicial notice or business records or other declaration. Documents due by 4/8/20 as set forth on the record. Evidentiary objections, if any, or responses to the additional evidence and memorandum, (no more than 10 pages in length, including caption), are due by 4/22/20 as set forth on the record.

# Exhibit B

1  SCOTT S. WELTMAN, ESQ.
   (State Bar No. 145215)
2  colcaecf@weltman.com
   **Weltman, Weinberg & Reis Co., L.P.A.**
3  965 Keynote Circle
   Brooklyn Heights, OH 44131
4  Telephone: (216) 685-1032
   Facsimile: (216) 363-4086
5  WWR# 040284515
   Attorney for Defendants,
6  National Collegiate Student Loan Trust 2006-3

7  UNITED STATES BANKRUPTCY COURT
   SOUTHERN DISTRICT OF CALIFORNIA (SAN DIEGO)
8

| | |
|---|---|
| In re<br><br>Cesar Medina and Krystal Anne Medina,<br><br>Debtors. | Bankruptcy Case No. 17-05276-LT<br>Chapter 7<br>Honorable Chief Judge Laura S. Taylor |
| Krystal Anne Medina,<br><br>Plaintiff.<br>vs.<br>National Collegiate Student Loan Trust 2006-3,<br><br>Defendant. | Adversary Proceeding No. 19-90065-LT<br><br>SUPPLEMENTAL MEMORANDUM IN SUPPORT OF NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-3'S MOTION FOR SUMMARY JUDGMENT AND REPLY |

Defendant National Collegiate Student Loan Trust 2006-3 ("NCSLT") by counsel, hereby supplements its Motion for Summary Judgment and Reply in response to this Court's Minute Order of March 11, 2020. The additional evidence produced shows that The Educational Resources Institute, Inc. ("TERI") was always a nonprofit corporation and that TERI funded Plaintiff's loan program by issuing the disbursement check for the Loan.

1

### TERI Was a Nonprofit Corporation from its Inception through its Dissolution

TERI's Guaranty (Exhibit K) is evidence that TERI was a nonprofit corporation at the time of the Guaranty. The Guaranty was an agreement between TERI and Bank One, N.A. and was signed by TERI.[1] TERI describes itself as a "private non-profit corporation organized under Chapter 180 of the Massachusetts General Laws" in the first paragraph of the first page of the Guaranty.[2]

TERI's Articles of Organization ("Articles," Exhibit J) show it was organized under Chapter 180 of the Massachusetts General Laws.[3] Chapter 180 of the Massachusetts General Laws is entitled "Corporations for Charitable and Certain Other Purposes" and is the Section under which nonprofit corporations are organized in Massachusetts. It provides:

> A corporation may be formed for any one or more of the following purposes:
>
> (a) for any civic, educational, charitable, benevolent or religious purpose;
>
> Chapter 180 of the Massachusetts General Laws, Sec. 4

TERI was to be operated "exclusively for charitable and educational purposes through assisting students in attaining an education and through assisting educational institutions in providing an education in an economical fashion."[4] Nonprofit corporations in Massachusetts may be formed for those same charitable and educational purposes as was TERI.[5]

Moreover, The Articles (Exhibit J) also provide that "[e]xcept for the payment of reasonable compensation for services as determined by the Board of Directors as to structure and amount, no part of its earnings shall ever inure to the benefit of any director or employee

---

[1] See Luke Declaration, Exhibit K.
[2] *Id.*
[3] *Id.*, at Para. 29 and its Exhibit J, p. 9.
[4] *Id.*, at Para. 28 and its Exhibit J, p. 3, Schedule A, para. 1.
[5] *Id.*

2

of the Corporation."[6] Corporations will be denied tax-exempt status if its earnings benefit private shareholders or individuals. 26 C.F.R. § 1.501(c)(3)-1(c)(2).

The Secretary of the Commonwealth of Massachusetts website shows TERI was a nonprofit corporation[7] and that it was organized on June 19, 1985 and dissolved on May 15, 2014.[8] This is the only page for TERI in the website and there is no page showing TERI as a for profit organization.[9] During its life, two other nonprofits merged into TERI, The Education Fund, Inc. and TERI Financial Services, Inc.[10] No for profit entities are shown as merging into TERI.[11]

TERI filed a Chapter 11 Petition for Relief on April 7, 2008, Case No. 08-12540. It filed an Equity Security Holder Statement within the Petition and attested under penalty of perjury that TERI is a not for profit corporation.[12]

A defendant movant may prevail on summary judgment if it can show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, and see *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989). There is utterly no evidence that TERI was at any time a for profit corporation and ample evidence that TERI was formed as a nonprofit, remained a nonprofit throughout its existence, and was a nonprofit at the time of its Guaranty of Plaintiff's student loan program. Accordingly, NCSLT must prevail on the issue that TERI was always a nonprofit institution and so was at the time of the Guaranty.

---

[6] *Id.*, and its Exhibit J, p. 3, Schedule A, para. 1.
[7] *Id.*, at para. 20 and its Exhibit G.
[8] *Id.*, at para. 19 and its Exhibit G.
[9] *Id.*, at para. 30.
[10] *Id.*, at paras. 21 – 26 and its Exhibit G.
[11] *Id.*
[12] See Exhibit A attached hereto.

### TERI Funded Plaintiff's Loan Program

The disbursement check for Plaintiff's Loan was written out of a TERI bank account.[13] (Exhibits C and D). While 11 U.S.C. §523(a)(8)(A)(ii) does not require that a nonprofit fund the actual loans made under a program, funding the loans is funding the program.

The check is the Loan disbursement check. The Note Disclosure Statement states that the Loan was in the principal amount of $30,000 and was disbursed on June 20, 2006.[14] The check is in the amount of $30,000 and is dated June 20, 2016. It is made out to Plaintiff and San Diego Culinary Institute, Plaintiff's school.[15] The check was negotiated and deposited.[16]

NCSLT's Motion for Summary Judgment argued that the Guaranty is funding of the Education One Program, but at the time, counsel did not have copies of the disbursement check. The Court requested additional evidence, factual and legal, that TERI's Guaranty funded Plaintiff's program. Because TERI, a nonprofit institution issued the disbursement check for Plaintiff's Loan made under the Education One Program, it partially funded the Program.

### Request for Judicial Notice

NCSLT requests the Court take judicial notice pursuant to Fed. R. Evid. 201 of TERI's nonprofit status through The Secretary of the Commonwealth of Massachusetts's website and TERI's bankruptcy through Pacer. The Rule provides that the court must take judicial notice if a party requests it and it is supplied the necessary information:

> **(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:

---

[13] See Luke Declaration, para. 13 and its Exhibits C & D.
[14] Id., at paras 10 - 12, and its Exhibits C & D.
[15] Id., at paras 12 - 15, and its Exhibits C & D
[16] Id.

4

>        (1) is generally known within the trial court's territorial jurisdiction; or
>
>        (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
>
>    **(c) Taking Notice.** The court:
>
>        (1) may take judicial notice on its own; or
>
>        (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

NCSLT requests that the court take judicial notice of the information contained on the following websites. These are sources whose accuracy cannot be reasonably questioned. Printed copies of these pages and documents are attached to the Luke Declaration.

1. The Secretary of the Commonwealth of Massachusetts's website may be accessed through this link:
   https://www.sec.state.ma.us/

2. The search function may be accessed through this link:
   http://corp.sec.state.ma.us/corpweb/CorpSearch/CorpSearch.aspx

3. TERI's page may be accessed through this link:
   http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=o3fxJEn1qk52LvkEcwi30rXyq8ywfTWtfB4CHi.XP0c-

4. The Education Fund, Inc.'s page may be accessed through this link:
   http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=ndPfe2wZdbDIM07IBrAPHg--

5. TERI Financial Services Inc. may be accessed through this link:
   http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=3n.dlp9mCVzaEI6fi0l.bg--

6. TERI's Articles of Organization may be accessed through this link:
   http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSearchFormList.aspx?sysvalue=udpRRwFe838Z76AxHjag4w--and/or
   http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSearchViewPDF.aspx

Or, by scrolling to the bottom of TERI's page, scrolling to "Articles of Organization," clicking on it, then clicking on the "View Filings" button. You may view the articles as a PDF document in the next screen by clicking on the link.

7. TERI's Equity Security Holder Statement may be accessed in TERI's bankruptcy case on Pacer, Case No. 08-12540 filed in the Bankruptcy Court for the District of Massachusetts, DOC 1, pgs. 26 and 27 and is attached hereto as Exhibit A.

## Conclusion

NCSLT has established two material facts. TERI was a nonprofit institution and it funded Plaintiff's Loan Program in part by funding her Loan. NCSLT is entitled to Summary Judgment as a matter of law.

Wherefore, for the reasons stated above, Defendant National Collegiate Student Loan Trust 2006-3 requests its Motion for Summary Judgment be granted, or in the alternative, it requests that the court issue a partial summary judgment to narrow the issues for trial or further briefing.

Respectfully submitted,

Dated: April 8, 2020

/s/ Scott S. Weltman
Scott Weltman (SBN 145215)
**Weltman, Weinberg & Reis, Co. L.P.A.**
Attorney for Defendant,
National Collegiate Student Loan Trust 2006-3

6

# Exhibit C

Case 6:18-ap-01089-MH    Doc 100    Filed 05/07/20    Entered 05/07/20 11:27:18    Desc
Main Document    Page 15 of 20



020132

Audit 2000





The Education Resources Institute

## Independent Auditors' Report

**Consolidated Financial Statements**
Years Ended December 31, 2000 and 1999
*Additional Information*
Year Ended December 31, 2000

## 5. LOAN LOSS RESERVES AND OFF-BALANCE SHEET RISK

At December 31, 2000, in its capacity as a guarantor, TERI has guaranteed, either directly or indirectly (see Notes 3 and 4), the payment to its contracting lenders of approximately $2.81 billion in outstanding principal value of student loans. In the event of default by the borrower, TERI is generally required to reimburse the lender for the remaining unpaid principal and interest on the related loan.

TERI provides a reserve against possible loss exposure in its portfolio using several assumptions based on actuarial evaluations, outside consultants' studies, historical experience of other similar portfolios of student loans, and management's assessment of the creditworthiness of the target student market for the different types of loans. The assumptions used in determining the reserve against possible loss exposure include estimated loan recovery levels that have not yet been achieved for certain loan types. The failure to achieve the assumed recovery levels could result in the need for a transfer in future periods from the two net asset categories into the loan loss reserves (see Note 6).

In addition, to control its overall exposure to loss, TERI requires that as a condition to continuing its guarantee, the lending institutions with which it contracts follow certain credit origination policies and due diligence requirements.

Should a borrower default, TERI assumes the position of the lender and has recourse against the borrower.

At December 31, the changes in loan loss reserves were as follows:

|  | 2000 | 1999 |
|---|---|---|
| Balance at January 1 | $ 60,248,341 | $ 54,185,591 |
| Default claims paid | (52,236,352) | (49,744,026) |
| Default claims recoveries | 37,549,430 | 29,397,976 |
| Loan loss provision | 45,762,161 | 26,408,800 |
| Balance at December 31 | $ 91,323,580 | $ 60,248,341 |

The loan loss provision for the year ended December 31, 2000 includes a transfer of $35 million from Net Assets to more appropriately classify funds held to pay claims as detailed annually in Note 6. This transfer is recorded as a loan loss provision expense of $35 million, as required by accounting principles generally accepted in the United States of America, offsetting an excess of revenue over expenditures of $8,508,494. Overall, as detailed in Note 6, there is no change in total funds available to pay claims.

On March 23, 2000, TERI was notified by Access Group, a promoter of legal and other postgraduate education through affordable financing and related services, that it intends to discontinue its lending-guarantee relationship with TERI effective May 1, 2000. As a result, TERI did not guarantee new Access Group loans originating after April 30, 2000. TERI will, however, continue to retain its guarantee obligation and its right to receive guarantee fees for loans originated prior to May 1, 2000.

During 2000 and 1999, TERI recognized guarantee fees of $11,802,805 and $26,057,526, respectively, on loans originated by Access Group. This represented approximately 42% and 62%, respectively, of the guarantee fee volume for fiscal years 2000 and 1999, respectively. In addition, TERI recognized $467,477 and $1,063,429 of Access Group administrative fee income in 2000 and 1999, respectively, which represented 3.3% and 8.2%, respectively, of total administrative expenses.

- 14 -


020132
2002
AUDIT

# The Education Resources Institute, Inc. and Subsidiary

Report of Independent Accountants

Consolidated Financial Statements
June 30, 2002
*Together with Supplemental Information*

# THE EDUCATION RESOURCES INSTITUTE, INC.
# AND SUBSIDIARY
# NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

## 9. LOAN LOSS RESERVES (CONTINUED)

TERI provides a reserve against possible loss exposure in its portfolio using several assumptions based on actuarial studies, outside consultants' studies, historical experience of other similar portfolios of student loans, and management's assessment of the creditworthiness of different types of loans. The assumptions used in determining the reserve against possible loss exposure include estimated loan recovery levels consistent with historical performance, but which have not yet been achieved with respect to more recently defaulted loan cohorts. Accordingly, the evaluation of the provision for loan loss reserves is inherently subjective as it requires material estimates that may be susceptible to significant changes.

| | |
|---|---:|
| Balance at July 1, 2001 | $ 91,275,902 |
| Default claims paid | (49,380,669) |
| Default claims recoveries | 33,157,742 |
| Access Transaction (see below) | (22,927,121) |
| Loan loss provision | 23,102,883 |
| Balance at June 30, 2002 | $ 75,228,737 |

On November 15, 2001, TERI and the Access Group agreed to and executed a plan that would remove TERI's guarantee from approximately $340 million of Access Group loans originated after May 1, 1998 (the "Access Transaction"). TERI's Loan Loss Reserve balance was reduced by $22.9M in connection with this transfer. TERI has not guaranteed any new borrower volume under the Access Group loan program since the year 2000.

## 10. SUMMARY OF AMOUNTS AVAILABLE TO MEET GUARANTEE COMMITMENTS

At June 30, 2002, TERI had the following funds available to meet its loan guarantee commitments:

| | | |
|---|---|---:|
| Deferred guarantee fees | $ | 6,704,169 |
| Loan loss reserves (Note 9) | $ | 75,228,737 |
| Board-designated unrestricted net assets | $ | 13,326,132 |
| Undesignated net assets | $ | 19,820,464 |
| Reserves available to meet guarantee commitments with lending institutions (Note 7) | $ | 115,079,502 |

Additional reserves were available at June 30, 2002 to meet TERI's indirect loan guarantee commitments (see Note 8).

- 12 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

100 N. Barranca Street, Suite 250
West Covina, CA 91791

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF SUPPLEMENTAL AUTHORITY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _May 7, 2020_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| **John M. & Livier Mata**<br>426 1/2 West B Street<br>Ontario  CA  91762 | **Honorable Mark Houle**<br>US Bankruptcy Court<br>3420 Twelfth Street, Suite 365<br>Riverside,  CA 92501 | **Smith Law Group LLP**<br>3 Mitchell Place<br>New York, NY 10017 |
|---|---|---|

**Attorney for Defendant National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1**
Damian P. Richards, ESQ
Sessions, Fishman, Nathan & Isreal, LLP
1545 Hotel Circle South, Suite 150
San Diego, Ca 92108-3426

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 7, 2020 | Dolores Orozco | /s/ Dolore Orozco |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**